RECEIPT # _____
AMOUNT $ 2.50
SUMMONS ISSUED M/F
LOCAL RULE 4.1_____
WAIVER FORM _____
MCF ISSUED_____
BY DPTY. CLK. _____
DATE 9-9-05

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

CIVIL ACTION NO. _____

RONNIE JONES, RICHARD BECKERS, WALTER R. WASHINGTON,
WILLIAM E. BRIDGEFORTH, SHAWN N. HARRIS, EUGENE WADE,
GEORGER C. DOWNING, JR., CLARARISE BRISTOW and the
MASSACHUSETTS ASS'N OF MINORITY LAW ENFORCEMENT
OFFICERS,
     Plaintiffs,

v.

CITY OF BOSTON, BOSTON POLICE DEPARTMENT and KATHLEEN
O'TOOLE as she is Commissioner of the Boston Police
Department.
     Defendants.

05 - 11832 GAO

**NOTICE OF REMOVAL**

(PURSUANT TO 28 U.S.C. §1441)

MAGISTRATE JUDGE Sander

Defendants City of Boston, Boston Police Department and
Kathleen O'Toole hereby give notice of the removal of this action
pursuant to 28 U.S.C. §1441, from the Superior Court Department
of the Trial Court of Massachusetts, in which court the action is
entitled with the same caption and is pending as Suffolk Superior
Court Civil Action No. 05-03123.

In support of this notice, the Defendants state that:

1.   The action appears to be grounded in the laws and
     Constitution of the United States of America.  Count I of
     the Plaintiff's Complaint alleges violation of 42 U.S.C.

§2000e; Count II alleges violation of 42 U.S.C. §1981;

Counts III and IV each allege violation of 42 U.S.C. §1983

and of the Fourteenth Amendment to the United States

Constitution; Count V alleges violation of 42 U.S.C.

§1983; Count VI alleges violation of 42 U.S.C. §12101 *et*

*seq.*; and, Count VII alleges violation of each of the

provisions delineated above.

2.  This Notice of Removal is filed within thirty (30) days

from service of the Complaint upon the Defendants on

August 10, 2005.  Undersigned counsel represents all

defendants.

Respectfully submitted,

DEFENDANTS, CITY OF BOSTON, BOSTON
POLICE DEPARTMENT and KATHLEEN
O'TOOLE

Merita A. Hopkins
Corporation Counsel

By their attorneys:

James M. Chernetsky, Esq.
BBO# 638152
Assistant Corporation Counsel
City of Boston Law Department
Room 615, City Hall
Boston, MA 02201
(617) 635-4048

Margaret M. Buckley
BBO No. 561101
Staff Attorney, Office of the Legal
Advisor
Boston Police Department
One Schroeder Plaza
Boston, MA 02120
(617) 343-4550

2

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I served a true and complete
copy of the foregoing document upon counsel of record for the
Plaintiffs, via first class U.S. Mail to: 150 Federal Street,
Boston, Massachusetts; 294 Washington Street, Suite 443, Boston,
Massachusetts, and 2800 Zelda Road, Ste. 100-5, Montgomery,
Alabama.

9-9-05

Date

3

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**  Ronnie Jones, Richard Beckers,
Walter R. Washington, William E. Bridgeforth, Shawn
N. Harris, Eugene Wade, George C. Downing, Jr.,
Clararise Bristow, and the Mass. Assoc of Minority
of Law Enforcement

**DEFENDANTS** City of Boston, Boston Police
Department and Kathleen O'Toole, as she is
Commissioner of the Boston Police Department

**(b)** County of Residence of First Listed Plaintiff  Suffolk
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed  Suffolk
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

# 05 - 11832 GAO

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Rheba Rutowski, Esq.
Bingham McCutchen
150 Federal St. Boston MA 02110  617-951-8000

Attorneys (If Known)  Margaret Buckley, Esq. &
James Chernetsky, Esq.
City of Boston Law Department Room 615
One City Hall Sq. Boston MA 02201 617-635-4048

| II. BASIS OF JURISDICTION (Place an "X" in One Box Only) | III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only) |
|---|---|

| | | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) | Citizen of This State ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| | | Citizen or Subject of a ☐ 3 Foreign Country | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | ☐ 423 Withdrawal | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury— | of Property 21 USC | 28 USC 157 | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| & Enforcement of | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | **PROPERTY RIGHTS** | ☐ 470 Racketeer Influenced and |
| Judgment Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 820 Copyrights | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 830 Patent | ☐ 810 Selective Service |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | Exchange |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **LABOR** | ☐ 875 Customer Challenge |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | | | 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting | ☐ 864 SSID Title XVI | ☐ 895 Freedom of |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | & Disclosure Act | ☐ 865 RSI (405(g)) | Information Act |
| ☐ 220 Foreclosure | ☒ 442 Employment | Sentence | ☐ 740 Railway Labor Act | | ☐ 900 Appeal of Fee |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | | **FEDERAL TAX SUITS** | Determination Under Equal Access to |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | or Defendant) | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. | | State Statutes |
| | | ☐ 550 Civil Rights | Security Act | ☐ 871 IRS—Third Party | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prison Condition | | 26 USC 7609 | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original Proceeding  ☒ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

42 U.S.C Sec. 1983 et al

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.CP. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE

DOCKET NUMBER

DATE  9-9-05

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG. JUDGE_____

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) Ronnie Jones et al v. CIty of Boton et al

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

    ___   I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    _X_   II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,          *Also complete AO 120 or AO 121
                740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.              for patent, trademark or copyright cases

    ___   III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                380, 385, 450, 891.

    ___   IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
                690, 810, 861-865, 870, 871, 875, 900.

    ___   V.    150, 152, 153.

# 05 - 11832 GAO

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?

                                                    YES          (NO)

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC §2403)

                                                    YES          (NO)

    IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?

                                                    YES          (NO)

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?

                                                    YES          (NO)

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).

                                                    (YES)         NO

    A.   IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?

         (EASTERN DIVISION)        CENTRAL DIVISION          WESTERN DIVISION

    B.   IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?

         EASTERN DIVISION          CENTRAL DIVISION          WESTERN DIVISION

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME __ James Chernetsky, Esq. _____

ADDRESS ___ City of Boston Law Department Room 615 City Hall One City Hall Sq. Boston, MA

TELEPHONE NO. ___ 02201   617-635-4048 _____

(Cover sheet local.wpd - 11/27/00)

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss:

SUPERIOR COURT
TRIAL DEPARTMENT

*05-03123*

|  |  |
|---|---|
| RONNIE JONES, RICHARD BECKERS, WALTER R. WASHINGTON, WILLIAM E. BRIDGEFORTH, SHAWN N. HARRIS, EUGENE WADE, GEORGE C DOWNING, JR., CLARARISE BRISTOW, and the MASSACHUSETTS ASSOCIATION OF MINORITY LAW ENFORCEMENT OFFICERS, ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, ) ) | NO. |
| vs. ) ) ) | |
| CITY OF BOSTON, BOSTON POLICE DEPARTMENT, and KATHLEEN O'TOOLE, as she is Commissioner of the Boston Police Department, ) ) ) ) ) ) | **05 - 11832 GAO** |
| Defendants. ) ) ) | |

**COMPLAINT AND JURY DEMAND**

**Introduction**

1.    This is a civil rights action to redress the deprivation of rights guaranteed by the Constitutions and laws of the United States and the Commonwealth of Massachusetts. Pursuant to the Boston Police Department's Substance Abuse Policy, the defendants have, since 1999, unlawfully based employment decisions upon the results of a flawed, imprecise, unreliable, arbitrary, and racially biased mandatory drug test performed on hair samples (the "Hair Test").

2.    The plaintiffs have no objection to the concept of the mandatory drug-testing of law enforcement officers and applicants for employment as law enforcement officers. The

plaintiffs contend, however, that the defendants' use of the Hair Test is unlawful because, among other reasons, it (a) has a disparate, adverse, and discriminatory impact on Boston police officers and applicants of color; (b) is used despite the availability of alternative testing methods and procedures that would have less disparate, adverse, and discriminatory impact on Boston police officers and applicants of color; and (c) constitutes discrimination on the basis of a false and erroneous perception that the plaintiffs had a disability.

3.      Upon information and belief, there are currently no government-mandated guidelines for testing hair samples for the presence of illegal drugs. Nor are there such guidelines concerning collection procedures or cut-off levels for the Hair Test used by the defendants. In addition, scientific studies demonstrate that the procedures used by the defendants to test hair samples for the presence of illegal drugs are flawed, imprecise, arbitrary, unreliable, and inherently biased against people of color. For example, upon information and belief, the procedures and methods used in performing the Hair Test cannot identify whether a result that is positive for the presence of illegal drugs is due to ingestion or to external contamination from environmental exposure. In addition, the Hair Test has an inherent propensity to yield false positives on hair samples taken from persons of color because of the composition of the hair itself and other factors. Indeed, upon information and belief, the Society of Forensic Toxicologists considers the testing of hair samples for the presence of illegal drugs to be too unreliable to be used in making individual employment decisions.

4.      Seven of the plaintiffs are former Boston police officers -- "former," because they were wrongfully terminated on the basis of their allegedly positive results on the Hair Test. Another plaintiff was denied employment on the same basis. The plaintiffs who were terminated each served with distinction, including commendations and medals, for between 4 and 28 years; collectively, for nearly 100 years.

5.      Each of the plaintiffs vehemently denies using illegal drugs. The plaintiffs' allegedly positive results on the Hair Test is the *only* "evidence" of illegal drug use by the plaintiffs that was considered by the defendants in making their adverse employment decisions

against them. Significantly, all but one of the plaintiffs obtained results negative for the presence of illegal drugs in independent hair drug tests performed soon after the allegedly positive result on the Hair Test used by the defendants. Indeed, the independent hair drug tests of some of the plaintiffs were performed by the very same laboratory that performed the Hair Tests on which they had allegedly tested positive. In the case of one plaintiff, the negative and allegedly positive results were obtained from tests performed by the very same laboratory on hair samples taken on the very same day.

6.     The defendants' use of the Hair Test in making employment decisions disproportionately and adversely impacts police officers and applicants of color and constitutes unlawful discrimination on the basis of race as well as on the basis of a false and erroneous perception of a disability. As a consequence of the defendants' policies, customs, practices, and conduct with respect to the implementation, execution, administration, supervision, related training, and use of the Hair Test in making employment decisions, the plaintiffs have been terminated from their employment with the Boston Police Department or have been forced to sign documents falsely stating that they have requested drug rehabilitation treatment and agreeing to undergo such treatment at their own expense. The result is the ruination of the lives, careers, and reputations of the plaintiffs.

7.     Among the damages that the plaintiffs have suffered and continue to suffer as a consequence of the defendants' policies, customs, practices, and conduct are, without limitation, loss of compensation, benefits, seniority, and employment opportunities, lost careers, damaged reputations, loss of standing in the community, humiliation, mental pain, anguish, and severe emotional distress.

### Jurisdiction and Venue

8.     The plaintiffs' civil rights claims are based upon Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e, *et. seq.*; Title I of the Americans with Disabilities Act of 1990, codified at 42 U.S.C. § 12101, *et seq.*; 42 U.S.C. § 1981; 42 U.S.C. § 1983; the Fourteenth Amendment to the United States Constitution; Mass. Gen. Laws ch. 151B; Mass. Gen. Laws ch.

93, § 103; Mass. Gen. Laws ch. 12, §§ 11H and 11I; Articles 1, 10, 11, and 12, and Article of Amendment 114 of the Massachusetts Declaration of Rights. This Court has subject matter jurisdiction over the plaintiffs' claims pursuant to Mass. Gen. Laws ch. 212, §§ 3, 4; Mass. Gen. Laws ch. 231A, § 1; Mass. Gen. Laws ch. 12, §§ 11H, 11I; 28 U.S.C. § 1343; and 42 U.S.C. § 12117.

9. All plaintiffs have exhausted the necessary administrative prerequisites. Prior to filing this civil action, each plaintiff timely filed written Charges of Discrimination, asserting claims of discrimination, with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission ("EEOC"). This civil action is filed within two years of the discriminatory acts alleged in this Complaint and within 90 days of Right to Sue letters from the EEOC.

10. Venue is proper in Suffolk County pursuant to Mass. Gen. Laws ch. 223, § 1.

**Parties**

11. Defendant City of Boston ("City") is a municipality of the Commonwealth of Massachusetts and owns, operates, manages, controls, and is responsible for the actions of the Boston Police Department. The City is an "employer" within the meanings of 42 U.S.C. § 2000e, 42 U.S.C. § 12111(5), and Mass. Gen. Laws Chapter 151B, and is subject to suit under all of the claims alleged in this Complaint.

12. Defendant Boston Police Department ("BPD") is a paramilitary law enforcement organization of the City. The BPD is an "employer" within the meanings of Title VII, 42 U.S.C. § 2000e, 42 U.S.C. § 12111(5), and Mass. Gen. Laws ch. 151B and is subject to suit under all of the claims alleged in this Complaint.

13. Defendant Kathleen O'Toole is the current Commissioner of the BPD. As is relevant to this Complaint, Commissioner O'Toole is responsible for making, implementing, permitting, and overseeing the BPD's (a) policy decisions; (b) customs and practices; (c) training and supervision of BPD employees; and (d) acts and omissions with respect to all allegations and claims set forth in this Complaint. Commissioner O'Toole is sued in her official capacity.

14.    Plaintiff Ronnie Jones is an African-American male who resided in Suffolk County, Massachusetts during all times relevant to this Complaint. He joined the BPD in 1983 and provided approximately nineteen years of service until he was wrongfully terminated on or about August 9, 2002. Officer Jones had an excellent service record that was free of warnings or disciplinary actions related to drug abuse. He had taken and passed a mandatory annual drug test every year that it was administered prior to the Hair Test upon which his termination was based.

15.    Plaintiff Richard Beckers is an African-American male who resided in Suffolk County, Massachusetts during all times relevant to this Complaint. He joined the BPD in 1989 and provided approximately thirteen years of service until he was wrongfully terminated on or about August 9, 2002. Officer Beckers had an excellent service record that was free of warnings or disciplinary actions related to drug abuse. He had taken and passed a mandatory annual drug test every year that it was administered prior to the Hair Test upon which his termination was based.

16.    Plaintiff Walter Washington is an African-American male who resided in Suffolk County, Massachusetts during all times relevant to this Complaint. He joined the BPD in 1989 and provided approximately fourteen years of service until he was wrongfully terminated on or about April 22, 2003. Officer Washington had an excellent service record that was free of warnings or disciplinary actions related to drug abuse. During his service, Officer Washington received the BPD Medal of Honor twice, as well as the Hanna Award for valor and numerous letters of commendation from the BPD. He had taken and passed a mandatory annual drug test every year that it was administered prior to the Hair Test upon which his termination was based.

17.    Plaintiff William Earl Bridgeforth is an African-American male who resided in Suffolk County, Massachusetts during all times relevant to this Complaint. During the time of the acts complained of herein, he was a resident of Suffolk County, Massachusetts. He joined the BPD in 1989 and provided approximately fourteen years of service before he was wrongfully terminated on or about September 11, 2003. Officer Bridgeforth had an excellent service record that was free of warnings or disciplinary actions related to drug abuse. He had taken and passed

a mandatory annual drug test every year that it was administered prior to a Hair Test upon which the defendants based their adverse employment decisions, including the decision to terminate his employment.

18.    Plaintiff Shawn N. Harris is an African-American male who resided in Suffolk County, Massachusetts during all times relevant to this Complaint. He joined the BPD in 1999 and provided approximately four years of service before he was wrongfully terminated on or about April 22, 2003. Officer Harris had an excellent service record that was free of warnings or disciplinary actions related to drug abuse. During his service, Officer Harris received the BPD Medal of Honor, as well as the Hanna Award for valor; a commendation from prior Boston Police Commissioner Paul Evans; and several letters of appreciation from community residents. He had taken and passed a mandatory annual drug test every year that it was administered prior to the Hair Test upon which his termination was based.

19.    Plaintiff Eugene Wade is an African-American male who resided in Suffolk County, Massachusetts during all times relevant to this Complaint. He joined the BPD in 1975. He was promoted to sergeant in 1985 and to sergeant-detective in 1992. He provided approximately 28 years of service before he was wrongfully terminated on or about February 6, 2003. Sergeant-Detective Wade had an excellent service record that was free of warnings or disciplinary actions related to drug abuse. He had taken and passed a mandatory annual drug test every year that it was administered prior to the Hair Test upon which his termination was based.

20.    Plaintiff George C. Downing, Jr. is an African-American male who resided in Suffolk County, Massachusetts during all times relevant to this Complaint. He joined the BPD in 1995 and provided approximately eight years of service before he was wrongfully terminated on or about January 6, 2004. Officer Downing had an excellent service record that was free of warnings or disciplinary actions related to drug abuse. He had taken and passed a mandatory annual drug test every year that it was administered prior to the Hair Test upon which his termination was based.

21.    Plaintiff Clararise Bristow is an African-American female who resided in Suffolk

County, Massachusetts during all times relevant to this Complaint. The BPD extended an offer of employment to Ms. Bristow in December 2002, but wrongfully refused to make her a permanent offer a short time later, based upon the same Hair Test administered to the other plaintiffs.

·22.    The Massachusetts Association of Minority Law Enforcement Officers ("MAMLEO") represents the interests of all BPD law enforcement personnel and applicants of color, including the interests of the plaintiffs and others who have been, or may be, adversely affected by the Hair Test. MAMLEO has offices in Suffolk County, Massachusetts.

### Factual Allegations

#### The BPD's Substance Abuse Policy and the Challenged Hair Test

23.    Beginning in 1999, the Hair Test has been administered annually to all sworn uniformed employees of the BPD, pursuant to the BPD's Substance Abuse Policy, as stated in BPD Rule 111, dated December 17, 1998 (the "Substance Abuse Policy").[1]  The BPD purportedly instituted the mandatory Hair Test in order to detect unlawful drug use that allegedly took place during the previous weeks or months.

24.    Although union representatives agreed to the Hair Test as part of collective bargaining agreements, this consent was secured on the basis of the defendants' misrepresentations that the Hair Test would be "conducted through a fair, reasonable, and objective hair analysis testing system," Substance Abuse Policy(V)(G), and without the union representatives' knowledge of the arbitrary, unreliable, unfair, and discriminatory nature and use of the Hair Test.

25.    The Substance Abuse Policy specifically states that the "[t]he [BPD] agrees that it will establish and adhere to written collection and testing procedures for hair samples"; that "[t]hese procedures shall be fair and reasonable so as to ensure the accuracy and integrity of the

---

[1]Although the Hair Test on BPD patrol officers began in 1999, testing of the detectives, sergeant-detectives, and superior officers was implemented in succession, starting in the year 2000.

test and process"; and that [t]hese written procedures will be appended to this Rule and become incorporated thereto." Substance Abuse Policy(V)(G).

26.    The Hair Test is administered by the City's Occupational Health Department (the "Health Department"). Among other things, Health Department personnel are responsible for collecting hair samples and transmitting them to the laboratory for testing.

27.    With respect to officers already employed by the BPD, the Substance Abuse Policy requires that the Hair Test be administered annually during the thirty-day period before or after the police officer's birthday. The BPD determines the date for the test and notifies the officer several days in advance. The Hair Test also applies to all applicants for the position of sworn police officer with the BPD.

28.    According to the Substance Abuse Policy, the BPD uses the Hair Test to determine "the presence of these five drugs, classes of drugs, or their metabolites: marijuana metabolites, cocaine metabolites, opiate metabolites, phencyclidine (PCP), and amphetamines." Substance Abuse Policy(V)(G). The Substance Abuse Policy provides that hair samples are to be collected by Health Department personnel and sent for testing by a licensed laboratory certified to test hair samples for the presence of illegal drugs.

29.    Although several companies conduct illegal-drug testing on hair samples, the BPD contracts exclusively with Psychemedics Corporation ("Psychemedics") to perform the Hair Test on hair samples collected by Health Department personnel and to report the results. Upon information and belief, Psychemedics is not certified by the United States Department of Health and Human Services ("HHS") under its National Laboratory Certification Program. Upon information and belief, Psychemedics is not certified by the United States Food and Drug Administration ("FDA") and has never received federal certification to test either urine or hair for the presence of illegal drugs.[2]

_____

[2]As of December 5, 2003, Psychemedics was not certified to meet the standards of the Mandatory Guidelines for Federal Workplace Drug Testing. *See* 68 Fed. Reg. 68091-102 (December 5, 2003).

30.     Under the procedures utilized by Psychemedics and the defendants, a hair sample provided to Psychemedics by the Health Department is initially tested by radioimmunoassay. If this test yields a positive result for the presence of illegal drugs, Psychemedics then tests the sample using a combination of chromatography and mass spectrometry methodologies. If there is again a positive result, this is reported to the BPD's Medical Review Officer, pursuant to the Substance Abuse Policy. Although the Substance Abuse Policy does not specify cut-off levels for distinguishing between positive and negative results with respect to the presence of illegal drugs in hair samples, Psychemedics reports a finding of cocaine at a level of 5ng/10mg or more as a positive result and lower levels of cocaine as a negative result.[3] Pursuant to the Substance Abuse Policy, if the affected officer cannot provide an alternative medical explanation for the positive result, the Medical Review Office reports the Hair Test as positive for the presence of illegal drugs to the BPD.

31.     The Substance Abuse Policy provides that, in the event that a positive result is reported to the BPD, the affected officer may request an additional "Safety Net" test within 72 hours of receipt of the initial test results. Under the procedures utilized by Psychemedics and the defendants for the "Safety Net" test, a second hair sample is to be taken from the same body site as the original hair sample. The same tests are performed on the new sample as on the original sample, but a lower cut-off level is used to distinguish between positive and negative results. Although the Substance Abuse Policy does not specify cut-off levels for distinguishing between positive and negative results with respect to the presence of drugs on the Safety Net test, Psychemedics currently reports a finding of cocaine at a level of 0.2ng/10mg or more as a positive result and lower levels of cocaine as a negative result on the Safety Net test. Psychemedics previously used a cut-off level of 2.0ng/10mg on the Safety Net test, which is an order of magnitude higher than the current cut-off level. Pursuant to the Substance Abuse

---

[3]A nanogram ("ng") is one billionth of a gram; a milligram ("mg") is one thousandth of a gram.

Policy, the affected officer must pay for the Safety Net test and its review by the Medical Review Officer unless the result on the Safety Net test is negative.

32.    A sworn officer or applicant whose Hair Test is reported to the BPD as positive is subject to termination or denial of employment, as the case may be. In the case of a sworn officer who tests positive on the Hair Test for the first time, the Substance Abuse Policy provides that the BPD may offer an alternative to termination: a 45-day suspension without pay and execution of a "Rehabilitation Agreement." This Agreement falsely states that the officer has requested drug rehabilitation treatment and agrees to undergo such treatment at his or her own expense, and requires placement in an administrative position; suspension of weapon-carrying privileges until a treatment provider certifies recovery; and submission to follow-up random drug testing for the next three years.

**Problems with the HairTest**

33.    According to the defendants, each of the plaintiffs tested positive for cocaine on an initial Hair Test and on a follow-up Safety Net test performed by Psychemedics. Each of the seven sworn-officer plaintiffs had excellent service records during their employment with the BPD (ranging from 4 to 28 years), and none had previously been the subject of a past complaint for behavior indicative of illegal drug use. For several years prior to the Hair Test that precipitated their wrongful discharge, each of the seven sworn-officer plaintiffs had submitted to a mandatory annual drug test, including a Hair Test. All of these previous tests had been negative and each of the plaintiffs vehemently denies using illegal drugs.

34.    All but one of the plaintiffs obtained results negative for the presence of illegal drugs in independent hair drug tests performed soon after their allegedly positive Hair Test results were reported. Indeed, the independent hair drug tests of some of the plaintiffs were performed by the very same laboratory that performed the Hair Tests on which they had allegedly tested positive. That is, the very same laboratory returned both negative and allegedly positive results on hair samples taken from these plaintiffs. In the case of one plaintiff, the negative and allegedly positive results were obtained from tests performed by the very same

laboratory on hair samples taken on the very same day. In the case of another plaintiff, the negative and allegedly positive results were obtained from tests performed on hair samples taken only one day apart. The defendants have failed and refused to consider independent tests indicating that the plaintiffs were drug-free at the time of the Hair Test that falsely and erroneously indicated illegal drug use.

35.    Although each of the seven sworn-officer plaintiffs was offered an opportunity to avoid termination by signing the Rehabilitation Agreement, this Agreement requires an admission of illegal drug use; drug treatment; placement in an administrative position; suspension of weapon-carrying privileges until a treatment provider certifies recovery; and submission to follow-up random drug testing for the next three years. Six of the officers refused because they did not use illegal drugs. These officers were terminated. The seventh officer accepted the Rehabilitation Agreement, notwithstanding that he did not use illegal drugs, in order to keep his job. He was reinstated but was terminated after he allegedly tested positive on the Hair Test a year later, despite the fact that he tested negative on ten or eleven random urine tests during that year.

36.    Upon information and belief, there are currently no government-mandated guidelines for testing hair samples for the presence of illegal drugs. Nor are there such guidelines concerning collection procedures or cut-off levels for the Hair Test used by the defendants.[4]

37.    The defendants rely exclusively on the work of one laboratory, Psychemedics, to perform all Hair Tests for the BPD and have rejected all independent tests that refute the results

---

[4]The Mandatory Guidelines for Federal Workplace Drug Testing Programs, initially published by the HHS in the Federal Register on April 11, 1988 (53 FR 11970-89) and extensively revised in the Federal Register on June 9, 1994 (59 FR 29908-31), establish scientific and technical guidelines for federal drug-testing programs, as well as standards for certification of laboratories engaged in urine drug-testing for federal agencies. A second revision to the Mandatory Guidelines regarding opiate testing was published in the Federal Register on September 30, 1997 (62 FR 51118-19). Upon information and belief, draft Guidelines are in the process of being finalized.

of the Hair Test.

38.    Although the FDA has approved other methods of testing for the presence of illegal drugs (using blood and urine), upon information and belief, the FDA has not approved the procedures used by the defendants and Psychemedics to test hair samples for the presence of illegal drugs.

39.    Forensic toxicologists have reported on the inability of repeated wash procedures to remove completely external cocaine contamination from the dark, coarse hair of African-Americans.  Upon information and belief, the Society of Forensic Toxicologists considers the testing of hair samples for the presence of illegal drugs to be too unreliable to be used in making individual employment decisions.

40.    Upon information and belief, the defendants had knowledge, at least as early as 2002, that the reliability of the procedures they had chosen to use for the Hair Test was questionable in view of the fact that an increasing number of long-term officers of color were testing positive for cocaine on the Hair Test, even though they had excellent service records; no history of illegal drug use; and denied using illegal drugs.  The defendants nevertheless continue to use the Hair Test; administered in the same way; performed and interpreted by the same laboratory; and with the same disparate, adverse, and discriminatory consequences for officers and applicants of color in the terms and conditions of their employment.

41.    The Hair Test is rife with flaws.  For example, the defendants have failed to ensure that personnel responsible for collecting the hair samples and transmitting them to Psychemedics are sufficiently trained to follow the procedures necessary to ensure the integrity of the hair samples used in the Hair Test and that the hair samples provided to Psychemedics are of sufficient length and quantity to comply with the testing protocol.

42.    The Hair Test is unreliable, imprecise, and arbitrary.  Scientific studies have demonstrated flaws in the procedures used to test hair samples for the presence of illegal drugs and the hair drug test's inherent bias against people of color -- i.e., the propensity of the test to yield false positives on hair samples taken from persons of color.  Upon information and belief,

results obtained by laboratory analysis of the same hair sample can vary by more than 40 percent.

43.    Upon information and belief, the defendants are aware of these studies but refuse to take remedial steps. Although a disproportionate number of officers and applicants of color are being adversely affected by the Hair Test in the terms and conditions of their employment, the defendants will not suspend or modify its use in making employment decisions.

44.    The BPD has denied "that race, specifically African-American, is a factor in drug testing results and can cause a positive drug test result [on the Hair Test]." The BPD also refuses to acknowledge that hair samples used in the Hair Test may be contaminated from external exposure, as might occur, for example, during the performance of job duties; as a result of unsanitary collection, transmission, preparation, or testing procedures; or because of errors in the chain of custody.

45.    The defendants afford no meaningful opportunity for an officer or applicant who allegedly tests positive on the Hair Test to prove his or her innocence with respect to alleged illegal drug use. Despite scientific evidence demonstrating the unreliability of procedures used to test hair samples for the presence of illegal drugs and the hair drug test's inherent bias against people of color, the BPD refuses to consider independent test results that refute the Hair Test results and to give sufficient credence and weight to the affected officer's or applicant's record, even when the record strongly negates the possibility of illegal drug use.

46.    The Hair Test used by the defendants is discriminatory in its nature and its effect and has had, and continues to have, a disparate, adverse, and discriminatory impact on police officers and applicants of color. Because of this discrimination, a hostile work environment for people of color has been created by and within the BPD.

47.    Upon information and belief, alternative testing methods and procedures exist that would have less disparate, adverse, and discriminatory impact on officers and applicants of color in the terms and conditions of their employment, but the defendants have failed and refused to utilize them.

48.     As a consequence of the defendants' policies, customs, practices, and conduct with respect to the implementation, execution, administration, supervision, related training, and use of the Hair Test, the plaintiffs have been stripped of their livelihoods; suffered the loss of compensation, benefits, seniority, and opportunities for employment and promotion; seen their reputations and careers destroyed; and endured humiliation, loss of standing in the community, and extreme emotional distress.

### Count I
### Violation of 42 U.S.C. § 2000e, *et seq.* and Mass. Gen. Laws. ch. 151B
### (Discrimination on the Basis of Race)

49.     Plaintiffs repeat and re-allege the facts contained in the foregoing paragraphs.

50.     Plaintiffs are members of a class protected by 42 U.S.C. § 2000e and Mass. Gen. Laws. ch. 151B and are qualified for employment by the BPD.

51.     As alleged above, the plaintiffs have satisfied the necessary administrative prerequisites to the filing of a civil action asserting claims arising under 42 U.S.C. § 2000e and Mass. Gen. Laws. ch. 151B.

52.     As alleged above, the defendants have failed and refused to (a) give any meaningful consideration to independent test results that show the affected officer or applicant to be drug-free at the time the Hair Test yielded a false positive result or to service records that show no indication of illegal drug use; and (b) utilize alternative methods and procedures with respect to drug testing and its use in making employment decisions that would have less disparate, adverse, and discriminatory impact on officers and applicants of color.

53.     As alleged above, the defendants' policies, customs, practices, and conduct (including intentional conduct) with respect to the implementation, execution, administration, supervision, related training, and use of the Hair Test in making employment decisions constitute unlawful discrimination on the basis of race against the plaintiffs, in violation of 42 U.S.C. § 2000e and Mass. Gen. Laws. ch. 151B and also constitute part of the defendants' pattern and practice of discrimination on the basis of race, including but not limited to the following: (a) the

use of a mandatory drug test (the Hair Test) that discriminates against employees and applicants on the basis of race; (b) the creation of a hostile work environment for people of color; (c) the disparate, adverse, and discriminatory alteration of the terms and conditions of the plaintiffs' employment; (d) the harassment of the plaintiffs based on race; and (e) the failure and refusal to utilize alternative methods and procedures with respect to drug testing and its use in making employment decisions that would have less disparate, adverse, and discriminatory impact on officers and applicants of color in the terms and conditions of their employment.

54.    As alleged above, the plaintiffs have suffered and continue to suffer injuries and damages as a result of the defendants' policies, customs, practices and conduct, for which the defendants are liable under the provisions of 42 U.S.C. § 2000e and Mass. Gen. Laws. ch. 151B in an amount to be proven at trial, including compensatory and punitive damages, back pay with interest, front pay, sick leave, disability leave, vacation leave, reimbursement for all lost compensation, seniority, Social Security, pre-judgment interest, and all other entitlements and emoluments provided by 42 U.S.C. § 2000e and Mass. Gen. Laws. ch. 151B.

**Count II**
**Violation of 42 U.S.C. § 1981 and Mass. Gen. Laws ch. 93, § 103**
**((Discrimination on the Basis of Race)**

55.    Plaintiffs repeat and re-allege the facts contained in the foregoing paragraphs.

56.    Plaintiffs are members of a class protected by 42 U.S.C. § 1981 and Mass. Gen. Laws ch. 93, § 103.

57.    At all relevant times, the defendants acted under color of state law with respect to their policies, customs, practices, and conduct (including intentional conduct) concerning the implementation, execution, administration, supervision, related training, and use of the Hair Test in making employment decisions.

58.    As alleged above, the defendants have a policy, custom, and practice of failing and refusing to (a) give any meaningful consideration to independent test results that show the affected officer or applicant to be drug-free at the time the Hair Test yielded a false positive

result or to service records that show no indication of illegal drug use; and (b) utilize alternative methods and procedures with respect to drug testing and its use in making employment decisions that would have less disparate, adverse, and discriminatory impact on officers and applicants of color.

59.    As alleged above, the defendants' policies, customs, practices, and conduct (including intentional conduct) constitute unlawful discrimination on the basis of race against the plaintiffs with respect to (a) the making, performance, modification, and termination of contracts; (b) the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship; and (c) the enjoyment of the full and equal benefit of all laws as enjoyed by white citizens, as guaranteed by 42 U.S.C. § 1981 and Mass. Gen. Laws ch. 93, § 103.

60.    As alleged above, the defendants' policies, customs, practices, and conduct (including intentional conduct) has, among other things, damaged the good names, reputations, honor, and integrity of the plaintiffs; lowered the plaintiffs' standing in the community; deprived the plaintiffs' of employment and related compensation and benefits; and foreclosed employment opportunities for the plaintiffs.

61.    As alleged above, the plaintiffs have suffered and continue to suffer injuries and damages as a result of the defendants' policies, customs, practices, and conduct, for which the defendants are liable under the provisions of 42 U.S.C. § 1981 and Mass. Gen. Laws ch. 93, § 103 in an amount to be proven at trial, including compensatory and punitive damages in the full amount permitted by law.

## Count III

## Violation of 42 U.S.C. § 1983 and the Fourteenth Amendment Equal Protection Clause (Discrimination on the Basis of Race)

62.    Plaintiffs repeat and re-allege the facts contained in the foregoing paragraphs.

63.    At all relevant times, the defendants acted under color of state law with respect to their policies, customs, and practices, and conduct (including intentional conduct) concerning the implementation, execution, administration, supervision, related training, and use of the Hair Test

in making employment decisions.

64.    As alleged above, the defendants have a policy, custom, and practice of failing and refusing to (a) give any meaningful consideration to independent test results that show the affected officer or applicant to be drug-free at the time the Hair Test yielded a false positive result or to service records that show no indication of illegal drug use; and (b) utilize alternative methods and procedures with respect to drug testing and its use in making employment decisions that would have less disparate, adverse, and discriminatory impact on officers and applicants of color in the terms and conditions of their employment, as compared with other, similarly situated BPD employees and applicants.

65.    As alleged above, the defendants' policies, customs, practices, and conduct concerning the implementation, execution, administration, supervision, related training, and use of the Hair Test in making employment decisions constitutes intentional discrimination on the basis of race against the plaintiffs, in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment Equal Protection Clause.

66.    As alleged above, the defendants' policies, customs, practices, and conduct have, among other things, damaged the good names, reputations, honor, and integrity of the plaintiffs; lowered the plaintiffs' standing in the community; deprived the plaintiffs' of employment and related compensation and benefits; and foreclosed employment opportunities for the plaintiffs.

67.    As alleged above, the plaintiffs have suffered and continue to suffer injuries and damages as a result of the defendants' policies, customs, practices, and conduct, for which the defendants are liable under the provisions of 42 U.S.C. § 1983 in an amount to be proven at trial.

## Count IV
### Violation of 42 U.S.C. § 1983 and the Fourteenth Amendment
### (Due Process)

68.    Plaintiffs repeat and re-allege the facts contained in the foregoing paragraphs.

69.    At all relevant times, the defendants acted under color of state law with respect to their policies, customs, and practices concerning the implementation, execution, administration,

supervision, related training, and use of the Hair Test in making employment decisions.

70. As alleged above, the Hair Test used by the defendants to screen BPD officers and applicants for illegal drug use is, flawed, unreliable, imprecise, arbitrary, and inherently biased against people of color -- i.e., the Hair Test has a propensity to yield false positives on hair samples taken from persons of color.

71. As alleged above, the defendants have a policy, custom, and practice of failing and refusing to (a) give any meaningful consideration to independent test results that show the affected officer or applicant to be drug-free at the time the Hair Test yielded a false positive result or to service records that show no indication of illegal drug use; and (b) utilize alternative methods and procedures with respect to drug testing and its use in making employment decisions that would have less disparate, adverse, and discriminatory impact on officers and applicants of color in the terms and conditions of their employment.

72. As alleged above, the defendants' policies, customs, practices, and conduct are arbitrary and capricious in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment Due Process Clause.

73. As alleged above, the defendants' policies, customs, practices, and conduct have deprived the plaintiffs of a fair opportunity to have evidence considered that indicates that they were drug free at the time of the Hair Test that resulted in the defendants' adverse employment decisions against them, in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment Due Process Clause.

74. As alleged above, the defendants' policies, customs, practices, and conduct have, among other things, damaged the good names, reputations, honor, and integrity of the plaintiffs; lowered the plaintiffs' standing in the community; deprived the plaintiffs' of employment and related compensation and benefits; and foreclosed employment opportunities for the plaintiffs.

75. As alleged above, the plaintiffs have suffered and continue to suffer injuries and damages as a result of the defendants' policies, customs, practices, and conduct, for which the defendants are liable under the provisions of 42 U.S.C. § 1983 in an amount to be proven at trial.

## Count V
## Violation of 42 U.S.C. § 1983
## (Failure to Train and Supervise)

76.    Plaintiffs repeat and re-allege the facts contained in the foregoing paragraphs.

77.    At all relevant times, the defendants acted under color of state law with respect to their policies, customs, and practices concerning the implementation, execution, administration, supervision, related training, and use of the Hair Test in making employment decisions.

78.    At all relevant times, the defendants were and are responsible for, among other things, the training and supervision of personnel charged with administering and performing the procedures involved in the Hair Test and were and are obligated by law to ensure that the implementation, execution, administration, supervision, related training, and use of the Hair Test in making employment decisions (including the defendants' policies, customs, and practices concerning the foregoing) are consistent with the Constitution and laws of the United States.

79.    As alleged above, the defendants' policies, customs, practices, and conduct have deprived the plaintiffs of rights guaranteed by 42 U.S.C. § 1983, 42 U.S.C. § 1981, 42 U.S.C. § 2000e, U.S.C. § 12112, and the Fourteenth Amendment to the United States Constitution, and the defendants have acted with deliberate indifference to the defendants' deprivations of the plaintiffs' constitutional and statutory rights.

80.    As alleged above, the defendants' policies, customs, practices, and conduct have, among other things, damaged the good names, reputations, honor, and integrity of the plaintiffs; lowered the plaintiffs' standing in the community; deprived the plaintiffs' of employment and related compensation and benefits; and foreclosed employment opportunities for the plaintiffs.

81.    As alleged above, the plaintiffs have suffered and continue to suffer injuries and damages as a result of the defendants' policies, customs, practices, and conduct, for which the defendants are liable under the provisions of 42 U.S.C. § 1983 in an amount to be proven at trial.

**Count VI**

**Violation of 42 U.S.C. § 12101, *et seq.*, Mass. Gen. Laws ch. 151B**
**Mass. Gen. Laws ch. 93, § 103, and Article of Amendment 114**
**to the Massachusetts Declaration of Rights**
**(Disability Discrimination)**

82.     Plaintiffs repeat and re-allege the facts contained in the foregoing paragraphs.

· 83.     Plaintiffs are members of a class protected by 42 U.S.C. §§ 12102(2), 12111(8),

12112, and 12114; Mass. Gen. Laws ch. 151B; Mass. Gen. Laws ch. 93, § 103, and Article of

Amendment 114 to the Massachusetts Declaration of Rights, and able to perform the essential

functions of their jobs without accommodation.

84.     As a consequence of the plaintiffs' allegedly positive Hair Test results, the

defendants falsely and erroneously regarded the plaintiffs as having a disability that substantially

limited a major life activity, even though the plaintiffs had no such disability and were able to

perform the essential functions of their jobs without accommodation.

85.     As a consequence of the plaintiffs' allegedly positive Hair Test results, the

defendants treated the plaintiffs in a disparate, adverse, and discriminatory manner -- as

compared with other BPD employees and applicants for employment -- on the basis of the

defendants' false and erroneous perception that the plaintiffs had a disability that substantially

limited a major life activity, even though the plaintiffs had no such disability.

86.     As a result of the Hair Test, the defendants terminated or denied employment to

the plaintiffs on the basis of the defendants' false and erroneous perception of a disability, even

though the plaintiffs had no such disability.

87.     As alleged above, the defendants' conduct has deprived the plaintiffs of their right

to be free from discrimination on the basis of disability as guaranteed by 42 U.S.C. § 12112,

Mass. Gen. Laws ch. 151B, Mass. Gen. Laws ch. 93, § 103, and Article of Amendment 114 to

the Massachusetts Declaration of Rights.

88.     As alleged above, the defendants' conduct has, among other things, (a) interfered

with the plaintiffs' contractual rights; (b) deprived the plaintiffs of their rights with respect to the

enjoyment of the full and equal benefit of all laws as enjoyed by white citizens; (c) damaged the good names, reputations, honor, and integrity of the plaintiffs; (d) lowered the plaintiffs' standing in the community; (e) deprived the plaintiffs' of employment and related compensation and benefits; and (f) foreclosed employment opportunities for the plaintiffs.

89.    As alleged above, the plaintiffs have suffered and continue to suffer injuries and damages as a result of the defendants' conduct, for which the defendants are liable under the provisions of 42 U.S.C. § 12112, Mass. Gen. Laws ch. 151B, Mass. Gen. Laws ch. 93, § 103, and Article of Amendment 114 to the Massachusetts Declaration of Rights in an amount to be proven at trial, including compensatory and punitive damages to the full extent permitted by law.

## Count VII
### Violation of Mass. Gen. Laws. ch. 12, §§ 11H, 11I and
### Rights Guaranteed by Massachusetts and Federal Law

90.    Plaintiffs repeat and re-allege the facts contained in the foregoing paragraphs.

91.    At all relevant times, the defendants acted under color of state law with respect to their policies, customs, and practices concerning the implementation, execution, administration, supervision, related training, and use of the Hair Test in making employment decisions.

92.    As alleged above, the defendants' policies, customs, practices, and conduct have deprived the plaintiffs of rights guaranteed by Mass. Gen. Laws. ch. 12, §§ 11H, 11I, 42 U.S.C. § 2000e; 42 U.S.C. § 1981; 42 U.S.C. § 1983; 42 U.S.C. § 12112; the Fourteenth Amendment to the United States Constitution; Mass. Gen. Laws ch. 151B; Mass. Gen. Laws ch. 93, § 103; and Articles 1, 10, 11, and 12 of, and Article of Amendment 114 to, the Massachusetts Declaration of Rights.

93.    As alleged above, the defendants have used or attempted to use threats, intimidation, and coercion in interfering with, attempting to interfere with, and depriving the plaintiffs of rights guaranteed by Mass. Gen. Laws ch. 12, §§ 11H and 11I ; 42 U.S.C. § 2000e; 42 U.S.C. § 1981; 42 U.S.C. § 1983; 42 U.S.C. § 12112; the Fourteenth Amendment to the United States Constitution; Mass. Gen. Laws ch. 151B; Mass. Gen. Laws ch. 93, § 103; and

21

Articles 1, 10, 11, and 12 of, and Article of Amendment 114 to, the Massachusetts Declaration of Rights.

94.    As alleged above, the defendants' policies, customs, practices, and conduct have, among other things, damaged the good names, reputations, honor, and integrity of the plaintiffs; lowered the plaintiffs' standing in the community; deprived the plaintiffs' of employment and related compensation and benefits; and foreclosed employment opportunities for the plaintiffs.

95.    As alleged above, the plaintiffs have suffered and continue to suffer injuries and damages as a result of the defendants' conduct in violation of Mass. Gen. Laws ch. 12, §§ 11H and 11I ; 42 U.S.C. § 2000e; 42 U.S.C. § 1981; 42 U.S.C. § 1983; 42 U.S.C. § 12111; the Fourteenth Amendment to the United States Constitution; Mass. Gen. Laws ch. 151B; Mass. Gen. Laws ch. 93, § 103; and Articles 1, 10, 11, and 12 of, and Article of Amendment 114 to, the Massachusetts Declaration of Rights, for which the defendants are liable under the provisions of Mass. Gen. Laws. ch. 12, §§ 11H and 11I in an amount to be proven at trial.

## Count VIII
### Declaratory Judgment, Mass. Gen. Laws ch. 231A

96.    Plaintiffs repeat and re-allege the facts contained in the foregoing paragraphs.

97.    As alleged above, there is an actual controversy between the plaintiffs and the defendants concerning the lawfulness of the defendants' policies, customs, practices, and conduct with respect to the implementation, execution, administration, supervision, related training, and use of the Hair Test in making employment decisions.

98.    Pursuant to Mass. Gen. Laws ch. 231A, § 1, the plaintiffs are entitled to a declaratory judgment stating that the defendants have violated rights guaranteed them by 42 U.S.C. § 2000e; 42 U.S.C. § 1981; 42 U.S.C. § 1983; 42 U.S.C. § 12112; the Fourteenth Amendment to the United States Constitution; Mass. Gen. Laws ch. 151B; Mass. Gen. Laws ch. 93, § 103; Mass. Gen. Laws ch. 12, §§ 11H and 11I; Articles 1, 10, 11, and 12 of, and Article of Amendment 114 to, the Massachusetts Declaration of Rights.

99.    The plaintiffs also are entitled to further relief as may be warranted under Mass.

22

Gen. Laws ch. 231A, § 5.

## Count IX
### Permanent Injunction

100.    Plaintiffs repeat and re-allege the facts contained in the foregoing paragraphs.

101.    The defendants' policies, customs, practices, and conduct with respect to the implementation, execution, administration, supervision, related training, and use of the Hair Test in making employment decisions is in violation of rights guaranteed to the plaintiffs by 42 U.S.C. § 2000e; 42 U.S.C. § 1981; 42 U.S.C. § 1983; 42 U.S.C. § 12112; the Fourteenth Amendment to the United States Constitution; Mass. Gen. Laws ch. 151B; Mass. Gen. Laws ch. 93, § 103; Mass. Gen. Laws ch. 12, §§ 11H and 11I; Articles 1, 10, 11, and 12 of, and Article of Amendment 114 to, the Massachusetts Declaration of Rights.

102.    Absent the granting of permanent injunctive relief, enjoining the defendants' unlawful policies, customs, practices, and conduct, the plaintiffs will continue to be irreparably harmed by said unlawful policies, customs, practices, and conduct, for which there is no adequate remedy at law.

PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE

WHEREFORE, plaintiffs pray that this Court:

(a)    enter judgment against the defendants and in favor of the plaintiffs on all counts of the Complaint;

(b)    enter judgment against the defendants declaring that the policies, customs, practices, and conduct set forth in this Complaint are in violation of 42 U.S.C. § 2000e; 42 U.S.C. § 1981; 42 U.S.C. § 1983; 42 U.S.C. §§ 12112; the Fourteenth Amendment to the United States Constitution; Mass. Gen. Laws ch. 151B; Mass. Gen. Laws ch. 93, § 103; Mass. Gen. Laws ch. 12, §§ 11H and 11I; Articles 1, 10, 11, and 12 of, and Article of Amendment 114 to, the Massachusetts Declaration of Rights;

(c)    issue a permanent injunction enjoining the defendants from further violating the plaintiffs' rights asserted in this Complaint;

(d)    order the defendants to make the plaintiffs whole by providing appropriate back pay with interest, front pay, sick leave, disability leave, vacation leave and reimbursement for all lost compensation and benefits, Social Security, prejudgment interest, seniority, and all other entitlements and emoluments in an amount to be proven at trial and to take other affirmative steps immediately to eliminate the effects of the discriminatory and otherwise unlawful policies, customs, practices, and conduct set forth in this Complaint;

(e)    order the defendants immediately to (i) reinstate the plaintiffs, with seniority and with all required adequate protective measures in place, to the positions that they would now occupy but for the defendants' unconstitutional and otherwise unlawful policies, customs, practices, and conduct; and (ii) adjust the plaintiffs' wage rate, salary, bonuses, seniority, and benefits to the levels that they would enjoy but for said unconstitutional and otherwise unlawful policies, customs, practices, and conduct;

(f)    award the plaintiffs compensatory and punitive damages to the full extent permitted by law;

(g)    award the plaintiffs reasonable attorneys' fees, costs, and expenses incurred in pursuing this action to the full extent permitted by law;

(h)    retain jurisdiction over this action until the defendants have fully complied with the orders of this Court and require the defendants to file such reports as is necessary to supervise such compliance; and

(i)    grant such other, further relief that the Court deems just and proper.

Respectfully submitted,

**Ronnie Jones, Richard Beckers, Walter Washington, William Earl Bridgeforth, Shawn N. Harris, Eugene Wade George C. Downing, Jr., Clararise Bristow, and the Massachusetts Association of Minority Law Enforcement Officers,**

By their attorneys,

Nadine Cohen, BBO # 090040
Lawyers' Committee for Civil Rights
 Under Law of the Boston Bar Association
294 Washington Street, Suite 443
Boston, Massachusetts 02108
(617) 482-1145

Paul Robertson, BBO # 562421
Rheba Rutkowski, BBO # 632799
Rachael Splaine Rollins, BBO # 641972
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000

Maricia Woodham, BBO # 600886
SABEL & SABEL, P.C.
Hillwood Office Center
2800 Zelda Road; Ste. 100-5
Montgomery, AL 36106
(334) 271-2770

Dated: July 26, 2005