UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RONNIE JONES, ET AL., | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. 05-11832-GAO |
| v. | ) | |
| | ) | |
| CITY OF BOSTON, ET AL., | ) | |
| Defendants. | ) | |
| | ) | |

**PSYCHEMEDICS CORPORATION'S MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL PSYCHEMEDICS CORPORATION TO
PRODUCE ITS STANDARD OPERATING PROCEDURES FOR TESTING HAIR
SAMPLES FOR DRUGS OF ABUSE**

NOW COMES Psychemedics Corporation, and hereby opposes the plaintiffs'

Motion to Compel Psychemedics Corporation to Produce Its Standard Operating

Procedures for Testing Hair Samples for Drugs of Abuse ("plaintiffs' Motion").

**I.    BACKGROUND**

This is a civil rights action involving claims that a drug test produces results

based on the race of the test subject and that such drug tests are administered to

Boston police officers by the defendants. The defendants contracted with Psychemedics

Corporation ("Psychemedics") to perform the drug test.  Psychemedics is a

biotechnology company that has developed a patented hair testing technology for drugs

of abuse.  Notably, Psychemedics is not a party to the instant action.

On November 3, 2006, the plaintiffs served Psychemedics with a subpoena

requesting, among other things, Psychemedics' Standard Operating Procedures

("SOP's") in effect between January 1, 1994 through the present.  *See*, Exhibit A,

Subpoena in a Civil Case.  The plaintiffs' subpoena further requested all documents and

communications concerning changes to Psychemedics' SOP's and all documents and

communications concerning the SOP's from January 1, 1994 to the present.  *See*,

Exhibit A.   Thereafter, Psychemedics objected to the subpoena in a letter dated

November 17, 2006.  *See*, Exhibit B, November 16, 2007 letter.  With respect to plaintiffs' request for Psychemedics' SOP's, Psychemedics objected on the grounds that the documents sought contained trade secrets and confidential, proprietary information, and that the request was unduly burdensome.

II.    **ARGUMENT**

Psychemedics hereby opposes the plaintiffs' Motion on the grounds that the plaintiffs' subpoena seeks documents that contain confidential and proprietary information and is unduly burdensome.

A.    **The Plaintiffs' Motion Should be Denied Because The Plaintiffs' Subpoena Seeks Documents that Contain Confidential and Proprietary Information.**

Rule 26(c)(7) of the Federal Rules of Civil Procedure dictates that "a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way."  *See*, Ares-Serono, Inc. v. Organon International B.V., 151 F.R.D. 215, 219 (D. Mass., 1993). The Court must exercise its discretion in order to avoid unnecessary disclosure of trade secrets or other confidential business information.  *See*, Ares-Serono, Inc. v. Organon International B.V., 151 F.R.D. 215, 219 (D. Mass., 1993).  Generally speaking, the court must weigh the right of a plaintiff to examine relevant evidence against the right of the defendant to protect its trade secrets and confidential data.  *See*, GTE Products Corp. v. Gee, 112 F.R.D. 169, 172 (D. Mass. 1986).  Further, in instances where a subpoena requires disclosure of a trade secret or other confidential or commercially sensitive information it should be quashed unless the party serving the subpoena shows a substantial need and the court can devise an appropriate accommodation to protect the interests of the party opposing such potentially harmful disclosure.  *See*, Insulate America v. Masco Corporation, 227 F.R.D. 427, 432 (W.D. North Caroline 2005).

The SOP's in question are non-public, confidential documents that represent the blueprints for Psychemedics' business and govern its patented methodology for hair testing.  *See*, Exhibit C, Affidavit of William Thistle.  Production of the SOP's, even under a Protective Order, will provide opposing experts with the data necessary not only to run a hair testing lab, but also to run a hair testing lab employing specific test conditions, methods and equipment settings which have been optimized as a result of twenty plus years of running the Psychemedics' laboratory.  The SOP documents discuss how and why the optimized settings and conditions are achieved, not merely the settings, test conditions and equipment required.  This added layer of knowledge, reflecting the optimization of test conditions, methods and equipment settings, goes beyond the needs of parties involved in litigation.  If the parties seek to know what the requirements are to conduct an accurate test employing Psychemedics' test methods, the data packages already provided to the Boston Police Department, and presumably produced to the plaintiffs, including the information with respect to the wash procedures used in each test, contain that information.   If the parties seek to know what issues these requirements address, then our recent studies published in peer reviewed journals will answer that question.  However, seeking entire SOPs that lay out how to optimize lab production procedures and drug testing methods clearly goes beyond the needs of the parties.

In addition, the plaintiffs' claim that no proprietary rights reside in Psychemedics' test methods described in publicly available documents (e.g., published studies and patents), misses the mark since such documents do not describe how to run a lab at a profit based on optimization.  Instead, those documents describe the methods used, the data supporting the results achieved and issues overcome.  All this information and achievements are discussed, but again, information on how to run a lab is not revealed.  Said information is critical to Psychemedics' financial and competitive well-being.  *See*,

Exhibit C.  Releasing such confidential and proprietary documents would result in harm to Psychemedics.  *See*, Exhibit C.

Additionally, Courts have recognized that disclosure to a competitor is more harmful than disclosure to a non-competitor.  See, <u>Mannington Mills, Inc. v. Armstrong World Industries, Inc.</u>, 206 F.R.D. 525, 531 (D. Delaware, 2002).  In the present action, the group of scientists practicing hair drug testing is very small, and it is highly likely that an opposing expert in the instant action will work for a competitor in the industry at some point.  *See*, Exhibit C.

Psychemedics further notes that much of the information sought by plaintiffs can be found in the data packages previously provided by Psychemedics, such as how the plaintiffs' specific hair samples were tested, the procedures used and lab equipment capabilities for those plaintiffs' samples.  Said data packages were previously provided to the City of Boston, a party to this action.  Indeed, much of the information plaintiffs seek is contained in the data packages and plaintiffs haven't shown why any additional information is needed.  Additionally, Psychemedics submits that much of the information contained in the SOP's is not relevant to the results that the plaintiffs' samples yielded.  As such, the plaintiffs cannot prove that they have a substantial need for Psychemedics' SOP's.

In light of the above, the right of Psychemedics to protect its SOP's certainly outweighs the right of the plaintiff to examine the same.

    **B.    The Plaintiffs' Motion Must Be Denied Because Compliance With the Plaintiffs' Subpoena is Unduly Burdensome to Psychemedics, a Non-Party to the Action.**

In assessing the burden of complying with a subpoena, a court may consider as one factor that a deponent is not a party.  *See*, <u>Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.</u>, 813 F.2d 1207, 1210 (Fed.Cir.1987).  Federal Rule of Civil Procedure 45 (c)(3)(B)(i) governs disclosure of confidential information by a non-party and provides that "If a

subpoena requires disclosure of a trade secret or other confidential research, development or commercial information, . . . the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena . . ."

Further, Plaintiffs are required to show more than general relevancy in order to compel production of documents of a non-party. *See*, Anker v. G.D. Searle & Co., 126 F.R.D. 515, 521 (M.D. North Carolina, 1989). Even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit. *See*, Mannington Mills, Inc. v. Armstrong World Industries, Inc., 206 F.R.D. 525, 529 (D. Delaware, 2002). In Mannington Mills, the owner of a patent for resilient sheet vinyl floor coverings sought to discover confidential financial, marketing and sales data of another competitor who was not a party to the action. The United States Magistrate Judge held that the information was not discoverable absent a showing of relevance or need and granted the non-party's Motion to Quash. The request at issue in Mannington Mills sought all financial, marketing, testing and sales documents from the non-party from 1995 to the present, a seven year period. The Court found that such a request placed a potential hardship on the non-party that outweighed the need of the requesting party for the information. *See*, Mannington Mills at 532.

In the present action, the plaintiffs' request for Psychemedics' SOP's is overly broad and is not relevant because it seeks SOP's dating back to 1994, prior to the date of Psychemedics' first contract with the Boston Police Department. Psychemedics first contracted with the Boston Police Department in 1998. Production of Psychemedics SOP's prior to 2002 is simply not relevant to the present action since the Plaintiffs' earliest positive test result, the triggering events in the instant case, did not occur until 2002. Furthermore, Psychemedics fails to see the relevancy of producing SOP's for

years wherein testing was not performed pursuant to its contracts with the Boston Police Department.

Assuming, *arguendo*, that Psychemedics request is relevant to the present action, Psychemedics' Motion must still be denied because compliance with the subpoena places an undue burden on Psychemedics and the potential harm caused by production outweighs the benefit to the plaintiffs.  First, Psychemedics' SOP's for each year are approximately eight inches thick and must be retrieved from storage. *See*, Exhibit C.  As in <u>Mannington</u>, compliance with the subpoena in the present case would clearly place an undue burden on Psychemedics due to the sheer volume of documents involved in the requests and the number of years of SOP's requested.  Second, as previously stated, the requested SOP's are non-public documents that contain confidential and proprietary information.  Releasing such confidential and proprietary documents would result in harm to Psychemedics as they contain information critical to Psychemedics' financial and competitive well-being.

Psychemedics' status as a non-party to this action precludes disclosure of Psychemedics' SOP's pursuant to plaintiff's subpoena, which seeks confidential and proprietary information and places an undue burden on Psychemedics.

**III.     CONCLUSION**

Considering the confidential nature of the documents sought and the burden of protection, together with Psychemedics' status as a non-party to this litigation, it is clear that the plaintiffs' Motion must be denied.

WHEREFORE, Psychemedics Corporation requests this Honorable Court **deny** the plaintiffs' Motion to Compel Psychemedics Corporation to Produce Its Standard Operating Procedures for Testing Hair Samples for Drugs of Abuse.

PSYCHEMEDICS CORPORATION

By their attorneys,

/s/ J. Allen Holland, Jr.

J. Allen Holland, Jr., BBO #546892
LYNCH, BREWER, HOFFMAN & FINK, LLP
101 Federal Street, 22nd Floor
Boston, MA  02110-1800
(617) 951-0800

Dated:  June 5, 2007

259786_1

OAO 88 (Rev. 1/94) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

### DISTRICT OF  MASSACHUSETTS

Ronnie Jones, et al.
V.
City of Boston et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] 05-11832-GAO

TO: Psychemedics Corporation
  125 Nagog Park
  Acton, MA 01720

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION<br>Bingham McCutchen LLP / 150 Federal Street / Boston, MA 02110 | DATE AND TIME<br>1/10/2007 - 9:00 a.m. |
|---|---|

YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Schedule A attached hereto, which also also list topics of examination for the deposition on January 10, 2007

| PLACE<br>Bingham McCutchen LLP / 150 Federal Street / Boston, MA 02110 | DATE AND TIME<br>12/1/2006 - 9:00 a.m. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>*Robert Baker*   Attorney for Plaintiffs | DATE<br>11/3/06 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Robert B. Baker / Bingham McCutchen LLP / 150 Federal Street, Boston, MA 02110 / Phone (617) 951-8000

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1]If action is pending in district other than district of issuance, state district under case number.

American LegalNet, Inc.
www.USCourtForms.com

provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

American LegalNet, Inc.
www.USCourtForms.com

Ͻ 88 (Rev 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | |
|---|---|
| DATE __11/3/06__ | PLACE __125 Naqoq Park__ |

SERVED: **Psychemedics Corporation**

| | |
|---|---|
| SERVED ON (PRINT NAME) __Bill THistle__ | MANNER OF SERVICE __Hand__ |

| | |
|---|---|
| SERVED BY (PRINT NAME) __Matthew Morris__ | TITLE __Process Server__ |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on __11/3/06__

SIGNATURE OF SERVER

__11 Beacon St., Boston, MA__
ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall ·sh or modify the subpoena if it

(¡) fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the

www.USCourtForms.com

## SCHEDULE A

### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **RONNIE JONES, et al.**<br>**Plaintiffs,** | ) ) ) | **NO. 05-11832-GAO** |
| **vs.** | ) ) | **SUBPOENA**<br>**(Fed. R. Civ. P. 45(a))** |
| **CITY OF BOSTON, et al.** | ) ) | |
| **Defendants.** | ) ) ) | |

### DEFINITIONS AND INSTRUCTIONS

1.     "Defendants" refers to any or all of the defendants in the above-captioned action – the City of Boston, the Boston Police Department, and Kathleen O'Toole (in her official capacity as Commissioner of the Boston Police Department), including any successors-in-interest, predecessors-in-interest, and any present or former agents, servants, employees, attorneys, consultants, and any other persons acting on behalf of any of them.

2.     "Plaintiffs" refers to Ronnie Jones, Richard Beckers, Walter R. Washington, William E. Bridgeforth, Shawn N. Harris, Eugene Wade, George C. Downing, Jr., Clararise Bristow, Rachelle Couch, Keri Hogan, and the Massachusetts Association of Minority Law Enforcement Officers ("MAMLEO").

3.     "You" or "Psychemedics" refers to Psychemedics Corporation, including any successors-in-interest, predecessors-in-interest, and any present or former agents, servants, employees, attorneys, consultants, and any other person acting on its behalf.

4.     "Person" means any natural person or any business, legal, or governmental entity or association, or other organization; or employee, agent or representative of any of the foregoing.

5.    "Hair Test" means the mandatory annual drug test performed on hair samples as described in Boston Police Department Rule 111V(G), which is attached hereto as Exhibit 1.

6.    "Hair Specimens" means samples of the Plaintiffs' hair that were taken by Defendants and analyzed by Psychemedics in connection with the Hair Test.  The hair sample collection process is described at part G of Appendix D to Rule 111.

7.    "Psychemedics' Hair Testing" are Psychemedics' tests, methods, policies, and/or procedures for analyzing hair samples to detect cocaine.

8.    Psychemedics' Standard Operating Procedures include any documents describing the policies and procedures followed by Psychemedics in testing hair for cocaine, including, but not limited to: Psychemedics' Laboratory Polices and Procedures Manual and any updates thereto; Psychemedics' procedures for chain of custody and updates thereto; Psychemedics' procedures for sample aliquoting and updates thereto; Psychemedics' procedures for preparation for an immunoassay and updates thereto; Psychemedics' procedures for immunoassay and updates thereto; Psychemedics' criteria for a positive immunoassay and updates thereto; Psychemedics' confirmation procedures and updates thereto; Psychemedics' calibration curve and updates thereto; Psychemedics' method of generation of the calibration curve (line forced through zero, least squares, weighted least squares, etc.) and updates thereto; Psychemedics' criteria for a poor calibration curve and updates thereto; Psychemedics' procedures for a poor sample and updates thereto; Psychemedics' procedures for subtraction of blank values and updates thereto; Psychemedics' procedures for the amount of internal standard and updates thereto; Psychemedics' procedures for quality control and updates thereto; and Psychemedics' procedures for confirmation positive and updates thereto.

9.    "Communication" means the transmittal of information in any form, including any oral or written transmittal or information, or request for information, made from one

person to another person, whether made in person, by telephone, by electronic mail, or by any other means, and includes any documents made only for the purpose of recording a communication, idea, statement, opinion, or belief.

10.    "Concerning" means referring to, regarding, referring to, describing, summarizing, evidencing, or constituting.

11.    A document that "concerns," "refers to," or "relates to" a given subject matter means any document that constitutes, contains, embodies, reflects, identifies, states, references, deals with, or is in any way pertinent to that subject, including, without limitation, documents concerning the presentation of other documents.

12.    "Document" means those things described in Fed. R. Civ. P. 34(a) and Local Rule 26.5 (attached hereto as <u>Exhibit 2</u>), including without limitation the original and each draft or otherwise non-identical copy of such document, all writings, graphics, printed matter, recordings of any kind, including audiotape, videotape, and all information retrievable from computer systems, including electronic mail, in the actual or constructive possession, custody, care or control of Psychemedics, its attorneys, or other persons or entities acting on behalf of Psychemedics.

13.    The singular form shall include the plural and vice versa, wherever such dual construction will serve to bring within the scope of these requests any answer or response which otherwise would not be brought within its scope.

14.    The words "and" and "or" shall be construed both conjunctively and disjunctively, and each shall include the other, wherever such dual construction will serve to bring within the scope of these interrogatories any answer or response which otherwise would not be brought within its scope.

15.    If you have no documents responsive to a particular request, you must so state. If any document that would have been produced in response to any request for production was, but is no longer, in the defendants' possession or custody or subject to the

defendants' control, in addition to stating any information requested concerning such document of which defendants have knowledge, state the present location of such document.

16.    If you object to any request in part, you shall respond fully to the extent to which there is no objection to the request, and shall set forth specifically the grounds upon which the objection is based.

17.    If you refuse to produce any document requested herein on the grounds of privilege, work product, or otherwise, please set forth in the written response to the request as to each such document: its author(s), and address(es), the person(s) to whom copies were furnished, its date, its general subject matter, and the basis for the refusal to produce the requested material.

18.    Documents shall be produced in their original file folders, or, in lieu thereof, any writing on the file folders from which documents are taken shall be copied and appended to such documents. Documents shall be produced as they are kept in the usual course of business or organized and labeled to correspond with each numbered paragraph and each lettered subparagraph of this request for production in response to which such documents are being produced.

19.    Unless otherwise indicated, the time period covered by these requests is from January 1, 1998 to the date of your response.

20.    These requests for production are continuing in nature, and as additional information becomes available to you after service of your original responses hereto, you are requested to promptly submit supplemental responses setting forth such additional information in full.

## Requested Documents And Things To Be Produced

1.    All documents and communications between Psychemedics and Defendants.

2.    All documents and communications between Psychemedics and any present or former agents, servants, employees, attorneys, consultants of the Department of Health and Human Services or the Substance Abuse and Mental Health Services Administration, including, but not limited to, all documents and communications between Psychemedics and Robert Stephenson.

3.    All marketing materials concerning Psychemedics' Hair Testing.

4.    All documents and communications concerning the Plaintiffs, the Hair Test, the Defendants, or the Hair Specimens.

5.    Psychemedics' Standard Operating Procedures in effect between January 1, 1994 and the present.

6.    All documents and communications concerning changes to Psychemedics' Standard Operating Procedures between January 1, 1994 and the present.

7.    All documents and communications concerning Psychemedics' Standard Operating Procedures between January 1, 1994 and the present.

8.    All documents and communications concerning the policies, procedures, methods, and standards used by Psychemedics in testing hair samples for the presence of illegal drugs, including cocaine, between January 1, 1994 and the present.

9.    Documents concerning Psychemedics decision to use Liquid Chromatography/Mass Spectrometry/Mass Spectrometry (LC/MS/MS) instead of gas chromatography/mass spectrometry (GC/MS) for analyzing hair samples to detect cocaine, including, but not limited to, documents concerning the relative costs of liquid chromatography to gas chromatography to test hair for cocaine.  The time period for this request is January 1, 1994 to the present.

10.    All documents and communications concerning the standards, methods, procedures, and criteria to be applied in connection with all aspects of the Hair Test,

including the collection, transmission, storage, and testing of the samples, and the analysis confirmation, and reporting of the test results.

11.    All documents and communications concerning Psychemedics' funding of, sponsorship of, or other contribution to any study concerning the scientific validity of testing hair to detect drugs of abuse, including, but not limited to, documents and communications concerning Psychemedics' funding of, sponsorship of, or other contribution to any study concerning whether the testing of hair to detect drugs of abuse, including cocaine, depends on the race of the person tested and/or his or her hair color or hair texture. The time period for this request is January 1, 1994 to the present.

12.    All documents and communications concerning Psychemedics' funding of any organization or entity that concerns itself with the testing of hair to detect drugs of abuse, including cocaine.  The time period for this request is January 1, 1994 to the present.

13.    All documents and communications concerning Psychemedics' funding of travel and expenses for any university professor or other scholar to attend a conference concerning the testing of hair to detect drugs of abuse, including cocaine.  The time period for this request is January 1, 1994 to the present.

14.    All documents concerning Psychemedics' funding of any scientific journals. The time period for this request is January 1, 1994 to the present.

15.    All documents and communications concerning Psychemedics' compliance with 21 CFR Part 809.40(c), which requires that a laboratory testing hair for drugs of abuse "shall have, and shall be recognized as having, adequate capability to reliably perform the necessary screening and confirmatory tests, including adequate capability to perform integrity checks of the biological specimens for possible adulteration."

16.    All documents and communications concerning Psychemedics' certification in the area of toxicology by the Health Care Financing Administration, the College of

American Pathologists, or any other organization with deemed status in the area of toxicology.

17. All documents and communications concerning Psychemedics' status as a licensed laboratory certified to perform hair testing. This request includes, but is not limited to, Psychemedics' Clinical Laboratory Improvement Amendments of 1998 (CLIA) Application for Certification.

18. All documents and communications concerning correspondence between the Food and Drug Administration ("FDA") and Psychemedics relating to the litigation matter initiated in 1995 before the United States Court of Appeals for the First Circuit, styled *Psychemedics Corporation v. Food and Drug Administration*, Case No. 95-2357. This request includes, but is not limited to, all documents concerning the resolution of this litigation and the FDA's decision, on March 26, 1996, to withdraw its November 20, 1995 letter to Psychemedics, notifying Psychemedics that its PDT-909 Personal Drug Testing Service (K954493) device was not substantially equivalent to any legally marketed predicate device and that any commercial distribution of the device would be in violation of the Federal Food, Drug, and Cosmetic Act. The time period for this request is January 1, 1994 to the present.

19. All documents and communications concerning the following statement in the September 11, 2002 Consent Motion for Voluntary Dismissal ("the Consent Motion") that resolved the litigation matter initiated in 2000 before the United States Court of Appeals for the District of Columbia Circuit, styled *Psychemedics Corporation v. Donna E. Shalala, Jane E. Henney, M.D., and Food and Drug Administration*, Case No. 00-1199: "The parties have in fact continued their discussions, and the agency has taken actions with respect to Psychemedics' laboratory testing services. Based on those discussions and agency actions, Psychemedics – with Respondents' consent – respectfully requests that this case be voluntarily dismissed without prejudice, each party to bear its own costs." This request

seeks documents concerning the "discussions and agency actions" described in the Consent Motion other than the FDA's decision to provide 510K clearance to Psychemedics to market all five of its assays for testing hair for drugs of abuse.

20.    All documents and communications supporting Psychemedics' statements in its Memorandum of Points and Authorities In Support of Defendant Psychemedics Corporation's Motion For Summary Judgment in the California Superior Court matter (San Mateo, 2002, Civ No. 427728) *Lois D. Boyd v. Psychemedics* that:

a.    "Throughout the process, Psychemedics met the federal and state requirements to perform hair testing for drugs...."

b.    Psychemedics "followed standard laboratory procedures...."

c.    "[T]he Federal Food and Drug Administration has evaluated the proprietary procedures used by Psychemedics in conducting hair analysis for drugs of abuse and has cleared Psychemedics' procedures as accurate and reliable."

d.    "[T]he FDA cleared Psychemedics' test and procedures as accurate and reliable."

e.    "The U.S. Department of Health and Human Services, the Centers for Medicare and Medicaid Services, under the Federal Clinical Laboratory Improvement Amendments (CLIA) and California have authorized Psychemedics to perform forensic toxicology drug testing... Those authorizations are the only requirements Psychemedics needed to have in order to analyze the samples of Boyd's hair that Anderson Chevrolet collected and sent to Psychemedics."

> f.    "The CLIA certificate and the California license demonstrate that Psychemedics did not have a defective drug test and testing procedures."

21.    All documents concerning Psychemedics' participation in any study sponsored or administered by the Society For Hair Testing, the Substance Abuse and Mental Health Services Administration, or RTI International, including, but not limited to, the results of any such study.

22.    All documents and communications concerning any contract, agreement, or other document concerning the terms of the relationships between Psychemedics and the Defendants, including but not limited to documents concerning the negotiation, drafting, or performance of such contracts, agreements, or other documents.

23.    Samples of Hair Specimens taken from each of the Plaintiffs sufficient in size to allow for independent DNA testing by another laboratory to be performed on the samples produced.

24.    All documents sufficient to identify the particular facilities and persons involved in the Hair Tests performed on samples taken from the Plaintiffs, including the location of sampling, storage, and testing facilities; the names, affiliations, employment status, and whereabouts of all persons who collected, handled, transmitted, tested, processed, prepared, or analyzed plaintiffs' Hair Specimens, and all persons who were involved in record-keeping, data collection, analysis, interpretation or reporting of test results.

25.    All documents and communications concerning the training and supervision of persons involved in the collections and transmission of hair samples to Psychemedics; the performance and conduct of the Hair Test and related data collection and record-keeping; and the analysis, interpretation, and reporting of Hair Test Results.

26.    All documents and communications concerning Psychemedics' status as a certified laboratory to perform hair testing as described in Rule 111, Appendix D of Defendants' Substance Abuse Policy (attached hereto as Exhibit 1).

27.    All documents and communications concerning the identity, qualifications, employment status, and employment history of the Medical Review Officer(s) who provided services to the Defendants in conjunction with the Hair Test during the relevant time period.

28.    All documents and communications concerning the scientists and/or experts consulted by Psychemedics concerning the Hair Test. The time period for this request is January 1, 1994 to the present.

29.    All documents and communications concerning the cut-off levels for cocaine for the initial hair test. The time period for this request is January 1, 1994 to the present.

30.    All documents and communications concerning the determination of and any changes made to the cut-off levels for cocaine applicable to the Hair Test, including the Safety Net Test, where "cut-off levels" means the value at which a result of the Hair Test is reported as positive for the presence of illegal drugs and below which a result is reported as negative for the presence of illegal drugs. The time period for this request is January 1, 1994 to the present.

31.    All documents and communications concerning whether Psychemedics' Hair Testing has a racial, hair texture, or hair color bias, including documents and communications concerning whether the likelihood of a positive test result is correlated with a person's race, hair texture, or hair color.

32.    All documents and communications concerning whether Psychemedics' Hair Testing is affected by a person's passive exposure to drugs of abuse, including cocaine.

33.    All documents concerning Psychemedics' procedures for determining the color of a hair sample, including, but not limited to, Psychemedics' procedures for determining the natural hair color of a hair sample.

34.    All documents and communications concerning how results of the Hair Test are

transmitted from Psychemedics to the Defendants.

35.    All documents and communications concerning how long Psychemedics retains hair samples, test results, and records after submitting the test results to the Defendants.

36.    All documents and communications concerning the race, hair texture, hair color, and test result of Boston Police Department personnel who were tested for drugs, including cocaine, on the initial hair and/or safety-net hair test(s).

37.    All documents concerning the race, hair texture, hair color, and test result of persons who Psychemedics tested for drugs, including cocaine.

38.    All documents and communications concerning any instance in which a Hair Test reported as positive for one or more illegal drugs was deemed to be erroneous or inconclusive as to the question whether the person had actually ingested any illegal drug, including cocaine.

39.    All documents and communications concerning whether contamination, passive exposure, bias of any kind, sample handling, record keeping, interpretation, or any other factors or phenomena do affect or might affect the results of Psychemedics' Hair Testing or the accurate, objective, neutral, and unbiased reporting Psychemedics' Hair Testing  results, including all documents and communications concerning any presentation, discussion, analysis, assessment, or evaluation of potential or actual bias or disparate impact, based upon race or any other factor, related to Psychemedics' Hair Testing and all documents and communications concerning any discussion, analysis, assessment, or evaluation of alternative drug testing methods with less potential or actual bias or disparate impact that that associated with or related to Psychemedics' Hair Testing.

40.    All documents and communications concerning the accuracy and reliability – or lack thereof – of all aspects of Psychemedics' Hair Testing , including the standards, methods, procedures, and criteria to be applied in the collection, transmission, storage, and testing of the samples; the analysis interpretations, confirmation, and reporting of the test results; and the retention of samples and records after Psychemedics' Hair Testing results are reported to the

Defendants.

41.    All documents and communications concerning complaints, grievances, petitions, or lawsuits concerning the Hair Test, hair drug testing in general, or Psychemedics' Hair Testing.

## TOPICS OF EXAMINATION

The deposition will cover the following topics:

1.      Authenticity and contents of documents produced by Psychemedics in response to this subpoena *duces tecum*.

2.      Psychemedics' Hair Testing.

3.      The policies and procedures for Psychemedics' Hair Testing, including, but not limited to, Psychemedics' Standard Operating Procedures.

4.      Changes to the policies and procedures for Psychemedics' Hair Testing, including, but not limited to, Psychemedics' Standard Operating Procedures.

5.      Plaintiffs' Hair Specimens.

6.      Psychemedics' marketing materials.

7.      The contracts, agreements, or other documents concerning the terms of the relationship between Psychemedics and the Defendants.

8.      Documents and communications between Psychemedics and Defendants.

9.      Documents and communications between Psychemedics and any present or former agents, servants, employees, attorneys, consultants of the Department of Health and Human Services or the Substance Abuse and Mental Health Services Administration.

10.     Documents and communications concerning the Plaintiffs, the Hair Test, the Defendants, or the Hair Specimens.

11.     Psychemedics' status as a certified laboratory to perform hair testing as described in Rule 111, Appendix D of Defendants' Substance Abuse Policy.

12.     Psychemedics' compliance with 21 CFR Part 809.40(c), which requires that a laboratory testing hair for drugs of abuse "shall have, and shall be recognized as having, adequate capability to reliably perform the necessary screening and confirmatory tests, including adequate capability to perform integrity checks of the biological specimens for possible adulteration."

13.     Psychemedics' certification in the area of toxicology by the Health Care Financing Administration, the College of American Pathologists, or any other organization with deemed status in the area of toxicology.

14.     Psychemedics' status as a licensed laboratory certified to perform hair testing. This request includes, but is not limited to, Psychemedics' Clinical Laboratory Improvement Amendments of 1998 (CLIA) Application for Certification.

15.     The litigation matter initiated in 1995 before the United States Court of Appeals for the First Circuit, styled *Psychemedics Corporation v. Food and Drug Administration*, Case No. 95-2357.

16.     The litigation matter initiated in 2000 before the United States Court of Appeals for the District of Columbia Circuit, styled *Psychemedics Corporation v. Donna E. Shalala, Jane E. Henney, M.D., and Food and Drug Administration*, Case No. 00-1199.

17.     The litigation matter initiated in 2002 before the California Superior Court in San Mateo, styled *Lois D. Boyd v. Psychemedics*, Case No. 427728.

18.     The identity of all persons who are responsible for handling or who have handled Plaintiffs' Hair Specimens.

19.     The name and location of the laboratories and the identity of the Psychemedics' representatives who performed Psychemedics' Hair Testing on the Hair Specimens.

20.     The identity, qualifications, employment status, and employment history of the Medical Review Officer(s) who provided services to Defendants in conjunction with the Hair Test during the relevant time period.

21.     The scientists and/or experts consulted by Psychemedics concerning Psychemedics' Hair Testing .

22.     An explanation of why Psychemedics uses liquid chromatography instead of gas chromatography ("GC/MS") as GC/MS is the only approved confirmation for federally mandated urine testing.

23.   The cut-off levels for the initial Hair Test from January 1, 1994 to the present.

24.   The cut-off levels for the safety-net Hair Test from January 1, 1994 to the present.

25.   The racial, hair texture, or hair color bias of Psychemedics' Hair Testing.

26.   The effect of external contamination on Psychemedics' Hair Testing.

27.   Bias in Psychemedics' Hair Testing concerning passive exposure.

28.   Knowledge of Psychemedics in the external contamination of hair.

29.   The effect of hair color on passive exposure.

30.   Changes to the Psychemedics' Standard Operating Procedures and their effect on the ability to distinguish passive exposure from actual drug use.

31.   Psychemedics' procedures for determining the color of a hair sample, including, but not limited to, Psychemedics' procedures for determining the natural hair color of a hair sample.

32.   The practice by which the results of Psychemedics' Hair Testing are transmitted from Psychemedics to the Defendants.

33.   The length of time that Psychemedics retains hair samples, test results, and records after submitting the test results to the Defendants.

34.   The name, race, hair texture, hair color, and test result of Boston Police Department personnel who were tested for drugs on the initial hair and/or safety-net hair test(s).

35.   The race, hair texture, hair color, and test result of persons who were tested for drugs on any Psychemedics' initial hair and/or safety-net drug test(s).

36.   Positive results on a Psychemedics' Hair Test where a person did not ingest a drug of abuse, including cocaine.

37.   The reliability of Psychemedics' Hair Testing.

38.   Complaints, grievances, or petitions from anyone concerning Psychemedics' Hair Testing.

# LYNCH, BREWER, HOFFMAN & FINK, LLP
### ATTORNEYS AT LAW

OWEN B. LYNCH
EDWARD S. BREWER, JR.º
ALAN R. HOFFMAN
PETER W. FINK*
J. ALLEN HOLLAND, JR.
ELIZABETH A. ZELDIN†
JOHN P. DENNIS§
STEVEN L. SCHRECKINGER
TAMARA S. WOLFSON
PATRICK J. KINNEY, JR.
PHYLLIS ZELERMYER WALD
ANNE HOFFMAN
DALE C. KERESTER
JENNIFER C. PLATT
CHRISTINE B. WHITMAN·*
KAREN TOSH^^
THOMAS J. CLEMENS
KARIN I. MCEWEN†
HARVEY NOSOWITZ
ANNE ROBBINS
JANE M. GUEVREMONT
SONIA J. KWON*

101 FEDERAL STREET, 22ND FLOOR
BOSTON, MASSACHUSETTS 02110-1800

TELEPHONE (617) 951-0800
FAX (617) 951-0811
http://www.lynchbrewer.com

^ALSO ADMITTED IN AL
·ALSO ADMITTED IN CT
*ALSO ADMITTED IN FL
^ALSO ADMITTED IN KY
§ALSO ADMITTED IN ME
§ALSO ADMITTED IN NH
†ALSO ADMITTED IN NJ
†ALSO ADMITTED IN NY
^ALSO ADMITTED IN SC

November 17, 2006

**VIA HAND DELIVERY**
Robert B. Baker, Esq.
Bingham McCutchen
150 Federal Street
Boston, MA 02110

> **Re:**   **Ronnie Jones, et al. v. City of Boston, et al.**
> **Civil Action No. 051182-GAO; Deposition Subpoena to Psychemedics Corporation**

Dear Mr. Baker:

As we discussed, I represent Psychemedics Corporation ("Psychmedics") in connection with the subpoena issued to you by Psychemedics Corporation. Pursuant to FRCP 45(c)(2)(B), I am writing to object to the production of certain documents sought in that subpoena, as detailed below. Psychmedics further objects to this subpoena in its entirety, except as it relates to the plaintiffs in this case, as it appears to seek documents which are not reasonably calculated to lead to the discovery of admissible evidence and are designed to cause Psychmedics to incur unreasonable burden and expense.

Request No. 1

Psychemedics objects to this request insofar as it seeks documents and communication related to individuals other than the plaintiffs on the ground that the production of these materials would violate the privacy rights of those non-parties. Psychmedics further objects to this request for production on the ground that it is overly broad and unduly burdensome. Finally, Psychemedics objects to certain communication between it and the defendants' attorneys on the grounds that the defendants have asserted the attorney-client and/or work product privileges with respect to certain materials. I will provide you with a privilege log with respect to all documents covered by this privilege claim.

Robert B. Baker, Esq.
November 17, 2006
Page 2

Request No. 2

Psychmedics objects to this request on the grounds that the documents sought contain trade secrets and confidential, proprietary information.  Psychemedics further objects to this request on the ground that it is overly broad and unduly burdensome.

Request No. 3

Psychemedics objects to this request on the ground that it is overly broad and unduly burdensome.

Request No. 4

Psychemedics objects to this request insofar as it seeks documents and communication related to individuals other than the plaintiffs on the ground that the production of these materials would violate the privacy rights of those non-parties.  Psychmedics further objects to this request for production on the ground that it is overly broad and unduly burdensome.  Finally, Psychemedics objects to certain communication between it and the defendants on the grounds that the defendants have asserted the attorney-client and/or work product privileges with respect to certain materials.  I will provide you with a privilege log with respect to all documents covered by this privilege claim.

Request No. 5

Psychemedics objects to this request on the grounds that the documents sought contain trade secrets and confidential, proprietary information.  Psychemedics further objects to this request on the ground that the request is unduly burdensome.

Request No. 6

Psychemedics objects to this request on the grounds that the documents sought contain trade secrets and confidential, proprietary information.  Psychemedics further objects to this request on the ground that the request is unduly burdensome.

Request No. 7

Psychemedics objects to this request on the ground that the documents sought contain trade secrets and confidential, proprietary information.  Psychemedics further objects to this request on the ground that it is overly broad and unduly burdensome.

Robert B. Baker, Esq.
November 17, 2006
Page 3

Request No. 8

Psychemedics objects to this request on the ground that the documents sought contain trade secrets and confidential, proprietary information. Psychemedics further objects to this request on the ground that it is overly broad and unduly burdensome.

Request No. 9

Psychemedics objects to this request on the ground that the documents sought contain trade secrets and confidential, proprietary information. Psychemedics further objects to this request on the ground that it is overly broad and unduly burdensome.

Request No. 10

Psychemedics objects to this request on the ground that the documents sought contain trade secrets and confidential, proprietary information. Psychemedics further objects to this request on the ground that it is overly broad and unduly burdensome.

Request No. 11

Psychemedics objects to this request on the grounds that it is overly broad and unduly burdensome. Psychmedics further objects to this request on the ground that the documents sought contain confidential information.

Request No. 12

Psychemedics objects to this request on the grounds that it is overly broad and unduly burdensome. Psychmedics further objects to this request on the ground that the documents sought contain confidential information.

Request No. 13

Psychemedics objects to this request on the grounds that it is overly broad and unduly burdensome. Psychmedics further objects to this request on the ground that the documents sought contain confidential information.

Request No. 14

Psychemedics objects to this request on the grounds that it is overly broad and unduly burdensome. Psychmedics further objects to this request on the ground that the documents sought contain confidential information.

Robert B. Baker, Esq.
November 17, 2006
Page 4

Request No. 15

Psychemedics objects to this request on the grounds that the documents sought
contain trade secrets and confidential, proprietary information. Psychemedics further
objects to this request on the ground that the request is unduly burdensome.

Request No. 16

Psychemedics objects to this request on the grounds that the documents sought
contain trade secrets and confidential, proprietary information. Psychemedics further
objects to this request on the ground that the request is unduly burdensome.

Request No. 17

Psychemedics objects to this request on the grounds that the documents sought
contain trade secrets and confidential, proprietary information. Psychemedics further
objects to this request on the ground that the request is unduly burdensome.

Request No. 18

Psychemedics objects to this request on the grounds that the documents sought
contain trade secrets and confidential, proprietary information. Psychemedics further
objects to this request on the ground that the request is unduly burdensome.

Request No. 19

Psychemedics objects to this request on the grounds that the documents sought
contain trade secrets and confidential, proprietary information. Psychemedics further
objects to this request on the ground that the request is unduly burdensome.

Request No. 20

Psychemedics objects to this request on the grounds that it is overly broad and
unduly burdensome. Psychemedics further objects to this request insofar as it seeks
documents protected by the attorney-client and work-product privileges.

Request No. 21

Psychemedics objects to this request for production of documents on the grounds
that it is overly broad and unduly burdensome. Psychemedics further objects to this request
on the grounds that the documents sought contain trade secrets and confidential,
proprietary information.

Robert B. Baker, Esq.
November 17, 2006
Page 5

## Request No. 22

Psychmedics objects to this request insofar as it seeks documents other than the relevant agreements on the grounds that it is overly broad and unduly burdensome.

## Request No. 23

Psychemedics will make hair samples available for inspection. However, if you want a sample for destructive testing, we need to reach an agreement on this satisfactory to all parties.

## Request No. 25

Psychemedics objects to this request on the grounds that it is overly broad and unduly burdensome. Psychmedics further objects to this request on the ground that the documents sought contain confidential information.

## Request No. 26

Psychemedics objects to this request on the grounds that it is overly broad and unduly burdensome. Psychmedics further objects to this request on the ground that the documents sought contain confidential information.

## Request No. 27

Psychmedics objects to this request insofar as it seeks personal, confidential information of a non-party.

## Request No. 28

Psychemedics objects to this request on the grounds that the documents sought contain trade secrets and confidential, proprietary information. Psychemedics further objects to this request on the grounds that it is overly broad and unduly burdensome.

## Request No. 29

Psychemedics objects to this request on the grounds that the documents sought contain trade secrets and confidential, proprietary information. Psychemedics further objects to this request on the grounds that it is overly broad and unduly burdensome.

Robert B. Baker, Esq.
November 17, 2006
Page 6

Request No. 30

    Psychemedics objects to this request on the grounds that the documents sought contain trade secrets and confidential, proprietary information. Psychemedics further objects to this request on the grounds that it is overly broad and unduly burdensome.

Request No. 31

    Psychemedics objects to this request on the grounds that the documents sought contain trade secrets and confidential, proprietary information. Psychemedics further objects to this request on the grounds that it is overly broad and unduly burdensome.

Request No. 32

    Psychemedics objects to this request on the grounds that the documents sought contain trade secrets and confidential, proprietary information. Psychemedics further objects to this request on the grounds that it is overly broad and unduly burdensome.

Request No. 33

    Psychemedics objects to this request on the grounds that the documents sought contain trade secrets and confidential, proprietary information. Psychemedics further objects to this request on the grounds that it is overly broad and unduly burdensome.

Request No. 36

    Psychemedics objects to this request on the grounds that it is overly broad and unduly burdensome. Psychemedics further objects to this request on the grounds that the production of these documents would violate the privacy rights of third parties.

Request No. 37

    Psychemedics objects to this request on the grounds that it is overly broad and unduly burdensome. Psychemedics further objects to this request on the grounds that the production of these documents would violate the privacy rights of third parties.

Request No. 38

    Psychemedics objects to this request on the grounds that it is overly broad and unduly burdensome. Psychemedics further objects to this request on the grounds that the production of these documents would violate the privacy rights of third parties.

Robert B. Baker, Esq.
November 17, 2006
Page 7

Request No. 39

Psychemedics objects to this request on the grounds that the documents sought contain confidential, proprietary information and trade secrets. Psychemedics further objects to this request on the grounds that it is overly broad and unduly burdensome.

Request No. 40

Psychemedics objects to this request on the grounds that the documents sought contain confidential, proprietary information and trade secrets. Psychemedics further objects to this request on the grounds that it is overly broad and unduly burdensome.

Request No. 41

Psychemedics objects to this request on the grounds that the documents sought contain confidential, proprietary information and trade secrets. Psychemedics further objects to this request on the grounds that it is overly broad and unduly burdensome. Moreover, the documents sought may contain attorney-client or work product privileged materials.

As we discussed, your requests appear to seek virtually every piece of paper generated by Psychemedics over the last twelve years, including all documents related to millions of drug tests performed by Psychemedics since January 1, 1994. I am certainly willing to discuss producing documents which are responsive to some of the objected to requests if these requests are reasonably tailored to address issues in this case.

Very truly yours,

J. Allen Holland, Jr.

cc:    Mary Jo Harris, Esq. (via telecopier)
       Helen G. Litsas, Esq. (via telecopier)
       Psychemedics Corporation

JAH/rmr/249427_1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RONNIE JONES, ET AL.,                )
                      Plaintiffs,    )
                                     )        CIVIL ACTION NO. 05-11832-GAO
v.                                   )
                                     )
CITY OF BOSTON, ET AL.,              )
                      Defendants.    )
_____)

### AFFIDAVIT OF WILLIAM THISTLE

I, William Thistle, being under oath, do depose and state as follows:

1.      I am the Senior Vice-President and General Counsel of Psychemedics Corporation.

2.      Testing laboratories do not, in the normal course of business, make available to the public their standard operating procedures, (SOPs), which are blueprints for their business.  Psychemedics, which has been doing business since 1986, is no exception and does not deviate from this practice.  The Psychemedics' laboratory has meticulously developed the SOPs which govern its patented methodology over time, helping the company to maintain a professional reputation and a competitive edge in the hair drug testing market.  The Boston Police Department does not have access to these documents.

3.      Production of the SOP's, even under a Protective Order, will provide opposing experts with the necessary data necessary not only to run a hair testing lab, but also to run a hair testing lab employing special test conditions, methods and equipment settings which have been optimized as a result of twenty plus years of running the Psychemedics laboratory.  The SOP documents discuss how and why the optimized settings and conditions are

achieved, not merely what are the settings, test conditions and equipment required. This added layer of knowledge, reflecting the optimization of test conditions, methods and equipment settings, goes beyond the needs of parties involved in the litigation.

4.      If the parties seek to know what the requirements are to conduct an accurate test employing Psychmedics' test methods, the data packages already provided to Boston PD contains that information. If the parties seek to know what issues these requirements address, then our recent studies published in peer reviewed journals will answer that question. But seeking entire SOPs that lay out how to optimize lab production procedures and drug testing methods clearly goes beyond the needs of the parties.

5.      In addition, the plaintiffs' claim that no proprietary rights reside in Psychemedics test methods described in publicly available documents (e.g., published studies and patents), misses the mark since such documents do not describe how to run a lab at a profit based on optimization. Instead, those documents describe the methods used, the data supporting the results achieved and issues overcome. All this information and achievements are discussed in publicly available documents, but again, information on how to run a lab is not revealed. Plaintiffs, of course, already have access to publicly available documents that they claim contain the SOP information. If this is the case, there is no additional need for the plaintiffs to obtain the SOPs.

6.      Psychemedics has a fiduciary duty to its shareholders to maintain its SOPs as a non-public, confidential document. To release the proprietary

documents would not only likely damage the company and, thus, its shareholders, but would also potentially run afoul of SEC regulations. I would be remiss in my duty as General Counsel of Psychemedics to advise the company to produce information of this kind.

7.    Psychemedics' laboratory is licensed to conduct forensic toxicology drug testing U.S. Department of Health and Human Services, the Centers for Medicare and Medicaid Services, under the federal Clinical Laboratory Improvement Act (CLIA); the College of American Pathologists; and numerous state licensing authorities. Licensing criteria are established by these various agencies to ensure accurate and reliable testing, and Psychemedics is subject to regular inspections to ensure compliance with these criteria.

8.    During these inspections, these agencies have the authority to review Psychemedics SOP's on-site, (but not to photocopy them), in order to ensure the laboratory is also in compliance with its own established procedures. Attached by way of example are copies of various licenses issued to Psychemedics by these agencies, evidencing adherence by Psychemedics to its SOPs and to the licensing requirements of the issuing agency. (Exhibit 1).

9.    The plaintiffs' request for Psychemedics' SOP's is also overly broad and is not relevant because it seeks SOP's dating back to 1994, prior to the date of Psychemedics' first contract with the Boston Police Department. Psychemedics first contracted with the Boston Police Department in 1998. Production of Psychemedics SOP's prior to 2002 is simply not relevant to the present action since the Plaintiffs' earliest positive test result, the triggering

events in the instant case, did not occur until 2002.  Furthermore, Psychemedics

fails to see the relevancy of producing SOP's for years wherein testing was not

performed pursuant to its contracts with the Boston Police Department.

      10.     Finally, compliance with the subpoena places an undue burden on

Psychemedics and the potential harm caused by production outweighs the

benefit to the plaintiffs.  First, Psychemedics' SOP's for each year are

approximately eight inches thick and must be retrieved from storage.

Compliance with the subpoena in the present case would clearly place an undue

burden on Psychemedics due to the sheer volume of documents involved in the

requests and the number of years of SOP's requested.  Second, as previously

stated, the requested SOP's are non-public documents that contain confidential

and proprietary information.  Releasing such confidential and proprietary

documents would result in harm to Psychemedics as they contain information

critical to Psychemedics' financial and competitive well-being.


      Signed this _5_ day of June 2007 under the pains and penalties of
perjury.

_____

William Thistle
Sr. V.P. and General Counsel
Psychemedics Corporation



# The College of American Pathologists

certifies that the laboratory named below

**Psychemedics Corporation**
**Culver City, California**
**Michael I. Schaffer, PhD**

LAP Number: 3102701
AU-ID: 1192048

has met all applicable standards for accreditation and
is hereby fully accredited by the College of American
Pathologists' Forensic Urine Drug Testing Accreditation
Program. Reinspection should occur prior to April 26, 2008 to
maintain accreditation.

Accreditation does not automatically survive a change in director, ownership,
or location and assumes that all interim requirements are met.

Chair, Commission on Laboratory Accreditation

President, College of American Pathologists



CENTERS FOR MEDICARE & MEDICAID SERVICES

CLINICAL LABORATORY IMPROVEMENT AMENDMENTS

CERTIFICATE OF COMPLIANCE

LABORATORY NAME AND ADDRESS

PSYCHEMEDICS CORPORATION
5832 UPLANDER WAY
CULVER CITY, CA 90230-6608

LABORATORY DIRECTOR:

MARVIN PIETRUSZKA

CLIA ID NUMBER
05D0642561

EFFECTIVE DATE
03/30/2007

EXPIRATION DATE
03/29/2009

Pursuant to Section 353 of the Public Health Service Act (42 U.S.C. 263a) as revised by the Clinical Laboratory Improvement Amendments (CLIA), the above named laboratory located at the address shown hereon (and other approved locations) may accept human specimens for the purpose of performing laboratory examinations or procedures.

This certificate shall be valid until the expiration date shown, but is subject to revocation, suspension, limitation or other sanctions for violations of the Act or the regulations promulgated thereunder.

Judith A. Yost, Director
Division of Laboratory Services
Survey and Certification Group
Center for Medicaid and State Operations



State of California
Clinical Department of Health Services
License

In accordance with the provisions of Chapter 3, Division 2 of the Business and Professions Code, the persons named below are hereby issued a license authorizing operation of a clinical laboratory at the indicated address

(reverse side) on file with the field office

OWNER(S):

PSYCHEMEDICS CORPORATION

PSYCHEMEDICS CORPORATION
5832 UPLANDER WAY
CULVER CITY, CA  90230

DIRECTOR(S):

MARVIN PIETRUSZKA, MD

CLIA Number: 05D0842561
Lab ID Number: CLF-47767
Effective Date: MAY 08, 2007
Valid Until: MAY 08, 2008

Karen L Nickel, Chief
Laboratory Field Services

CERTIFICATE #: 58243

# State of Florida

## AGENCY FOR HEALTH CARE ADMINISTRATION
### DIVISION OF HEALTH QUALITY ASSURANCE

# CLINICAL LABORATORY

This is to confirm that PSYCHEMEDICS CORPORATION has complied with Chapter 483, Part I, Florida Statutes, and with 59A-7, Florida Administrative Code, and is authorized to operate the following laboratory in the specialties or subspecialties of:

Toxicology

**PSYCHEMEDICS CORPORATION**
5832 UPLANDER WAY
CULVER CITY, CA 90230

LICENSE #: 800014426

EFFECTIVE DATE 09/23/2005

EXPIRATION DATE: 09/22/2007

_Elizabeth Dudek_

Deputy Secretary, Division of Health Quality Assurance

CERTIFICATE #: _226_

LICENSE #: _42_

# State of Florida

## AGENCY FOR HEALTH CARE ADMINISTRATION
### DIVISION OF HEALTH QUALITY ASSURANCE

# FORENSIC TOXICOLOGY
# LABORATORY

This is to confirm that _PSYCHEMEDICS CORPORATION_ has complied with the applicable portions of s. 112.0455, laws of the
State of Florida and with 59A-24, Rules of the State of Florida and is authorized to operate the following:

**PSYCHEMEDICS CORPORATION**
5832 UPLANDER WAY
CULVER CITY, CA 90230

using the following specimen types: Hair

EFFECTIVE DATE _10/27/2006_

EXPIRATION DATE: _10/26/2007_

_Elizabeth Dudek_
Deputy Secretary, Division of Health Quality Assurance



# MARYLAND
## DEPARTMENT OF HEALTH AND MENTAL HYGIENE
### OFFICE OF HEALTH CARE QUALITY
SPRING GROVE CENTER
BLAND BRYANT BUILDING
55 WADE AVENUE
CATONSVILLE, MD 21228-4663

## MEDICAL LABORATORY PERMIT

NUMBER: 868       EFFECTIVE PERIOD: 07/01/2006 - 06/30/2008

*Pursuant to the provisions of TITLE 17, subtitle 2, Health-General Article, § 17-201 et seq.,
Annotated Code of Maryland, this permit is issued to:*

### PSYCHEMEDICS CORPORATION
5832 Uplander Way
CULVER CITY, CA 90230

**Director: Dr. MICHAEL SCHAFFER**
**Owner: PSYCHEMEDICS CORPORATION**

*For the performance of Medical Laboratory Tests in the following disciplines:*

**Forensic Toxicology - Job Related Test:**
Hair Drug Confirmation by GC/MS; GC/MS/MS; OR MS/MS, Hair Drug Screen - Single Use Test Device,
Urine Drug Screen - Single Use Test Device

**Chemistry:**
Toxicology - Drug of Abuse Level

CONTROL: 14241                    Director

*Falsification of a license shall subject the perpetrator to criminal prosecution and the imposition of civil fines.*



New York State Department of Health
Clinical Laboratory Permit

PFI 4357    CLIA 05D0642561

Psychemedics Corporation
5832 Uplander Way
Culver City, CA 90230

Owner: Psychemedics Corporation

Director: Michael I. Schaffer, Ph.D.

is hereby authorized to perform laboratory procedures for the above location in the following categories in accordance with Public Health Law Article 5, Title V.

Toxicology
(Comprised exclusively of non-urine specimens for hair analysis testing)

STATE OF NEW YORK
DEPARTMENT OF HEALTH

Renewal

Effective Date: July 1, 2006
Expiration Date: June 30, 2007

Subject to Revocation
Permit Not Transferable

Serial LAN-9762

POST CONSPICUOUSLY



**Oklahoma State Department of Health**
Creating a State of Health

December 20, 2006

Michael Schaffer, Ph.D., Laboratory Director
Psychemedics Corporation
5832 Uplander Way
Culver City, CA 90230

Lic. # - 8105

Dear Michael Schaffer, Ph.D.:

Enclosed is your facility's license to operate a Drug and/or Alcohol Testing Facility
performing the following test (s):

      __X__ Initial Drug Screening
           __X__ Urine
           __X__ Hair
      _____ Initial Alcohol Screening
           _____ Blood
           _____ Breath
      __X__ Confirmatory Drug Testing
           __X__ Urine
           __X__ Hair
      _____ Confirmatory Alcohol Testing
           _____ Blood
           _____ Breath

The license should be posted at the address where testing is performed. The license must
be posted in a conspicuous place observable by the public. The license is not transferable
or assignable. This letter should also be maintained in your files.

Please keep this office informed of any changes in facility operation or testing that may
affect your license. Notification of all changes must be made in writing to this office.

Sincerely

Dean Bay, Director
Facility Services
Medical Facilities

Commissioner of Health
and State Health Officer
James M Crutcher, MD, MPH

An Equal Opportunity Employer

Board of Health

Ron Osterhout, President
Alfred Baldwin, Jr
Gordon H Deckert, MD

Barry L Smith, JD, Vice President
Glen E Diacon, Jr, MD
Haskell L Evans, Jr, RPH

Jenny Alexopulos, DO, Secretary-Treasurer
Ron L Graves, DDS
Ann A Warn, MD

1000 NE 10TH Street
Oklahoma City, OK 73117-1299
www.health.ok.gov

# STATE OF OKLAHOMA

### Oklahoma State Department of Health

### This is to Certify that

### Psychemedics Corporation

### Is Hereby Licensed to Conduct and Maintain a

### Workplace Drug and Alcohol Testing Facility

### Under the Name of

### Psychemedics Corporation

### Located at

### 5832 Uplander Way
### Culver City, CA    90230

### Effective Date: 02/01/2007

### Expiration Date: 01/31/2008

This license is issued pursuant to the provisions of the Oklahoma Statutes and of the rules and regulations adopted by the State Board of Health. It is issued only for the premises named above and is not transferable or assignable.

License No.  8105

_____
Licensure Official

_____
James M. Crutcher, M.D., M.P.H.
Commissioner of Health and
State Health Officer

**THIS LICENSE MUST BE POSTED IN A CONSPICUOUS PLACE**

8615