UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| RONNIE JONES, ET AL.,<br><br>                              **Plaintiffs,**<br><br>    v.<br><br>CITY OF BOSTON, ET AL.,<br><br>                              **Defendants.** | CIVIL ACTION<br>NO. 05-11832-GAO<br><br>**<u>HEARING REQUESTED;<br>LEAVE TO FILE GRANTED<br>ON JULY 12, 2007</u>** |

**REPLY MEMORANDUM IN RESPONSE TO DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF POSITIVE HAIR TEST
RESULTS AND ELECTRONIC DOCUMENTS RESPONSIVE TO
PLAINTIFFS' DOCUMENT REQUESTS**

**Introduction**

Defendants have in their possession or control, and have refused to produce to the plaintiffs, hair test results and electronic documents that are directly responsive to plaintiffs' document requests and that are critical to the plaintiffs' case. Accordingly, plaintiffs were forced to move for an order compelling defendants to produce these materials (the "Motion"). Rather than assert any cognizable ground for their refusal to produce the requested documents based on the applicable law, defendants opposed plaintiffs' Motion (the "Opposition") by arguing a discovery standard of their own invention, and that has no basis in law or logic. Defendants' proffered discovery standard would require plaintiffs to demonstrate that the documents that are the subject of a motion to compel contain the equivalent of a smoking gun. This "standard" is impossible to meet—if for no other reason than that the plaintiffs have never seen the subject documents—and represents an illegitimate attempt to obtain a preview of the plaintiffs' experts' opinions and a head start on defendants' own experts' work. The Court should reject it out of hand. So too should the Court reject defendants' vague and self-serving assertions of burden, privacy, and irrelevance. The governing law plainly entitles the plaintiffs to documents

1

2

sufficient for plaintiffs and their experts to test their theories of liability, and it would be patently prejudicial to deny plaintiffs access to key documents concerning disparate impact and issues related to the science of the test while permitting defendants (and defendants' experts) to have access to these materials.

To date, defendants' "efforts" to retrieve plainly discoverable electronic documents have been woefully inadequate to meet the requirements of the governing law, as are defendants' attempts to justify their failures in this regard. Indeed, defendants sidestep the issue whether they ever put a litigation hold on documents when the first litigation concerning the validity of the hair test commenced several years ago, and do not even bother to address why they conducted only an obviously cursory review of readily accessible electronic documents. Not surprisingly, this review resulted in the production of *no* electronic documents. Defendants acknowledge for the first time in their Opposition that they have access to archive backup tapes of e-mails older than 90 days. Defendants' conclusory and self-serving statement that it would "probably" be burdensome to gather these documents surely provides no basis for relieving defendants of their discovery obligations under the governing law, especially where it appears that there would be little or no need to review these documents if defendants had put a proper litigation hold on responsive documents.

In sum, the governing law obligates defendants to conduct a proper search for responsive electronic materials and to produce the requested hair test results and electronic documents. Plaintiffs' Motion should be granted in its entirety.

A.   **Plaintiffs' Are Entitled To The Requested Positive Hair Test Results.**

Plaintiffs seek to compel production of, among other materials, the "back-up" records of positive hair test results, including all records showing the initial and safety-net test results for all officers and cadets who have tested positive on the hair test. Because the defendants have

2

A/72096833.3

already produced a subset of these records,[1] the instant request concerns hair test records for 72 officers and cadets.

### 1. There is no requirement that plaintiffs demonstrate the contents of the requested documents, or that the requested documents prove their claims.

Defendants have refused to produce the requested documents, claiming that plaintiffs have failed to meet a fanciful standard according to which a party seeking discovery must show not just that the requested discovery is relevant to that party's claims, but that the requested discovery will *prove* that party's claims.

If the plaintiffs knew exactly what the requested documents would show, there would be little need to ask for them.  The standard proffered by defendants has no basis in law, or even reason.  For example, defendants criticize plaintiffs for offering "no expert affidavit to address why the hair drug tests of third parties are necessary in order for them to prove their claims that the test itself is flawed."  Opposition at 8.  It cannot be disputed, however, that positive hair test results are relevant and essential to *any* expert analysis of this case.  And it could not be more clear that neither plaintiffs nor their experts are in a position to state what the requested documents demonstrate before they obtain the requested documents.  Furthermore, even speculation about the precise contents of the requested records and their relevance to the instant dispute—which defendants contend is a prerequisite for production—would necessarily require some detailed description of the opinions that plaintiffs expect their experts to provide.  The governing discovery rules contain no such requirement and merely stating the proposition demonstrates the impropriety of such a requirement.  Nothing in the law requires the plaintiffs to proffer their experts' opinions before they are entitled to obtain obviously relevant discovery.[2]

---

[1] Defendants have produced the back-up records pertaining to the test results of the individual plaintiffs.

[2] As set forth at pages 12-15 of the Motion, plaintiffs are entitled to the requested discovery as long it pertains to any of their allegations or theories of liability; plaintiffs do not have to demonstrate that documents that have not been produced contain a gold mine.  *See*, *e.g.*, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ("relevant" discovery under Fed. R. Civ. P. 26(b)(1) "encompass[es] any matter that bears on, or that reasonably could lead to

As previously explained, plaintiffs hope to use the Psychemedics Standard Operating Procedures ("SOPs") to test the theory that the company's wash procedures and cut-off levels are inadequate to address the problem of external contamination and the reliability of the hair test.[3] In addition to the SOPs, plaintiffs would also use the requested positive test results to analyze their disparate-impact allegations. For example, if the requested documents show that officers who tested positive very close to the cut-off level are disproportionately African American, that would assist both in establishing a disparate-impact claim and in demonstrating that the cut-off levels are too low to attribute every positive test result to the ingestion of drugs. For this reason alone, the requested documents are relevant to this case and plaintiffs have a compelling need to analyze the documents. Defendants must await expert discovery to learn more about plaintiffs' expert's analysis of their claims and cannot block relevant discovery on the basis of a non-existent requirement for an expert affidavit in support of discovery.

---

other matter that could bear on, any issue that is or may be in the case"); *Zubulake v. UBS Warburg*, 217 F.R.D. 309, 323 (S.D.N.Y. 2003) ("The suggestion that a plaintiff must not only demonstrate that probative evidence exists, but also prove that electronic discovery will yield a 'gold mine,' is contrary to the plain language of Rule 26(b)(1), which permits discovery of 'any matter' that is 'relevant to [a] claim or defense.'").

[3] Defendants argue that plaintiffs should seek the requested documents from third-party Psychemedics. *See* Opposition at 9 ("Defendants respectfully suggest that the real focus of Plaintiffs' efforts ought to be directed toward the laboratory that they claim is conducting the 'flawed' test, rather than seeking access to the files of individuals who have not chosen to challenge the hair drug test (or who have done so unsuccessfully)."). Some of the requested documents were found in the custody of the defendants' Medical Review Officer, not Psychemedics, and it is likely that Psychemedics does not have all of the requested documents in its possession. Furthermore, it is strange indeed that defendants should suggest (especially in light of Psychemedics's resistance to producing the SOPs) that the duty of a third-party to produce documents is greater than that of a party, and that plaintiffs should seek discovery in the possession of the defendants from a third-party instead of from the defendants. The defendants' decision to implement and defend the flawed, imprecise, and racially discriminatory hair test resulted in adverse employment consequences for the plaintiffs, so it should come as no surprise that plaintiffs insist on relevant discovery from the defendants.

**2.     The defendants' cited cases do not mandate denial of plaintiffs' Motion.**

Plaintiff discuss, at pages 13-14 of the Motion, several cases in the employment-discrimination context that require liberal discovery to allow plaintiffs to test their theories of liability. Defendants do not take issue with any of this precedent, but instead selectively excerpt quotes from cases in completely different factual and procedural contexts to support their baseless contention that plaintiffs seek from the Court a license to embark on a fishing expedition. In each instance, the cases cited by defendants, *see* Opposition at 7-10, are distinguishable from the instant matter because they involve dispositive factors that are simply not present here.[4]

The only employment discrimination case—and the only other case of any sort—cited by defendants is *Mack v. The Great Atlantic & Pacific Tea Co.*, 871 F.2d 179 (1st Cir. 1989). Opposition at 9-10. As with *Ameristar* and *Milazzo*, the issue before the appellate court in *Mack* was whether to overturn a trial court's ruling on an unexceptional pretrial discovery motion. The appellate court held that it could "intervene in such matters only upon a clear showing of manifest injustice". *Id.* at 186. The appellate court explicitly chose not to delve into the issue whether the requested discovery was overbroad or unduly burdensome. Instead, the court noted

---

[4] *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189 (1st Cir. 2001), is an appeal in a breach of warranty case in which the court noted "that the Federal Rules of Civil Procedure are to be construed liberally in favor of discovery," but applied the appellate "manifest injustice" standard of review to the district court's decision to *quash cumulative, duplicative deposition subpoenas* of a company's employees where the company had already provided two of its representatives from 30(b)(6) depositions. *Milazzo v. Sentry Ins.*, 856 F.2d 321 (1st Cir. 1988), is an appeal in a personal injury case in which the court applied the appellate "manifest injustice" standard of review to the district court's decision that summary judgment was appropriate before discovery where the plaintiffs had disclosed no relevant factual basis for *any* discovery in the case. In *Collens v. City of New York*, 222 F.R.D. 249, 255 (S.D.N.Y. 2004), a police retaliation case, the court found that there is a qualified privilege concerning disclosure of a police officer's home address and that "[t]he requested information is not relevant to the plaintiff's claims." Defendants provide no citation for *Amey, Inc. v. Gulf Abstract & Title, Inc.*, which gave rise to several published opinions from the Florida, Eleventh Circuit, and Supreme Courts. The quotation referenced by the defendants is not in the Supreme Court's opinion, and the facts of the case are clearly very different from the instant matter, as *Amey* concerned antitrust allegations by real estate purchasers against banks and law firms.

5

that both "parties made extensive use of available pretrial discovery devices," and "[s]ticking the appellate nose too readily into the district court's scope-of-discovery tent is, we think, a recipe for disaster." *Id.* at 186-87. In contrast to plaintiffs' Motion, which provides extensive (and unchallenged) citations to applicable law, defendants' Opposition cites no cases that support defendants' position or that are even relevant to a trial court's *de novo* analysis of issues pertinent to discovery in an employment discrimination case.

      **3.    Defendants' contentions concerning alleged burden and privacy fail, and defendants are not entitled to a protective order.**

The defendants fashion their reply as a cross-motion for a protective order, but offer no ground for granting such a motion. Defendants do not establish that it would be in any way burdensome to gather and produce the requested documents, but merely state that the requested documents "would amount to approximately 4,500 pages of material." Opposition at 5. Defendants' argument concerning officer privacy also proves nothing. The defendants have already produced a spreadsheet setting forth the name of every officer who has tested positive on the hair test, and they do not even attempt to show how the additional requested information (which plaintiffs assert would be of little interest to anyone other than a drug testing expert or a statistician) would be any more of a privacy concern than what the defendants already exchanged voluntarily. Regardless, as set forth in the Motion, the Court has already issued a confidentiality order to address any purported privacy or confidentiality concern.

**B.    Plaintiffs' Are Entitled To The Requested Electronic Documents.**

Plaintiffs also ask this court to compel defendants to conduct a more thorough search for electronic documents and to produce responsive documents resulting from this search. Defendants' cursory response to the portions of the Motion relating to electronic discovery boils down to a speculative and self-serving statement that "more extensive electronic searching would likely be both futile and prohibitively costly." Opposition at 11. With respect to readily accessible emails (or emails that were readily accessible when a litigation hold ought to have

6

been put in place[5]), defendants offer no support for their bald assertion that their review of a small handful of their employees' e-mails within a narrow set of search terms is "appropriate and responsive to Plaintiffs' requests." *Id*. As set forth in the Motion, the search did not include many of the employees identified in defendants' initial disclosures or interrogatory responses, did not include a search of e-mail attachments, and utilized a very narrow set of terms (as opposed to the more thorough list that plaintiffs suggested and that defendants could have implemented at no additional cost). We now live in an e-mail and electronic age, but the defendants did not produce *any* electronically stored e-mail. They did, however, produce multiple hard-copy interoffice memoranda dating from the years immediately prior to the advent of e-mail as a widespread means of interoffice communications. On the simple assumption that e-mail communications have to some extent supplanted hard-copy memoranda as a common means of interoffice communication, defendants' failure to produce *any* stored e-mails amounts to a glaring omission, and speaks volumes about both the inadequate scope of the defendants' search of readily accessible e-mail and the likelihood that a good-faith search would yield relevant documents.

Finally, paragraph 7 of Mr. Fitzpatrick's e-mail reveals that the defendants have in their possession archived backup tapes of e-mails. With respect to these e-mails, defendants cannot simply hide behind the mere assertion that a search of these back-up tapes would be "futile and prohibitively costly." As the court noted in *Zubulake*:

> Requiring the responding party to restore and produce responsive documents from a small sample of backup tapes will inform the cost-shifting analysis laid out

---

[5] Paragraph 9 of Mr. Fitzpatrick's affidavit, attached as Exhibit F to the Opposition, seems to state the defendants never put a litigation hold on documents, even after the plaintiffs initiated litigation concerning the validity of their hair test results in 2002. Furthermore, given that e-mail storage gets cheaper to implement all the time, Mr. Fitzpatrick's statement that the defendants do not have the storage to keep documents in a readily accessible format after 90 days misses the mark. If defendants had put a litigation hold on e-mails, they could have found the storage to meet their needs. Defendants make a straw man argument that, if they did draft a litigation hold memorandum, the memorandum would be privileged. Plaintiffs are not asking for the privileged legal advice in a memorandum, but the <u>fact</u> of whether a hold was ever placed, when, and what it required. Facts are not privileged.

above. When based on an actual sample, the marginal utility test will not be an exercise in speculation-there will be tangible evidence of what the backup tapes may have to offer. There will also be tangible evidence of the time and cost required to restore the backup tapes, which in turn will inform the second group of cost-shifting factors. Thus, by requiring a sample restoration of backup tapes, the entire cost-shifting analysis can be grounded in fact rather than guesswork.

217 F.R.D. at 324.

Defendants have produced several hard-copy, internal communications concerning the hair test, which belies their assertion that additional e-mail searches would be futile. At a minimum, defendants should be required to review back-up tapes dating back to 2002 when they should have put a litigation hold on documents because of the plaintiffs' litigation.

## Conclusion

For all of the foregoing reasons and the reasons stated in the Motion, the Court should grant the Motion and issue an order compelling defendants to comply with their discovery obligations under the Federal Rules of Civil Procedure by immediately producing the electronic documents and additional hair test results information as requested by the plaintiffs. Further, defendants should be ordered to pay the plaintiffs' costs, including attorneys' fees, incurred in bringing the Motion, in an amount to be determined upon submission of an affidavit setting forth such costs. A form of proposed Order is submitted as Exhibit A to the plaintiffs' motion to compel.

Respectfully submitted,

**Ronnie Jones, Richard Beckers, Walter Washington, William Earl Bridgeforth, Shawn N. Harris, Eugene Wade George C. Downing, Jr., Clararise Bristow, and the Massachusetts Association of Minority Law Enforcement Officers,**

By their attorneys,

/s/ Eric A. Heining
Louis A. Rodriques, BBO # 424720
Rheba Rutkowski, BBO # 632799

|  |  |
|---|---|
|  | Raquel J. Webster, BBO # 658796<br>Robert B. Baker, BBO # 654023<br>Eric A. Heining, BBO # 664900<br>BINGHAM McCUTCHEN LLP<br>150 Federal Street<br>Boston, MA  02110<br>(617) 951-8000 |
|  | Nadine Cohen, BBO # 090040<br>Lawyers' Committee for Civil Rights<br>  Under Law of the Boston Bar Association<br>294 Washington Street, Suite 443<br>Boston, Massachusetts 02108<br>(617) 482-1145 |
| Dated July 18, 2007 | Marcia Woodham, BBO # 600886<br>SABEL & SABEL, P.C.<br>Hillwood Office Center<br>2800 Zelda Road; Ste. 100-5<br>Montgomery, AL 36106<br>(334) 271-2770 |

### **CERTIFICATE OF SERVICE**

I hereby certify that, on July 18, 2007, a true copy of the above document was served upon the attorney of record for each other party electronically via the ECF/CM.

/s/ Eric A. Heining