UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONNIE JONES, ET AL., )<br>          **Plaintiffs,** )<br>v. )<br>               )<br>CITY OF BOSTON, ET AL., )<br>          **Defendants.** )<br>               ) | CIVIL ACTION<br>NO. 05-11832-GAO |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
PSYCHEMEDICS CORPORATION'S COMPLIANCE WITH
THIS COURT'S DECEMBER 14, 2007 ORDER**

Two months after this Court ordered that third-party Psychemedics Corporation ("Psychemedics") produce certain portions of its Standard Operating Procedures ("SOPs") pursuant to an existing Confidentiality Order entered by this Court, after counsel for Psychemedics had agreed to produce the SOPs pursuant to the existing Confidentiality Order, and after counsel for Psychemedics had bate-stamped and agreed to personally hand-deliver the SOPs by Monday, February 11, 2008 at 10:00 a.m., Psychemedics retained new counsel, refused to abide by this Court's December 14, 2007 Order (the "December 2007 Order") and refused to abide by the representations and agreements of prior counsel. Instead of complying with the December 2007 Order and the agreement reached by its prior counsel, Psychemedics now insists on substantive changes to the existing Confidentiality Order before it will produce the SOPs. Psychemedics' new position not only breaches the agreement reached by its counsel, but also violates the December 2007 Order.

As set forth in more detail below, Plaintiffs Ronnie Jones, Richard Beckers, Walter Washington, William Earl Bridgeforth, Shawn N. Harris, Eugene Wade, George C. Downing, Jr., Clararise Bristow, Rachelle Couch, Keri Hogan, and the Massachusetts Association of

A/72438793.1

Minority Law Enforcement Officers, (collectively, the "Plaintiffs") respectfully request that the Court order Psychemedics to comply with the December 2007 Order and produce the SOPs without the conditions that have been improperly demanded by Psychemedics.

### Procedural Background

On November 2, 2006, Plaintiffs served a Rule 45 subpoena on Psychemedics requesting that it provide forty-one categories of documents. Despite the repeated representations of Psychemedics that it would produce certain documents requested in the Rule 45 subpoena, Psychemedics did not produce a single document to Plaintiffs. Accordingly, on or about May 15, 2007, Plaintiffs filed their motion to compel Psychemedics to produce its SOPs [Docket Nos. 41-42].[1] In its opposition papers, Psychemedics asserted, among other things, that "[p]roduction of the SOPs, even under a Protective Order, will provide opposing experts with the data necessary not only to run a hair testing lab, but also to run a hair testing lab employing specific test conditions." *See* Psychemedics' Memorandum in Opposition to Plaintiffs' Motion to Compel Production of SOPs at p. 3 [Docket No. 45]. A hearing on Plaintiffs May 15 and August 17, 2007 motions to compel was held before this Court on October 24, 2007. At this hearing, Psychemedics asserted, among other things, that the existing protective order (entered by this Court on January 8, 2007; Docket No. 33) (the "Confidentiality Order") did not provide it with the necessary protection because it is likely that Plaintiffs will retain an expert that works for a competitor of Psychemedics.

On October 25, 2007, this Court ordered Psychemedics to provide "[a] representative version of Psychemedics' Standard Operating Procedures for <u>in camera</u> review." October 25, 2007 Order (emphasis in original) [Docket No. 80]. On December 14, 2007, after reviewing the SOPs that were provided to the Court by Psychemedics, this Court ordered that Psychemedics produce certain portions of the SOPs (introductory pages, and tabs 5, 6, 9, 12, 16 and 17).

---

[1] On August 17, 2007, Plaintiffs filed a motion to compel Psychemedics to produce additional documents [Docket Nos. 59-60].

December 2007 Order [Docket No. 83]. Further, this Court ordered that "[a]ll such materials are to be produced and received subject to the provisions of the Order Governing the Production and Exchange of Confidential Information (dkt. no. 33)." *Id.* Importantly, this Court did not order that the Confidentiality Order be amended to address Psychemedics' concerns, nor did this Court order that Psychemedics had the right to demand substantive and material changes to the Confidentiality Order before producing the SOPs.

### Communications With Psychemedics After the Court's December 2007 Order

In early January 2008, counsel for the Plaintiffs and counsel for Psychemedics discussed the December 2007 Order. *See* Affidavit of William F. Benson ("Benson Aff."), ¶ 3, filed herewith. Specifically, on or about January 7, 2008, during a telephone conference, Psychemedics' counsel advised Plaintiffs' counsel that Psychemedics might take the position that the December 2007 Order only required it to produce the version of the SOPs that it provided to the Court *in camera* and that Psychemedics did not have to produce all versions of the SOPs that Plaintiffs had requested. *Id.,* ¶ 4. Plaintiffs advised Psychemedics that such a position was contrary to the December 2007 Order. *Id.* During the January 7, 2008 telephone conference, Psychemedics' counsel never advised Plaintiffs' counsel that Psychemedics would not produce the SOPs unless Plaintiffs agreed to changes to the Confidentiality Order. *Id.,* ¶ 5.

On or about February 1, 2008, Psychemedics, through its counsel, advised that it would not take the position that the December 2007 Order required it to produce only the version of the SOPs that was provided to the Court. *Id.,* ¶ 6. Psychemedics advised that it would produce all versions of the SOPs in its possession and other responsive documents pursuant to the existing Confidentiality Order. *Id.* Psychemedics did not condition such production of the SOPs on any changes to the existing Confidentiality Order. *Id.* On February 1, 2008, Psychemedics produced certain documents, including confidential documents, and advised that "documents marked as confidential are being designated as such pursuant to the terms of Judge O'Toole's order governing the production and exchange of confidential information entered in this case." *Id.,* ¶ 7 and Exhibit B attached to the Benson Aff. Further, Psychemedics advised that "as we discussed,

A/72438793.1                                3

I will be producing additional records to you next week, including the portions of the Psychemedics' Standard Operating Procedures covered by Judge O'Toole's Order." *Id.*

On February 8, 2008, Psychemedics, through its counsel, advised that it had bate-stamped all versions of the SOPs and additional responsive documents but that its copy machine had broken down, which prevented Psychemedics from delivering the SOPs as agreed by the parties. *Id.*, ¶ 8. Accordingly, Psychemedics requested until Monday, February 11, 2008 to produce the SOPs, which request Plaintiffs granted. *Id.* Psychemedics' counsel even advised that he would personally hand deliver the SOPs and other responsive documents by 10:00 a.m. on February 11. *Id.* Psychemedics did not condition production of the SOPs on Plaintiffs' agreement to make any changes to the Confidentiality Order. *Id.*

On February 11, 2008, Plaintiffs' counsel called Psychemedics' counsel, J. Allen Holland, to follow-up on the status of Psychemedics' production of the SOPs to Plaintiffs. *Id.*, ¶ 9. During this telephone conference, Mr. Holland advised that he had copies of the bate-stamped SOPs in his office, but could not produce them (as promised) because he had been replaced as counsel to Psychemedics by the law firm of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. ("Mintz"). *Id.* Plaintiffs' counsel subsequently followed-up with Mintz regarding the status of Psychemedics' production of the SOPs to Plaintiffs. *Id.*, ¶ 10. Mintz refused to produce the SOPs that this Court had ordered Psychemedics to produce and that Psychemedics had agreed to produce, unless Plaintiffs agreed to substantive changes to the Confidentiality Order. *Id.* Specifically, Mintz demanded that (i) Plaintiffs identify their experts and consultants prior to the disclosure of the SOPs to these individuals and allow Mintz an opportunity to object, (ii) all copies of the SOPs remain at the office of Plaintiffs' counsel, and a few days later demanded that (iii) Psychemedics be provided an opportunity to review deposition transcripts concerning its SOPs and other confidential information. *Id.* Plaintiffs advised Mintz that they would not agree to these demands as they were contrary to the December 2007 Order and

contrary to Psychemedics' prior agreement to produce its SOPs without changes to the Confidentiality Order. *Id.*[2]

## Argument

I.   **The Court Order Requires Psychemedics to Produce its SOPs Without Conditions Attached**

Psychemedics is improperly holding the SOPs hostage by failing to produce them as required by the December 2007 Order. That order plainly states that the SOPs be "produced and received subject to the provisions of the [Confidentiality] Order." The December 2007 Order did not provide Psychemedics with the right to demand changes to the Confidentiality Order prior to its compliance. Psychemedics apparently contends that because it never provided its written consent to the Confidentiality Order, it has free reign to demand changes to that order. This position is without merit. Nowhere on the face of the December 2007 Order is there any indication that the Court provided Psychemedics with the right to impose conditions before it produced the SOPs. Here, Psychemedics previously advanced arguments in its opposition to Plaintiffs' motion to compel and at the October 24, 2007 hearing that the Confidentiality Order did not provide enough protection; those arguments were rejected by this Court.

Put simply, by requiring Psychemedics to produce the SOPs pursuant to the Confidentiality Order, the December 2007 Order, in effect, required Psychemedics to provide its written consent to be bound by the terms of the Confidentiality Order. Psychemedics' current refusal -- despite its prior counsel's agreement -- to be bound by the Confidentiality Order ignores and violates this Court's directive.

---

[2] Although Plaintiffs maintain that Psychemedics has no right to demand the identity of their experts or consultants before producing the SOPs, in attempts to compromise, Plaintiffs offered to provide the names of its experts or consultants if such individuals were employed by a direct competitor of Psychemedics (i.e., a company that performs drug testing on hair for a profit). Psychemedics rejected this offer, evidencing that it has ulterior motives for demanding the names of Plaintiffs' experts and consultants prior to the disclosure of the SOPs. Because Plaintiffs were forced to file the instant motion, this offer has been withdrawn.

II.     **Psychemedics Agreed to Produce its SOPs Without Conditions Attached**

Psychemedics, through its counsel, agreed to produce its SOPs without any conditions attached. By letter dated February 1, 2008, it produced Confidential documents subject to the existing Confidentiality Order. Such letter provides Psychemedics' written consent to be subject to the Confidentiality Order. Further, Psychemedics represented that it would produce its SOPs (without conditions) by February 8, 2008. On February 8, 2008, Psychemedics advised that it had bate-stamped the SOPs but could not deliver them because of copying problems and promised to hand deliver them by Monday, February 11, 2008. At no point did Psychemedics condition its production of the SOPs on Plaintiffs' agreement to make any changes to the Confidentiality Order.

Here, it is evident that Psychemedics changed counsel in order to disregard the December 2007 Order, disregard Psychemedics' prior agreement to produce the SOPs (without conditions), and to further delay the production of the SOPs. Such actions amount to bad faith and should not be countenanced by this Court. Accordingly, Plaintiffs request that this Court order Psychemedics to immediately comply with its December 2007 Order by producing its SOPs without conditions and without changes to the Confidentiality Order.

III.    **Psychemedics' Demand For Changes to the Confidentiality Order Are Unreasonable and Not Warranted**

   A.   **Plaintiffs Should Not Be Required to Disclose the Identity of Its Experts and Consultants**

Before producing its SOPs, Psychemedics demands that Plaintiffs identify every expert and/or consultant to whom Plaintiffs intend to provide a copy of the SOPs. Psychemedics makes this demand apparently because it is concerned that Plaintiffs' experts or consultants may use the SOPs to operate a competing hair testing lab and thus must know the identities of these experts and consultants prior to disclosure. The Confidentiality Order provides ample protection for Psychemedics' interests. First, all experts and consultants who are provided copies of Confidential information agree that they "shall use such information <u>exclusively for preparation</u>

and trial of the Litigation (including appeals and retrials) and shall not use it for any other purpose including, but not limited to, business, governmental, media, commercial, or administrative or judicial proceedings." Confidentiality Order, ¶10 (emphasis added). Accordingly, any use of the SOPs for business or commercial purposes is strictly prohibited by the explicit terms of the Confidentiality Order. All retained experts and consultants have agreed to abide by this Order. Moreover, counsel are required to inform each retained expert and consultant of their obligation to comply with the terms of the Confidentiality Order. *Id.* By demanding that Plaintiffs identify their experts and consultants to whom the SOPs will be disclosed, Psychemedics apparently believes that Plaintiffs' counsel and their retained experts and consultants will disregard the explicit terms of the Confidentiality Order. There is no basis for such concerns.

Psychemedics' demand also runs contrary to Fed. R. Civ. P. 26(a)(2). Specifically, Rule 26(a)(2)(C) provides, in relevant part, that parties must disclose their testifying experts "at the times and in the sequence directed by the court." Here, because Psychemedics has disregarded its obligations to respond to a Rule 45 subpoena and disregarded the December 2007 Order, Plaintiffs have not yet received the information their experts need to formulate their opinions. Accordingly, no expert disclosure schedule has been agreed to by the parties or ordered by the Court. It is evident that Psychemedics, a non-party, wants to make an end run around Rule 26 by requiring Plaintiffs to disclose their testifying experts even though no order has been entered by this Court. Moreover, because Plaintiffs are not required to identify their non-testifying consultants and such a rule or order by this Court would require Plaintiffs to improperly disclose its work product and litigation strategy, Psychemedics' request for such conditions should be denied. *See, e.g., MGP Ingredients, Inc. v. Mars Inc.,* 2007 WL 756645 at *4 (D. Kan. Mar. 8, 2007) ("The Court finds that the forced disclosure of the identities of a party's non-testifying experts and consultants represents an unwarranted intrusion into the party's litigation strategy and would provide the opposing party with an unjust advantage.").

### B. Plaintiffs' Experts and Consultants Should Not Have to Travel to Review the SOPs and Prepare Their Reports

Before producing its SOPs, Psychemedics demands that Plaintiffs agree that all copies of the SOPs remain at the offices of Plaintiffs' counsel. In effect, Psychemedics demands that Plaintiffs' experts and consultants travel to an office of Bingham McCutchen to review the SOPs and prepare their reports. Psychemedics' request is unreasonable and unwarranted. First, Psychemedics' demand will cause Plaintiffs and their experts and consultants to incur added and unnecessary expenses and impose unreasonable burdens. Indeed, there is no dispute that travel -- whether it be by plane, train, or automobile -- is a hassle and an expensive endeavor. Second, Psychemedics' proposal will prevent Plaintiffs' experts from working on their reports at their own offices, which will create an unnecessary burden and inconvenience. Third, the Confidentiality Order provides that Confidential information shall be used "exclusively for preparation and trial of the Litigation . . . [and all copies] shall be returned to the Producing Party" and all experts and consultants must sign the Consent attached to the Order. Confidentiality Order, ¶¶ 10, 20.

Once again, Psychemedics' current position rests on the assumption that Plaintiffs' experts and consultants will violate the terms of the Confidentiality Order. There is no basis for this improper assumption. Because the Confidentiality Order provides all the protection Psychemedics needs, its request to amend that order should be denied.

### C. Psychemedics Should Not Be Allowed to Review Deposition Testimony

Before producing its SOPs, Psychemedics demands that it be notified if these documents are used at a deposition or if a party intends to file them with the Court. Since the SOPs will presumably be marked "Confidential," they will be treated as such under the terms of the Confidentiality Order. Pursuant to Paragraph 7 of the Confidentiality Order, Plaintiffs agree that any deposition testimony concerning the SOPs (or any other Confidential information produced by Psychemedics) will be considered Confidential under the terms of the Confidentiality Order. Further, pursuant to Paragraph 8 of the Confidentiality Order, if a party intends to file

Confidential material produced by Psychemedics, Psychemedics retains the right to move to file these documents under seal. Accordingly, because the Confidentiality Order already requires that the parties coordinate with Psychemedics prior to the filing of any Confidential information with the Court, Psychemedics' request for amendments to that order should be denied.

IV.   **The Court Should Order Psychemedics to Comply with the December 2007 Order By a Date Certain**

The December 2007 Order also required that Psychemedics produce "all categories that Psychemedics has previously agreed to produce but has not yet done so . . . [and] documents requested in Requests 21, 31, 32, 39, and 40. Plaintiffs' counsel has provided Mintz with the categories of documents that Psychemedics previously agreed that it would produce. While Psychemedics has produced certain documents responsive to these requests, it has not fully complied with the December 2007 Order. Accordingly, Plaintiffs request that this Court also order Psychemedics to fully comply with the December 2007 Order by no later than March 18, 2008.

## Conclusion

Based on the foregoing, Plaintiffs respectfully request that the Court Order Psychemedics Corporation to (i) comply with the December 2007 Order by producing, within two business days, those portions of the SOPs identified in the December 2007 Order without any changes or amendments to the existing Confidentiality Order, (ii) fully comply with the December 2007 Order by no later than March 18, 2008, and (iii) pay Plaintiffs' costs, including attorneys' fees, incurred in bring this Motion.

Respectfully submitted,

**Ronnie Jones, Richard Beckers, Walter Washington, William Earl Bridgeforth, Shawn N. Harris, Eugene Wade, George C. Downing, Jr., Clararise Bristow, and the Massachusetts Association of Minority Law Enforcement Officers,**

By their attorneys,

/s/ William F. Benson
Louis A. Rodriques, BBO # 424720
Rheba Rutkowski, BBO # 632799
William F. Benson, BBO # 646808
Raquel J. Webster, BBO # 658796
Eric A. Heining, BBO # 664900
BINGHAM McCUTCHEN LLP
150 Federal Street
Boston, MA 02110
(617) 951-8000

Laura Maslow-Armand, BBO # 563003
Lawyers' Committee for Civil Rights
  Under Law of the Boston Bar Association
294 Washington Street, Suite 443
Boston, Massachusetts 02108
(617) 482-1145

Marcia Woodham, BBO # 600886
SABEL & SABEL, P.C.
Hillwood Office Center
2800 Zelda Road; Ste. 100-5
Montgomery, AL 36106
(334) 271-2770

Dated: February 22, 2008

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants, by federal express, on February 22, 2008.

                                  /s/ William F. Benson
                                  William F. Benson