UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                           )
RONNIE JONES, ET AL.,                      )
                          Plaintiffs,      )
                                           )
            vs.                            )          Civil Action No. 05-11832-GAO
                                           )
CITY OF BOSTON, ET AL.,                    )
                          Defendants.      )
                                           )
_____           )

### PSYCHEMEDICS CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND REQUEST FOR SUPPLEMENTAL PROVISIONS IN THE PROTECTIVE ORDER

### INTRODUCTION

On February 11, 2008, Psychemedics Corporation ("Psychemedics"), a non-party to this litigation, retained Mintz Levin to represent it in this matter. That same day, Mintz Levin reached out to plaintiffs' counsel, Bingham McCutchen ("Bingham") and promised that Psychemedics would make every effort to comply with this Court's December 14, 2007 order (the "Order") as promptly as possible. *See* Affidavit of Meredith M. Leary ("Leary Aff."), ¶¶ 2, 3 and 7. True to that promise, Mintz Levin has since produced in excess of 8,600 pages to Bingham on Psychemedics' behalf, including documents or representations responsive to each of the subpoena requests reflected in the Order that Psychemedics has located documents responsive to. Leary Aff., ¶ 7. Further, with the exception of a total of four subsections (the "four subsections") -- which contain

Psychemedics' most valuable trade secrets[1] -- Mintz Levin has produced in unredacted

form the entirety of each of the Psychemedics Standard Operating Procedures ("SOPs")

referenced in the Order.[2]

Even with respect to the four subsections, Mintz Levin has made every effort to

work cooperatively with Bingham to supplement the existing protective order -- which by

its terms does not apply to Psychemedics -- so that it can extend to and accommodate the

document productions of non-party witnesses and provide procedural safeguards for the

protection of highly confidential trade secret information.   Far from demanding onerous

or unreasonable conditions on the production of Psychemedics' SOPs, Mintz Levin

proposed to Bingham -- and as part of this opposition now respectfully requests from the

Court -- the insertion of three narrowly tailored provisions, each of which is a sensible

extension of the existing protective order given its proposed application to Psychemedics:

(1)     The addition of a "Highly Confidential" designation for information rising to the
        level of a trade secret, which would trigger a notice obligation (and brief period
        for objection) before the parties could share the information with any expert or
        consultant who is a competitor of Psychemedics;

(2)     A restriction on the number of copies made of the documents and information
        designated by Psychemedics as "Highly Confidential," and a requirement that
        documents or information designated by Psychemedics as "Highly Confidential"
        be reviewed by experts and consultants at the office of the counsel who retained
        them; and

---

[1]     A total of four subsections from within Tabs 5 and 17 of the SOPs have been produced in redacted
form.  Because the SOP subsections being produced span a number of years, these four subsections in
certain instances contain a different subsection number from year to year, even though they relate to the
same substantive step in the Standard Operating Procedure.  Further, in support of this opposition and
request, Psychemedics submits the attached Affidavit of Michael Shaffer, which attests that the redacted
information contains and reflects some of the most valuable of Psychemedics' trade secret information.

[2]     Because of the breadth and varying location of documents potentially responsive to the Order,
Psychemedics continues to review its files and produce on a rolling basis the documents encompassed by
the Order. The only excerpts Psychemedics has located to date that it seeks to designate as "Highly
Confidential," however, are the four subsections.  It is unlikely, although possible, that Psychemedics will
locate any further documents responsive to the Order that would require designation as "Highly
Confidential."

(3)     An addendum to Paragraph 7 (relating to Deposition Testimony) and Paragraph 8 (relating to Court Filings) that would provide Psychemedics with the same procedural protections that these paragraphs provide to the Parties, to ensure that any information designated by Psychemedics as "Confidential" or "Highly Confidential" retains this designation if and when the information migrates into deposition testimony, deposition exhibits or proposed court filings. [3]

It should be noted that Psychemedics and the plaintiffs came close to agreeing on terms for a "Highly Confidential" designation in a supplemental protective order just prior to the filing of the present motion to compel.  Bingham was willing to agree to provide advance notice and an opportunity for Psychemedics to object prior to producing information designated by Psychemedics as "Highly Confidential" to any expert or consultant employed by a direct competitor of Psychemedics (i.e., a company that performs drug testing on hair for a profit).  In response, Psychemedics requested only that the term "employed by" be defined to include paid consultants of its direct competitors, so that its opportunity for notice and objection would not be rendered meaningless by unnecessarily hinging on whether plaintiffs' expert(s) received a W-2 (as opposed to a 1099 or other record of payment) from its direct competitor.  Plaintiffs refused this request and brought the current motion.[4]  Leary Aff., ¶ 5.

---

[3]     Psychemedics has attached a Proposed Supplemental Protective Order to this opposition at Exhibit 1.  Psychemedics has conferred with counsel for the defendant, who does not oppose these requested provisions.

[4]     Only Bingham and the plaintiffs know who their experts are. The fact that Bingham refused to include experts paid by a competitor in its definition of "employed by" has only served to heighten

**ARGUMENT**

I.    **Pyschemedics' Request to Supplement the Existing Protective Order is Both Narrowly Tailored and Necessary to Adequately Protect Psychemedics' Most Valuable Trade Secrets**

    A.    <u>The Current Protective Order Does Not Apply to Psychemedics and Does Not Anticipate or Accommodate the Need to Protect Trade Secret Information</u>

By its terms, the current protective order does not apply to Psychemedics; Psychemedics is not a signatory to it, and Psychemedics has not agreed in writing to be subject to its terms. *See Protective Order*, Paragraph 23. While certain provisions of the existing protective order contemplate its application to third party witnesses (*see, e.g*, *Protective Order*, Paragraph 2), the structure and content make it apparent that the protective order was primarily drafted for and directed to the parties to the litigation. *See, e.g.*, *Protective Order*, Introductory Paragraph ("… the Parties to this action … hereby stipulate to the following terms of an agreed order for the protection of confidential information <u>produced by the defendants</u> in the above captioned case" (emphasis added)). Because the plaintiffs are individuals and the defendant is the City of Boston, it is hardly surprising -- and indeed, probably adequate for the protection *of the Parties* -- that the protective order in its current form provides for only a single-tier "Confidential" designation, and does not anticipate or provide any heightened substantive or procedural protections for trade secret information. Plainly, neither the plaintiffs nor the defendant have -- or would ever have been thought to have had -- any trade secrets relevant to this dispute that would require a second-tier "Highly Confidential" designation.

---

Psychemedics' concern that the experts and consultants with whom Bingham would intend to share Psychemedics' trade secrets are indeed direct competitors of Psychemedics.

It is no doubt because of this fact that Paragraph 9(f) of the existing protective order allows the Parties -- without restriction and without regard to the identity of any expert or consultant that the parties retain -- to share Confidential Documents or Confidential Information with "experts, outside consultants and investigators, including the staff of such experts, consultants or investigators retained for the purpose of assisting counsel in the litigation." Presumably, the experts and consultants that have been (or will be) retained by the Parties will be hired for their expertise in the area of drug testing of hair, which constitutes Psychemedics' sole business and livelihood. Given the highly specialized nature of the relevant expertise, and the limited number of potential experts in this field, Psychemedics harbors substantial and good faith concerns that the parties have retained or will retain -- and will seek to share Psychemedics' "Highly Confidential" information with -- a consultant or expert who is a direct competitor of Psychemedics.

While it is true that by its technical terms the existing protective order (and associated certification) limits the use of Confidential Information by any expert or consultant to matters in connection with case, the practical reality is that once a competitor has been permitted to learn Psychemedics' trade secrets, it becomes a bell that is incapable of being "un-rung." *See In re Remington Arms*, 952 F.2d 1029, 1033 (8th Cir. 1991) ("… an after-the-fact remedy is largely in effectual in a trade secrets case … for once the information is wrongfully released, the trade secrets last forever and no sanction imposed on the violator can retrieve it"). Indeed, the moment a competitor is permitted to review Psychemedics' "Highly Confidential" SOP subsections, he or she will have an immediate and indelible understanding of -- and therefore the ability to replicate -- the unique methods that Psychemedics alone uses to perform its drug testing

of hair.[5/]  While the existing protective order requires the eventual return of the underlying "Confidential" documents, the protective order is fundamentally incapable of erasing the trade secret information from the mind of the expert, which unduly and unnecessarily risks competitive injury to Psychemedics if it in fact turns out that the expert is a competitor of Psychemedics.  *See, e.g., Ares-Serono, Inc. v. Organon Int'l B.V.*, 151 F.R.D. 215, 219 (D. Mass. 1993) (holding that the court "must exercise its discretion in order to avoid unnecessary disclosure of trade secrets or other confidential information" and noting that "the risk of competitive injury is particularly high when [disclosure is made to] a business competitor"); *Bailey v. Dart Container Corp. of Michigan*, 980 F.Supp. 560, 583 (D. Mass. 1997) (reasoning that "the risk of competitive injury is particularly high when [disclosure is made to a] business competitor," and noting that parties "can better protect and control the use of confidential information in the hands of its in house … experts as opposed to its outside ... experts"); *American Standard Inc. v. Pfizer, Inc.*, 828 F.2d 734, 741 (Fed. Cir. 1987) (noting the judicial presumption that disclosure of trade secrets or confidential information "to a competitor is more harmful than disclosure to a noncompetitor").   It is for this very reason that Rule 26 of the Federal Rules of Civil Procedure empowers and directs the courts to be mindful in safeguarding trade secrets through the use of customized protective orders tailored to address the particularized risks presented by each case as it develops, which quite commonly include the limited type of protections that are being requested here, namely, a limitation on "persons who are given access to the trade secrets," a "limit, or prohibit[ion] entirely [of] the reproduction" of highly confidential documents and the designation of

---

[5/]        As is likely to become apparent in this litigation, there are different methodologies utilized in hair drug testing analysis, and Psychemedics employs a unique, patented method distinct from any other type of

"an attorney to serve as a custodian for all confidential documents." *In re Remington Arms Co., Inc*., 952 F.2d at 1033.

>    B.    A Majority of the Plaintiffs Have Already Evinced a Willingness to Ignore
>           and Misrepresent The Terms of the Protective Order

While the Motion states that there is no basis for any concern by Psychemedics that the existing protective order will be disregarded, the fact is that several of the plaintiffs in this litigation have already asserted that nothing in this Court's protective order would prevent the City of Boston from producing, in another litigation, the documents produced and designated by Psychemedics in this litigation as "Confidential" or "Highly Confidential."  Plaintiffs Ronnie Jones, Richard Beckers, William Earl Bridgeforth, Shawn Harris, Walter Washington and George Downing are also parties to a proceeding before the Civil Service Commission of the Commonwealth of Massachusetts (the "Civil Service Commission") concerning their respective terminations by the Boston Police Department.  In a brief filed last month, these plaintiffs represented to the Civil Service Commission, through their counsel in that case, that:

> "the protective order in the federal litigation presents no barrier to the disclosure of documents in this proceeding instant matter.  Psychemedics, the entity most likely subject to any Commission subpoena, is not a signatory to Judge O'Toole's Order Governing Production and Exchange of Confidential Information dated January 8, 2007.  The Order only restricts distribution *by the federal Plaintiffs* of "confidential information produced by the defendants."  See Order, at 1.  It does not prohibit the Department, a producing party in the federal action, from disclosing materials in the Commission proceeding …."  (emphasis in original).

*See* Leary Aff., ¶ 9.  Not only is this position -- taken three weeks ago by six out of the nine plaintiffs in this case -- flatly wrong and if actualized, in contempt of this Court's protective order, it is a chilling reminder that the need for more specific and controlled

---

hair testing.

procedural protections to forestall any improper release of Psychemedics' confidential or trade secret information is a real and present one.

C.    The Current Protective Order Fails to Provide Psychemedics With Even the Procedural Protections That Are Provided to the Parties

An additional reason why the existing protective order requires supplementation is that certain of its most important provisions -- including Paragraphs 7 and 8 -- do not extend the same protections to third party witnesses that they do to the parties. Psychemedics cannot rely on any implicit undertaking by the Parties to protect against disclosure of Psychemedics' confidential documents and information through its subsidiary use in depositions and court filings; Psychemedics must be directly empowered to intervene as necessary to protect against such public disclosure.

For example, Paragraph 7 of the existing protective order applies to deposition testimony and exhibits, and only provides for the ability of the Parties (defined to include only the named parties to the litigation) to designate deposition testimony and exhibits as "Confidential" and to participate in any necessary and subsequent designation and redesignation of deposition transcripts and exhibits.  To address the gap in the protective order so that it could protect "Confidential" or "Highly Confidential" information produced by Psychemedics, Mintz Levin requested that Bingham agree to the following procedure if any Psychemedics "Confidential" or "Highly Confidential" documents or information is used in the course of depositions.  The Parties would notify Psychemedics and cause the court reporter to place the legend "Contains Confidential or Highly Confidential Information" on the front page of the transcript, and provide a copy of any transcript so designated to Psychemedics at the time it is provided to the parties.  At that point, Psychemedics would, within the same thirty-day period provided for the parties, in

good faith re-designate the transcript in order to indicate the specific portion(s) and/or exhibit(s) of the transcript which are to be designated as confidential.  Bingham refused this very basic request, even though the plaintiffs could suffer no conceivable prejudice (or even inconvenience) by including Psychemedics in the designation and redesignation process being contemporaneously conducted by the Parties.  Leary Aff., ¶ 6.

Likewise, Paragraph 8 of the existing protective order relates to Court Filings, and provides "[b]efore filing any pleadings or other documents which contain Confidential Documents or Confidential Information, the parties shall confer and agree on redactions that would permit the filing of the pleadings or other documents in open court.  If the parties are unable to agree on such redactions, the Producing Party(ies) shall move, pursuant to Federal Rule of Civil Procedure 26(c) and Local Rule 7.2, for a court order permitting such pleadings to be filed under seal ….."  By its terms, Paragraph 8 provides that only the <u>Parties</u> are entitled or permitted to confer and agree on redactions to Confidential Information or Documents that are reflected in pleadings.  While the second sentence of Paragraph 8 provides for the ability of a <u>Producing Party</u> (such as Psychemedics) to move for a court order that the pleadings be filed under seal if the <u>Parties</u> were unable to agree on redactions (and presumably notified Psychemedics of their failure to so agree), the existing protective order would expressly allow the plaintiffs and the City of Boston to agree (without any input or assent by Psychemedics) to file pleadings <u>without</u> any redactions of the information produced by Psychemedics with the designation of "Confidential."

Here too, Mintz Levin sought to affirmatively and interstitially address these omissions with Bingham, by requesting that the parties, before filing any pleadings or

other documents which contain documents or information designated by Psychemedics as "Confidential" or "Highly Confidential," confer with Psychemedics and agree on redactions that would permit the filing of the pleadings or other documents in open court. Just as it had with Paragraph 7, Bingham refused to allow Psychemedics any opportunity to seek relief prior to a proposed public disclosure of Psychemedics' "Confidential" and "Highly Confidential" documents or information. Leary Aff., ¶ 6.

       D.     <u>While Procedural Safeguards Are Necessary to Adequately Protect Psychemedics, The Limited Safeguards Requested Will In No Way Prejudice the Plaintiffs</u>

In their motion the plaintiffs do not -- because they cannot -- identify any way or manner in which the plaintiffs would be prejudiced by the adoption of the requested supplemental protective order provisions.  The requested "Highly Confidential" designation is likely to apply to no more than a single half-inch stack of documents from among the thousands of pages that Psychemedics is producing.  If the experts and consultants retained by the parties are <u>not</u> competitors of Psychemedics, no objection will be required.  On the other hand, if the retained experts and consultants are paid by Psychemedics' competitors, the "Highly Confidential" designation would serve to prevent disclosure only of this half-inch stack of documents, and only if the Court determines and agrees that disclosure of this "Highly Confidential" information to a competitor of Psychemedics would be inappropriate.

As to the requested limitation on copies and location for review of the "Highly Confidential" documents, the motion is unpersuasive in establishing any actual burden this would cause the plaintiffs, but instead makes only a generalized assertion to the effect that travel "is a hassle and an expensive endeavor."  Indeed, the motion stops short

of even saying that any travel by its experts would actually be required. According to its website, Bingham has offices in Boston, Hartford, Los Angeles, New York, Orange County, Portland Maine, San Francisco, Santa Monica, Silicon Valley and Washington, D.C. Certainly it is possible -- and in Psychemedics' view, highly probable -- that the plaintiffs' experts or consultants live and work in close proximity to one of Bingham's offices. Moreover, even if some level of travel was required, certainly the very limited number of "Highly Confidential" documents produced by Psychemedics could be reviewed by these experts when they are otherwise already scheduled to be in Boston to confer with counsel to the plaintiffs about this case. Certainly, a weighing of the miniscule burden this would be for the plaintiffs -- who are the actual litigants here -- against the substantial risk that unnecessary copies in varying locations would present to the continued safeguarding of Psychemedics' trade secrets, weighs decidedly in favor of the adoption of the requested supplemental protective order provisions.

## II.    Several Statements in Plaintiffs' Motion and the Supporting Affidavit Are Incorrect and Misleading

The motion and its accompanying affidavit contain several statements that are incorrect, misleading or wholly misplaced. Despite the representations to the contrary, it was Mintz Levin -- and not Bingham -- which initiated discussions to facilitate the rolling production of documents by Psychemedics that has since occurred. On the same day that Psychemedics retained Mintz Levin, Mintz Levin contacted Bingham and assured Bingham of Psychemedics' intention and desire to comply with the Order, on a rolling basis and as promptly as practicable. Indeed, since Mintz Levin was retained on February 11, 2008, Mintz Levin has made rolling productions to the parties, consisting of over 8,600 pages of documents that are responsive to the subpoena requests contained in

the Order.  Leary Aff., ¶ 7. It is simply untrue that Mintz Levin has engaged in any foot-dragging or "hostage taking" of documents; to the contrary, Mintz Levin has produced as many documents as promptly as possible, while at the same time proceeding cautiously to ensure that Psychemedics' trade secrets remain protected.

Moreover, the various statements in the motion to the effect that (1) Psychemedics seeks to "delay" the production of the SOPs in bad faith; (2) Psychemedics "wants to make an end run around Rule 26 by requiring plaintiffs to disclose their testifying experts"; and (3) Psychemedics has "ulterior motives for demanding the names of plaintiffs' experts and consultants prior to the disclosure of the SOPs" ignore the simple fact that Psychemedics is not a party to this dispute. Psychemedics enjoys no advantage (or disadvantage) whatsoever from any delay in the production of its SOPs or from any "early" disclosure of experts.  The only matter of consequence to Psychemedics is that it not unfairly and unnecessarily damaged by any disclosure of its confidential information and trade secrets merely because it happened to be the unlucky recipient of a third party subpoena.

Further, if the plaintiffs were (and are) truly concerned about any "premature" disclosure of the plaintiffs' litigation experts and consultants to the defendants, this concern is one that can be easily alleviated.  Certainly, the supplemental protective order could require that Psychemedics maintain the confidentiality of the identity of any proposed litigation expert or consultant with whom the parties provide notice of an intent to share Psychemedics' "Highly Confidential" information, and require that any objection by Psychemedics to a proposed disclosure be made under seal.  In this way, the

supplemental protective order would not constitute any intrusion into the plaintiffs'

litigation strategy, much less an unwarranted one.

**III.    The Motion to Compel Psychemedics to Complete Production By a Date Certain Should be Denied, and Attorneys' Fees Should Not Be Awarded to the Plaintiffs**

Psychemedics also opposes the motion in its request for an order requiring

Psychemedics to produce all responsive documents by a date certain.  Through the over

9,600 pages produced since the outset of this case, including over 8,600 pages produced

in February and the first week of March 2008, Psychemedics has demonstrated that it

takes this Court's December 2007 Order very seriously, and will complete any remaining

productions as promptly as is practicable.  Psychemedics further opposes any request by

the plaintiffs to recover its attorney's fees in bringing this motion to compel.

Psychemedics has, through its counsel, made a good faith attempt to work with plaintiffs

to supplement the protective order to make it "fit" in the context of production by a third

party.  Plaintiffs have been unreasonable in their refusal to resolve these matters

cooperatively, and should not be rewarded as a result.

## CONCLUSION

For the reasons stated above, Psychemedics opposes plaintiffs' motion to compel

and respectfully requests that the Court adopt and enter the proposed supplemental

protective order attached hereto as Exhibit 1.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D), Psychemedics respectfully requests oral argument on its Opposition to Plaintiffs' Motion to Compel and Request for Supplemental Provisions in the Protective Order.


Respectfully submitted,

**PSYCHEMEDICS CORPORATION**

By its attorneys,

/s/  Meredith M. Leary
Peter A. Biagetti, Esq., BBO # 042310
Meredith M. Leary, Esq., BBO # 654211
Mintz, Levin, Cohn, Ferris, Glovsky
   and Popeo, P.C.
One Financial Center
Boston, MA  02111
Tel: (617) 542-6000
Fax: (617) 542-2241

Dated: March 7, 2008

## <u>CERTIFICATE OF SERVICE</u>

I, Meredith M. Leary, hereby certify that a copy of the foregoing Psychemedics Corporation's Opposition to Plaintiffs' Motion to Compel and Request for Supplemental Provisions in the Protective Order was served through this Court's CM/ECF system, on counsel of record in the above-captioned action.

Dated:  March 7, 2008

/s/ Meredith M. Leary
Meredith M. Leary

**EXHIBIT 1**

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONNIE JONES, ET AL., ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Civil Action No. 05-11832-GAO |
| ) | |
| CITY OF BOSTON, ET AL., ) | |
| Defendants. ) | |
| ) | |

**[PROPOSED] <u>SUPPLEMENTAL PROTECTIVE ORDER</u>**

1.      This Supplemental Protective Order is being entered to supplement the

Protective Order previously entered in this case on January 8, 2007 (the "January 2007

Protective Order"), and governs any document or other thing subject to production or

inspection, interrogatory answer, deposition testimony, request for admission, admission,

or other information obtained through any means of discovery, or any portion thereof,

which has been designated "CONFIDENTIAL" by a party to this lawsuit (a "Litigation

Party") or any other third party. The party or parties making such designation (whether a

Litigation Party or third party) shall be referenced herein as the "Designating Party."

Any recipients of material designated "CONFIDENTIAL" or "HIGHLY

CONFIDENTIAL" under this Protective Order are hereinafter referred to as "Receiving

Party."

2.      A Designating Party may designate material for protection as either

"CONFIDENTIAL" in accordance with the terms of the January 2007 Protective Order,

or as "HIGHLY CONFIDENTIAL" in accordance with the terms of this Supplemental Protective Order.

3.      The Designating Party may designate documents or information as "HIGHLY CONFIDENTIAL" only if the Designating Party reasonably believes that the documents or information contain highly confidential trade secret information, and as such is particularly competitively sensitive.

4.      If any Receiving Party intends to provide materials designated as "HIGHLY CONFIDENTIAL" to any of the experts, outside consultants and investigators contemplated by Paragraph 9(f) of the January 2007 Protective Order, the Receiving Party shall notify the Designating Party of the identity and affiliation of any such expert, outside consultant or investigator (the "Expert Notice").  If, upon receiving the Expert Notice, the Designating Party reasonably believes that the person or entity identified in the Expert Notice is a competitor of the Designating Party, the Designating Party shall, within five (5) business days, file an objection with the Court to the proposed disclosure contemplated by the Expert Notice.  If the Receiving Party providing the Expert Notice so requests, the Designating Party shall strictly maintain the confidentiality of the information contained in the Expert Notice, and shall seek to file any objection with the Court under seal.

5.      The Receiving Party shall not make any disclosure of documents or information designated as  "HIGHLY CONFIDENTIAL" to the individual or entity identified in the Expert Notice prior the expiration of this five (5) business day period.  Moreover, if the Designating Party files an objection with the Court after receiving the Expert Notice, the Receiving Party shall not make any disclosure of "HIGHLY

CONFIDENTIAL" information to the individual or entity identified in the Expert Notice until the Court orders that such disclosure will be allowed.

6.     Documents or information designated as "HIGHLY CONFIDENTIAL" may only be accessed at the office of a Litigation Party's outside counsel of record.   No expert, outside consultant and investigator (as contemplated by Paragraph 9(f) of the January 2007 Protective Order) may retain any printed or electronic copies of any such materials, or review any printed or electronic copies of any such materials except at the office of a Litigation Party's outside counsel of record.

7.     Paragraph 7 of the January 2007 Protective Order is amended to read as follows:

Deposition Testimony.  A Party shall designate in good faith deposition testimony or portions thereof, including exhibits, as Confidential Information by means of a statement by counsel or the witness or other authorized counsel at the time of the giving of testimony, or by written notice by said counsel to all Parties within thirty (30) days of receipt of the transcript, designating which portion(s) of the transcript and which exhibit(s) are being designated as Confidential Information. If a party believes that Confidential Information may be disclosed during the course of the deposition, the party disclosing the information shall cause the court reporter to place the legend "Contains Confidential Information" on the front page of the transcript.  However, within thirty (30) days of receipt of the transcript, the party shall in good faith re-designate the transcript in order to indicate the specific portion(s) and/or exhibit(s) of the transcript which are to be designated as confidential.  If designation is made during the thirty-day period after receipt of the transcript, all Parties in possession of the transcript at the time of receiving the designation or thereafter shall place the "Contains Confidential Information" legend on the front cover of the transcript and each copy thereof, and the "Confidential" legend on each portion and/or exhibit so designated, and on each copy thereof.

Further, if during the course of a deposition, documents or information produced and designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" by a Designating Party (who is not a Litigation Party) is used or referenced, the Litigation Parties shall cause the court reporter to place the corresponding and appropriate legend "Contains Confidential Information" or "Contains Highly Confidential Information" on the front page of the transcript.  At the time this transcript is provided to the Litigation Parties, the Litigation Party conducting the

3

deposition shall provide a copy of the deposition transcript, with Exhibits, to the Designating Party. Within thirty (30) days of the Designating Party's receipt of the transcript, the Designating Party shall in good faith re-designate the transcript in order to indicate the specific portion(s) and/or exhibit(s) of the transcript which are to be designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."

8.      Paragraph 8 of the January 2007 Protective Order is amended to read as

follows:

Court Filings. Before filing any pleadings or other documents which contain "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" Documents or Information, the Litigation Parties shall confer with each other and with the Designating Party, if different than the Litigation Party, and agree on redactions that would permit the filing of the pleadings or other documents in open court. If the Litigation Parties and Designation Party are unable to agree on such redactions, the Designating Party shall move, pursuant to Federal Rule of Civil Procedure 26(c) and Local Rule 7.2, for a court order permitting such pleadings or other documents to be filed under seal. No pleadings or other documents which contain "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" Documents or Information shall be filed prior to the Court's ruling on that motion. In its consideration of whether any pleadings or documents may be filed under seal, the Court is not bound by the designation of any material as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" and any such designation shall not create any presumption that documents so designated are entitled to confidential treatment pursuant to Federal Rule of Civil Procedure 26(c). If the Court determines that the "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" Documents or Information are not entitled to confidential treatment to Federal Rule of Civil Procedure 26(c), and/or does not permit the pleadings or other documents which contain such "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" Information to be filed under seal, the Litigation Parties may then file those pleadings or other documents in open court.

**SO ORDERED:**


_____          Dated: _____
Honorable George A. O'Toole
United States District Judge


4275144v.1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| RONNIE JONES, ET AL., ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Civil Action No. 05-11832-GAO |
| ) | |
| CITY OF BOSTON, ET AL., ) | |
| Defendants. ) | |


## <u>AFFIDAVIT OF MICHAEL I. SCHAFFER, PH.D</u>

I, Michael I. Schaffer, hereby swear and depose as follows:

1.      I am the Vice President of Laboratory Operations of Psychemedics Corporation ("Psychemedics"), and am responsible for the day to day production aspects of Psychemedics' forensic hair drug testing laboratory.

2.      The information contained in the redacted four subsections from within Tabs 5 and 17 of Psychemedics' Standard Operating Procedures (the "SOP subsections") contain and reflect some of Psychemedics' most confidential and valuable proprietary information, and provides the step by step procedures which would permit a competitor to replicate our current methods.

3.      Psychemedics takes every precaution to ensure that the information in the SOP subsections is not known to anyone outside of Psychemedics.  For example, each page of the SOP contains an annotation that no copies of the SOP can be created without the written consent of the laboratory director. The SOPs are maintained under strict security in the office of the Director of Quality Assurance.

4.      Further, even within Psychemedics, the content of the SOP subsections is closely guarded, and is only available to certain employees and on a strict "need to know" basis.  Only employees who must be privy to their content in order to carry out their responsibilities as Psychemedics' employees are permitted access to the SOP subsections.

5.      The SOP subsections -- and their continued protection from disclosure to any competitor of Psychemedics -- are essential to Psychemedics' livelihood and ability to compete in the marketplace.  To my knowledge, and on the basis of my close monitoring of the relevant marketplace for the past 9 years, none of Psychemedics' competitors have successfully replicated the methods used by Psychemedics in the SOP subsections to conduct hair testing for drugs that is as accurate and reliable as the testing done by Psychemedics.

6.      Psychemedics has invested more than two decades of R&D into its hair testing methods.  Over this time, Psychemedics has generally maintained at least two full time (and currently three full time) employees who spend 100% of their time devoted to R&D.   The SOP subsections are a direct reflection of the results of these intensive and longstanding R&D efforts.

7.      Without obtaining the SOP subsections -- which, as set forth above, are zealously guarded and protected from disclosure by Psychemedics -- it would be extremely difficult for a competitor of Psychemedics to duplicate the methods used by Psychemedics to conduct drug testing in hair.


                                        /s/ Michael I. Schaffer
                                        Michael I. Schaffer, Ph.D.

Dated: March 7, 2008

2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RONNIE JONES, ET AL.,<br>　　　　　　　　　Plaintiffs,<br><br>　　　　vs.<br><br>CITY OF BOSTON, ET AL.,<br>　　　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)　　Civil Action No. 05-11832-GAO<br>)<br>)<br>)<br>)<br>) |

## <u>AFFIDAVIT OF MEREDITH M. LEARY</u>

I, Meredith M. Leary, hereby swear and depose as follows:

1.　　　I am an attorney with the law firm of Mintz Levin Cohn Ferris Glovksy

and Popeo, P.C. ("Mintz Levin") and I submit this affidavit in support of Psychemedics

Corporation's Opposition to Plaintiffs' Motion to Compel and Request for Supplemental

Provisions in the Protective Order.

2.　　　On February 11, 2008, Psychemedics Corporation ("Psychemedics")

retained Mintz Levin to represent it in this matter.　That same day, Peter Biagetti of Mintz

Levin contacted Bingham McCutcheon ("Bingham"), counsel to plaintiffs, to let

Bingham know that Mintz Levin would be representing Psychemedics going forward.

3.　　　After reviewing the protective order that applies to the parties to the case

and discovering some omissions that would preclude its effectiveness if applied to a third

party witness like Psychemedics, Mintz Levin contacted Bingham on February 13, 2008

and proposed that the parties work cooperatively to supplement the provisions of the

existing protective order in an interstitial fashion.　Specifically, Mintz Levin both called

and wrote to Bingham, explaining:

1

"[B]ecause Psychemedics is not a party to the [protective] Order, the Order does not provide Psychemedics with any procedural rights for protecting the dissemination of its Highly Confidential information. As a result, Psychemedics has asked that the parties execute an addendum to the Order, which we are happy to take responsibility for drafting, that can more adequately protect certain Highly Confidential information that is the lifeblood of Psychemedics' business. Our hope is that this designation could provide Psychemedics with advance identification and notice of the experts with whom the parties intend to share Psychemedics' Highly Confidential documentation, along with a very short period of time (perhaps five days) for Psychemedics to file an objection with the Court to that individual or entity's receipt of the Highly Confidential information."

*See* February 14, 2008 Letter from Mintz Levin to Bingham, attached hereto as Exhibit A, and February 13 and 14, 2008 E-mail Exchange between Mintz Levin and Bingham, attached hereto as Exhibit B. Similarly, with respect to the number of copies and location for review of documents designated by Psychemedics' as "Highly Confidential," Mintz Levin stated:

"Further, we would like to work cooperatively with the parties to limit the number and location of the copies made of Psychemedics' Highly Confidential information, and would like to have discussions on how best to do so. When we spoke yesterday, we suggested that one possibility of doing so would be to keep Psychemedics' Highly Confidential information at your firm's offices, with any experts working with the materials at your offices. We certainly are interested and willing to explore other possible mechanisms to control the dissemination of, and guard against any misuse of, Psychemedics' Highly Confidential information, and would be interested in hearing if you have any proposals in this regard."

*See id.*

4.      Further, on each of February 13, February 14, February 15 and February 19, Mintz Levin continued to try to engage Bingham in discussions to try to resolve the practical difficulties raised by the omissions in the existing protective order.

5.      While Bingham was willing to provide Psychemedics with notice and an opportunity to file an objection before Bingham shared information or documents designated by Psychemedics as "Highly Confidential" with an individual employed by a direct competitor of Psychemedics, Bingham refused to include paid consultants of direct competitors -- as opposed to only employees receiving a W-2 -- within their proposed

2

definition of an individual "employed by" a direct competitor of Psychemedics.  *See*

February 19, 2008 E-mail from Mintz Levin to Bingham, attached hereto as <u>Exhibit C</u>.

      6.      On February 14 and February 19, 2008, Mintz Levin also raised with

Bingham the issue of the inapplicability of Paragraphs 7 and 8 of the existing protective

order to third party witnesses.  In an e-mail from Mintz Levin to Bingham dated February

19, 2008, Mintz Levin noted:

> "As I mentioned when we spoke on Friday, Psychemedics is not included within
> the definition of "Party" within the current protective order. Paragraphs 7
> (Deposition Testimony) and 8 (Court Filings) provide Parties with certain
> procedural rights to protect the designation of information that are not extended to
> Psychemedics. To ameliorate the risk of undue disclosure of Psychemedics'
> confidential or highly confidential information through any use of it at deposition
> or in court filings, Psychemedics proposes that an addenda relating to paragraphs
> 7 and 8 is created, which would be along the following lines:
>
> With respect to deposition testimony, if any documents or information designated
> as confidential by Psychemedics is used in the course of a deposition, the Parties
> shall notify Psychemedics and cause the court reporter to place the legend
> "Contains Confidential Information" on the front page of the transcript. A copy of
> any transcript so designated shall be provided to Psychemedics at the time it is
> provided to the parties, so that Psychemedics can in good faith re-designate the
> transcript in order to indicate the specific portion(s) and/or exhibit(s) of the
> transcript which are to be designated as confidential.
>
> With respect to Court filings, before filing any pleadings or other documents
> which contain Confidential Documents or Confidential Information of
> Psychemedics, the parties shall confer and agree with Psychemedics on redactions
> that would permit the filing of the pleadings or other documents in open court. I
> believe the remainder of paragraph 8 would not need to be modified by any
> addenda, since it already by its terms allows Producing Parties (and not just
> Parties) to move pursuant to FRCP 26(c) and Local Rule 7.2."

*See id.*

These requests were refused by Bingham.

      7.      Since Mintz Levin was retained by Psychemedics on February 11, 2008,

Mintz Levin has engaged in a constant and rolling review and production of documents

responsive to the Subpoena requests reflected in the December 2007 Order.  To date,

Psychemedics has produced in excess of 9,600 pages to the plaintiffs.  Such production

includes the entirety of the SOPs referenced in the Order, with all but four subsections of these SOPs produced in complete, unredacted form.[1/] The various correspondence accompanying the productions of documents made by Mintz Levin to the plaintiffs is attached hereto as <u>Exhibit D</u>.

8.    Mintz Levin is working closely with Psychemedics to ensure that any remaining documents responsive to the Order are promptly collected, reviewed and produced.

9.    In a motion filed on February 14, 2008 before the Civil Service Commission of the Commonwealth of Massachusetts, in which six of the nine plaintiffs in this case are also litigants, these six plaintiffs adopted the following position concerning this Court's existing protective order:

> "the protective order in the federal litigation presents no barrier to the disclosure of documents in this proceeding instant matter. Psychemedics, the entity most likely subject to any Commission subpoena, is not a signatory to Judge O'Toole's Order Governing Production and Exchange of Confidential Information dated January 8, 2007. The Order restricts distribution *by the federal Plaintiffs* of "confidential information produced by the defendants." See Order, at 1. It does not prohibit the Department, a producing party in the federal action, from disclosing materials in the Commission proceeding ...." (emphasis in original).

A February 15, 2008 email from Mintz Levin to Bingham attaching this motion is attached hereto as <u>Exhibit E</u>.

/s/  Meredith M. Leary
Meredith M. Leary

Dated: March 7, 2008

4272903v.1

---

[1/]    Because the SOP subsections being produced span a number of years, these four subsections in certain instances contain a different subsection number from year to year, even though they relate to the same substantive step in the Standard Operating Procedure.

# EXHIBIT A

# MINTZ LEVIN

One Financial Center
Boston, MA  02111
617-542-6000
617-542-2241 fax
www.mintz.com

Meredith M. Leary | 617 348 4780 | mleary@mintz.com

February 14, 2008

**BY HAND**

Mr. William F. Benson
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110-1726

Re:    Mintz Levin's Representation of Psychemedics Corporation

Dear Bill:

As you know, Peter Biagetti and I have been retained this week to represent Psychemedics Corporation ("Psychemedics") as a third party witness in the *Jones et al v. City of Boston et al* litigation pending in the District of Massachusetts.  We will be filing a formal notice of appearance in the case today.

First, we wanted to thank you for the materials you sent yesterday concerning the "prior agreements" referenced in Judge O'Toole's order.  Please rest assured that we are working with our clients to receive, and then produce, the materials covered by Judge O'Toole's order as promptly as practicable.  In that regard, we mentioned when we spoke yesterday that we are actively working to gather and produce documents responsive to document request numbers 21, 31, 32, 39 and 40.  Moreover, we are enclosing with this letter documents responsive to certain of these requests, which have been bates-stamped PMD 1039 to PMD 1080.  We intend to keep producing responsive documents to you on a rolling basis.

Also, from your correspondence yesterday, we have a better understanding of your position on the "prior agreements" incorporated by reference in the order, and are working with predecessor counsel and our clients to locate and promptly produce all documents covered by the parties' prior agreements.

Finally, we understand that your clients are eager to receive the Psychemedics SOPs.  We are working with our clients to ensure we have gathered all of the prior versions of the SOPs you have requested.  With respect to the Confidentiality Order (the "Order"), we explained to you yesterday that while Psychemedics is not a party to the Order (having not signed it), we believe that most of the responsive documents can be produced to you with only the level of protection reflected in the current Order.  Because Psychemedics is not a party to the Order, however, the Order does not provide Psychemedics with any procedural rights for protecting the dissemination of its Highly Confidential information.  As a result, Psychemedics has asked that the parties execute an addendum to the Order, which we are happy to take responsibility for drafting, that can more adequately protect certain Highly Confidential information that is the lifeblood of

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

BOSTON | WASHINGTON | NEW YORK | STAMFORD | LOS ANGELES | PALO ALTO | SAN DIEGO | LONDON

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

William F. Benson
February 14, 2008
Page 2

Psychemedics' business.   Our hope is that this designation could provide Psychemedics with advance identification and notice of the experts with whom the parties intend to share Psychemedics' Highly Confidential documentation, along with a very short period of time (perhaps five days) for Psychemedics to file an objection with the Court to that individual or entity's receipt of the Highly Confidential information.

We believe that this addendum would in no way prejudice the parties, but could help protect against the risk of disclosure of Psychemedics' trade secrets to competitors, with the court appropriately serving as the arbiter of what would be an appropriate versus an inappropriate disclosure under the circumstances.  Further, we would like to work cooperatively with the parties to limit the number and location of the copies made of Psychemedics' Highly Confidential information, and would like to have discussions on how best to do so.  When we spoke yesterday, we suggested that one possibility of doing so would be to keep Psychemedics' Highly Confidential information at your firm's offices, with any experts working with the materials at your offices. We certainly are interested and willing to explore other possible mechanisms to control the dissemination of, and guard against any misuse of, Psychemedics' Highly Confidential information, and would be interested in hearing if you have any proposals in this regard.

In any event, please know that despite the fact we have only begun working on this matter this week, we believe that we can and will continue to produce responsive information to you very promptly, and on a rolling basis.  We also believe that this issue relating to "Highly Confidential" documents will affect only a very small number of the documents that Psychemedics will be producing.  Perhaps the most productive way to expedite this process (which is in both of our clients' interests) is for our firms to meet in person.  We look forward to meeting with you and discussing any ideas you might have to address our concerns.

Sincerely,

Meredith M. Leary

Enclosures

cc:    Peter A. Biagetti, Esq.

4257354v.1

# EXHIBIT B

**Leary, Meredith**

| | |
|---|---|
| **From:** | Biagetti, Peter |
| **Sent:** | Thursday, February 14, 2008 10:07 AM |
| **To:** | 'Benson, William F.'; Leary, Meredith |
| **Cc:** | Rutkowski, Rheba; Webster, Raquel J. |
| **Subject:** | RE: Psychemedics production |

Good morning Bill, and thanks for your help clarifying the backdrop here. We've only been in the case for two days but are working hard with our new client to respond to your requests.

Before the posturing escalates, however, let me reiterate that our client intends to produce all documents subject to the Court's Order, and to "agree to be subject to the terms of" the Confidentiality Order pursuant to its Section 22. We have suggested only that, with regard to certain excerpts of the pertinent SOPs, all parties agree to an efficient  notice and objection process, and to a safeguard on distribution designed only to ensure for third-parties what the Consent currently contemplates for parties to the case--that those excerpts will not be used "for any purpose other than preparing for or conducting this Litigation." We intend no obstruction, but simply ask fair protection.

I hope your clients will reconsider. The extremity and precipitousness of their response already risks our inference that their experts somehow do intend an unauthorized use of our client's proprietary information. In the meantime, we shall continue our efforts to ensure prompt compliance with the Order, provide you with a letter updating you on our production and position, and look forward to speaking with you again, at least pursuant to our mutual Local Rule 7.1 (A) (2) obligations, before seeking His Honor's guidance. Thanks again.

Peter A. Biagetti | Attorney
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center | Boston, MA 02111
Phone: 617.348.4472 | Fax: 617.542.2241
Cell: 508.277.6945
E-mail: pbiagetti@mintz.com
Web: www.mintz.com

-----Original Message-----
From: Benson, William F. [mailto:william.benson@bingham.com]
Sent: Wednesday, February 13, 2008 2:20 PM
To: Biagetti, Peter; Leary, Meredith
Cc: Rutkowski, Rheba; Webster, Raquel J.
Subject: Psychemedics production

Peter/Meredith,

To follow up on our telephone conference.

1.  You advised that Psychemedics will comply with the Court's order and produce the tabs of the SOP's that were ordered to be produced by the Court (prior and current versions of the SOPs) and will produce documents responsive to Document Request Nos. 21, 31, 32, 39, 40.
However, you advised that you would not produce "confidential" documents unless we agreed to amend the Confidentiality Order, which -- as set forth below -- we will not agree to.

2.  You asked that we identify the documents that Psychemedics previously agreed to produce and that were ordered to be produced by the Court.  Pursuant to your request, attached is (a) memo of law filed in support of motion to compel Psychemedics and (b) April 13, 2007 letter confirming meet and confer.  As set forth in the memo and letter, Psychemedics previously agreed to produce documents responsive to Request Nos. 1 (certain documents), 3 (certain documents), 4, 11-14, 15-17, 22, 23 (hair samples; Allen Holland advised Psychemedics has hair samples), 24, 26, 29-30 (certain documents), (31-32, 39-40

1

-- certain documents), and 36 (summary documents).  Please confirm by the end of the day tomorrow that Psychemedics will comply with the Court's Order and produce these documents as soon as possible.

3.  We will not agree to your suggested changes to the Protective Order.
The Court ordered that documents be produced by Psychemedics pursuant to the existing Order.  Psychemedics made arguments at the hearing that the existing Order did not provide enough protection; these arguments were rejected by the Court.  Further, Allen Holland -- as counsel for Psychemedics -- previously agreed to produce documents, including the SOPs, pursuant to the existing order and indeed has produced "confidential" documents pursuant to the existing order.  Accordingly, Psychemedics has waived any right to seek an amendment (at this late
stage) to the existing order.  Please let me know whether Psychemedics still insists on an amendment to the Confidentiality Order prior to producing any additional confidential material.  I ask that you let me know your position by the end of the day tomorrow.

Thanks,

Bill

William F. Benson
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110-1726
T 617.951.8659
F 617.951.8736
william.benson@bingham.com

The information in this transmittal (including attachments, if any) is privileged and confidential and is intended only for the recipient(s) listed above.  Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient.  If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal.  Thank you.

=======================================================================
Bingham McCutchen LLP Circular 230 Notice:  To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding any federal tax penalties.  Any legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be relied upon by any other person or entity or used for any other purpose without our prior written consent.
=======================================================================

# EXHIBIT C

## Leary, Meredith

| | |
|---|---|
| **From:** | Leary, Meredith |
| **Sent:** | Tuesday, February 19, 2008 9:43 PM |
| **To:** | william.benson@bingham.com |
| **Cc:** | Biagetti, Peter |
| **Subject:** | Psychemedics |

Hi Bill,

As promised, I write to get back to you on your counterproposal from Friday on the protection of certain of Psychemedics' highly confidential information. I have explained to my client that you have proposed to agree to provide Psychemedics with notice if plaintiffs intended to provide Pyschemedics' confidential information to someone "employed by a direct competitor" of Psychemedics, with "direct competitor" meaning an "entity that does drug testing for profit." As expected, and as Peter and I suggested was likely when we spoke with you on Friday, we have passed your proposal on to our clients, who believe the protection you propose to offer would only be meaningful and provide the necessary protection under circumstances where the parties were able to work out a specific and appropriate definition of "employed by," that would at least include paid "consultants" who don't happen to be considered a W-2 employee of a competitor.

As I mentioned when we spoke on Friday, Psychemedics is not included within the definition of "Party" within the current protective order. Paragraphs 7 (Deposition Testimony) and 8 (Court Filings) provide Parties with certain procedural rights to protect the designation of information that are not extended to Psychemedics. To ameliorate the risk of undue disclosure of Psychemedics' confidential or highly confidential information through any use of it at deposition or in court filings, Psychemedics proposes that an addenda relating to paragraphs 7 and 8 is created, which would be along the following lines:

With respect to deposition testimony, if any documents or information designated as confidential by Psychemedics is used in the course of a deposition, the Parties shall notify Psychemedics and cause the court reporter to place the legend "Contains Confidential Information" on the front page of the transcript. A copy of any transcript so designated shall be provided to Psychemedics at the time it is provided to the parties, so that Psychemedics can in good faith re-designate the transcript in order to indicate the specific portion(s) and/or exhibit(s) of the transcript which are to be designated as confidential.

With respect to Court filings, before filing any pleadings or other documents which contain Confidential Documents or Confidential Information of Psychemedics, the parties shall confer and agree with Psychemedics on redactions that would permit the filing of the pleadings or other documents in open court. I believe the remainder of paragraph 8 would not need to be modified by any addenda, since it already by its terms allows Producing Parties (and not just Parties) to move pursuant to FRCP 26(c) and Local Rule 7.2.

Finally, I am hoping to be able to produce some more documents by early tomorrow afternoon, which I will have delivered by hand.

Thanks,

Meredith

Meredith M. Leary, Esq.

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

One Financial Center | Boston, MA 02111

Phone: 617.348.4780 | Fax: 617.542.2241

E-mail: mleary@mintz.com <mailto:mleary@mintz.com>

Web: www.mintz.com <http://www.mintz.com/>

# EXHIBIT D

# MINTZ LEVIN

One Financial Center
Boston, MA  02111
617-542-6000
617-542-2241 fax
www.mintz.com

Meredith M. Leary | 617 348 4780 | mleary@mintz.com

February 20, 2008

**BY HAND**

Mr. William F. Benson
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110-1726

Re:    *Jones et al v. City of Boston et al  --*
       *Production of Documents by Psychemedics Corporation*

Dear Bill:

As promised, I enclose further documents as part of the rolling production of Psychemedics
Corporation, which are responsive to Request 21 and have been bates-stamped PMD 1081 -
PMD 1203.  Please note that the enclosed documents have been designated as "Confidential"
within the existing protective order.

As we have discussed, I intend to continue to produce responsive documents to you on a rolling
basis, as soon as I am able to receive and review them, unless and until I hear from you that you
would prefer me to do otherwise.

Sincerely,

Meredith M. Leary

Enclosures

cc:    Mary Jo Harris, Esq. (with enclosures)
       Peter A. Biagetti, Esq. (without enclosures)

4261380v.1

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

BOSTON | WASHINGTON | NEW YORK | STAMFORD | LOS ANGELES | PALO ALTO | SAN DIEGO | LONDON

# MINTZ LEVIN

Meredith M. Leary | 617 348 4780 | mleary@mintz.com

One Financial Center
Boston, MA 02111
617-542-6000
617-542-2241 fax
www.mintz.com

February 25, 2008

BY HAND

Mr. William F. Benson
Bingham McCutchen LLP
150 Federal Street
Boston, MA 02110-1726

Re:    *Jones et al v. City of Boston et al --*
       Production of Documents by Psychemedics Corporation

Dear Bill:

Without waiving any grounds to oppose your motion to compel or to seek expansion of the existing protective order, I enclose further documents as part of the rolling production of Psychemedics Corporation ("Psychemedics"), which have been bates-stamped PMD 1204 through PMD 1630. Please note that several of the enclosed documents have been designated as "Confidential" within the existing protective order.

For purposes only of convenience and clarity of communication between counsel, please note the following:

Request 2
Psychemedics has produced a summary record of the total number of tests performed for the Boston Police Department, which has been bates stamped at PMD 1628 to PMD 1630. Please note that this summary record denotes the total number of tests, which is not necessarily commensurate with the number of tested subjects.

Request 3
Psychemedics did not retain a copy of any marketing materials provided to the defendants, and therefore has no documents responsive to Request 3, as narrowed by the parties' prior agreement.

Request 12
Psychemedics belongs to a limited number of trade organizations (i.e., the Society of Hair Testing, the Drug & Alcohol Testing Industry Association and the Society of Forensic Toxicology) and pays the same periodic membership fees or dues to those organizations as the remaining members. While I don't believe documents or communications concerning these membership fees are of interest to you (nor contemplated as part of the parties' prior agreement regarding Request 12), please let me know if you have differing thoughts and we can discuss this issue further.

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

BOSTON | WASHINGTON | NEW YORK | STAMFORD | LOS ANGELES | PALO ALTO | SAN DIEGO | LONDON

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

William F. Benson
February 25, 2008
Page 2

Psychemedics' Standard Operating Procedures
This production includes several of the tabs reviewed in camera by Judge O'Toole, including the entirety of the introductory material prior to Tab 1, Tab 6, Tab 9, Tab 12 and Tab 16.  Please note that the cover sheets labeling each of these tabs were produced by Mintz Levin (and are not part of the underlying, original document).  This labeling was done solely for purposes of convenience and ease of review.

As you know, I will continue to review and produce responsive documents to you on a rolling basis, as soon as I am able to receive and review them.

Sincerely,

Meredith M. Leary

Enclosures

cc:     Mary Jo Harris, Esq. (with enclosures)
        Peter A. Biagetti, Esq. (without enclosures)

4264805v.1

# MINTZ LEVIN

One Financial Center
Boston, MA  02111
617-542-6000
617-542-2241 fax
www.mintz.com

Meredith M. Leary | 617 348 4780 | mleary@mintz.com

February 27, 2008

**BY HAND**

Mr. William F. Benson
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110-1726

Re:  *Jones et al v. City of Boston et al  --*
     *Production of Documents by Psychemedics Corporation*

Dear Bill:

Without waiving any grounds to oppose your motion to compel or to seek expansion of the
existing protective order, I enclose further documents as part of the rolling production of
Psychemedics Corporation ("Psychemedics"), which have been bates-stamped PMD 1631
through PMD 2307.  Please note that several of the enclosed documents have been designated as
"Confidential" within the existing protective order.

In addition, Psychemedics has confirmed that it does not have any documents responsive to
Request 14.

Sincerely,

Meredith M. Leary

Enclosures

cc:  Mary Jo Harris, Esq. (with enclosures)
     Peter A. Biagetti, Esq. (without enclosures)

4266731v.1

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

BOSTON | WASHINGTON | NEW YORK | STAMFORD | LOS ANGELES | PALO ALTO | SAN DIEGO | LONDON

# MINTZ LEVIN

One Financial Center
Boston, MA  02111
617-542-6000
617-542-2241 fax
www.mintz.com

**Meredith M. Leary** | 617 348 4780 | mleary@mintz.com

February 27, 2008

**BY E-MAIL AND REGULAR MAIL**

Mr. William F. Benson
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110-1726

Ms. Mary Jo Harris
Morgan, Brown & Joy, LLP
200 State Street
11th Floor
Boston, MA  02109

Re:     _Jones et al v. City of Boston et al_ --
        Document Request 23 to Psychemedics Corporation

Dear Counsel:

I write with respect to Request 23 of the Subpoena issued to Psychemedics, as limited by the parties' prior agreement, which was incorporated by reference in Judge O'Toole's December 2007 order.  The chart below lists the Subject Identification Numbers ("SID's") that I understand correlate with the plaintiffs, the Psychemedics' Laboratory Accession Numbers ("LAN's") associated with those SIDs for each sample retained by Psychemedics, and the amount of hair left for each such LAN sample:

| SID | LAN | Amount of Hair Left (in mg.) |
|-----|-----|------------------------------|
| 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 | 113033065 | 27.0 |
|             | 410011279 | 44.8 |
| 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 | 113054428 | 12.5 |
|             | 113391745 | 38.6 |
|             | 410011339 | 63.0 |
|             | 410012584 | 70.0 |
| 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 | 113403272 | 27.0 |
|             | 410012678 | 31.6 |
| 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 | 113271360 | 37.0 |
|             | 410012074 | 81.0 |
| 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 | 113213042 | 8.5 |
|             | 410011919 | 78.0 |

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

BOSTON | WASHINGTON | NEW YORK | STAMFORD | LOS ANGELES | PALO ALTO | SAN DIEGO | LONDON

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

William F. Benson
Mary Jo Harris
February 27, 2008
Page 2

| | | |
|---|---|---|
| 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 | 113009452 | 20.0 |
| | 410011153 | 55.7 |
| 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 | 113216366 | 27.5 |
| | 410011909 | 66.0 |
| 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 | 114203457 | 2 strands |
| 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 | 114249046 | 33.3 |
| | 410015884 | 57.3 |
| 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 | 113276385 | 15.8 |

Please contact me if you wish to discuss this matter further.

Sincerely,

Meredith M. Leary

Enclosures

cc:     Peter A. Biagetti, Esq.

4265119v.2

# MINTZ LEVIN

Meredith M. Leary | 617 348 4780 | mleary@mintz.com

One Financial Center
Boston, MA  02111
617-542-6000
617-542-2241 fax
www.mintz.com

March 7, 2008

**BY HAND**

Mr. William F. Benson
Bingham McCutchen LLP
150 Federal Street
Boston, MA  02110-1726

Re:    *Jones et al v. City of Boston et al  --*
       Production of Documents by Psychemedics Corporation

Dear Bill:

I enclose further documents as part of the rolling production of Psychemedics Corporation ("Psychemedics"), which have been bates-stamped PMD 2308 through PMD 9690.   Please note that without waiving any grounds to oppose your motion to compel or to seek expansion of the existing protective order, several of the enclosed documents have been designated as "Confidential" within the existing protective order.

Among the enclosed documents are the remaining two tabs of the Psychemedics SOPs referenced in the December 2007 Order, which have been produced in their entirety with the exception of four redacted subsections.[1/] For these four subsections, Psychemedics will be requesting that the court adopt supplemental provisions to the existing protective order to add a "Highly Confidential" designation which would, among other things, trigger the notice and limited opportunity for objection that we have previously requested that your clients agree to voluntarily.

Finally, you will note that in accordance with your direction last week, I have not redacted the Social Security Numbers for your clients, though I have endeavored to ensure that any documents containing this information have been designated "Confidential" within the existing protective order.

---

[1/]   As you will see, because the SOP subsections being produced span a number of years, these four subsections in certain instances contain a different subsection number from year to year, even though they relate to the same substantive step in the Standard Operating Procedure.

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

BOSTON | WASHINGTON | NEW YORK | STAMFORD | LOS ANGELES | PALO ALTO | SAN DIEGO | LONDON

**Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.**

William F. Benson
Mary Jo Harris
March 7, 2008
Page 2


Please let me know if you have any questions or would like to discuss this matter in any respect.


Sincerely,


Meredith M. Leary

Enclosures

cc:     Mary Jo Harris, Esq. (with enclosures)
        Peter A. Biagetti, Esq. (without enclosures)


4275010v.1

# EXHIBIT E

## Leary, Meredith

| | |
|---|---|
| **From:** | Leary, Meredith |
| **Sent:** | Friday, February 15, 2008 4:46 PM |
| **To:** | william.benson@bingham.com |
| **Cc:** | Biagetti, Peter |
| **Subject:** | Opposition Construing the Protective Order |
| **Attachments:** | 20080215172147_20080215_161735.pdf |

Hi Bill,

As I mentioned I would on the phone, I have attached a brief that was filed yesterday before the Civil Service Commission, which takes the position that the protective order in the federal case would not prevent the parties from re-producing any third party data produced to the parties by Psychemedics. This highlights the very real nature of Psychemedics' concern with the current protective order, which is really directed to the protection of the parties' data, and underscores our concerns that it does not sufficiently protect (or provide sufficient procedural rights to) third parties such as Psychemedics.

I will be in touch early next week concerning the proposals we discussed this afternoon. I hope you enjoy the long weekend.

Regards,
Meredith

Meredith M. Leary, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center | Boston, MA 02111
Phone: 617.348.4780 | Fax: 617.542.2241
E-mail: mleary@mintz.com
Web: www.mintz.com

02/14/2008 12:05 FAX 6175232527          SANDULLI GRACE                    ☒002/010

# SANDULLI GRACE, PC

ONE STATE STREET
SUITE 200
BOSTON, MASSACHUSETTS 02109

(617) 523-2500

FAX (617) 523-2527

JOSEPH G. SANDULLI
KENNETH A. GRACE
ALAN H. SHAPIRO
SUSAN F. HORWITZ
AMY LAURA DAVIDSON
JOHN M. BECKER
LEIGH A. PANETTIERE
BRYAN C. DECKER
PATRICK N. BRYANT
RACHEL E. MUÑOZ

VIA FACSIMILE

February 14, 2008

Chris Bowman, Chair
Civil Service Commission
Commonwealth of Massachusetts
1 Ashburton Place, Room 503
Boston, MA 02108

      RE:   Ronnie Jones et al v.  Boston Police Department, D-02-657
              Appellants' Joint Opposition to Department's Motion to Stay

Dear Chair Bowman:

     Enclosed please find Appellants' Joint Opposition to Department's Motion to
Stay.  I hereby certify that I have sent a copy of the above document to attorneys on
record for the Department and Psychemedics by facsimile and first-class mail.

Very truly yours,

Patrick N. Bryant (jmb)

Enclosure

cc:    J. Allen Holland, Esq. (via facsimile)
       David Jellinek, Esq. (via facsimile)
       Appellants
       Ronald MacGillivray

02/14/2008 12:05 FAX 6175232527          SANDULLI GRACE                    ☒003/010

**COMMONWEALTH OF MASSACHUSETTS**
**CIVIL SERVICE COMMISSION**

Ronnie C. Jones, et al.,

    Appellants

v.

Boston Police Department,

    Appointing Authority

Case No. D-02-657, et al.

**APPELLANTS' JOINT OPPOSITION TO CITY'S MOTION TO STAY**

The 11 individual appellants (Appellants), whose Civil Service Commission

appeals have been pending for as long as 6.5 years, hereby oppose the Boston Police

Department (Department)'s Motion to Stay proceedings indefinitely.  By asking the

Commission to delay proceedings that already have been pending for years, the

Department essentially argues that Appellants are not entitled to any Commission

hearing simply because a few Appellants also challenge the Department's hair testing

procedure under state and federal anti-discrimination law.  The Department's argument

is thoroughly unpersuasive and reflects a callous disregard for the severe financial and

emotional toll suffered by individual Appellants.  The interests of judicial or

administrative economy are not served by forcing appellants, who collectively have

waited about 55 years to be heard, to wait even longer to receive closure on their claims

that their terminations were unsupported by just cause.  Moreover, the stay is

unnecessary because the promised litigation over whether Psychemedics may be

compelled to produce certain documents may functionally stall Commission

proceedings. Based on the foregoing, Appellants ask the Commission to deny the Motion to Stay.

    **1. Because The Commission Has Authority To Order Disclosure Of Psychemedics' Standard Operating Procedures And/Or To Exclude Hair Test Results If Such Materials Are Not Produced, It Is Inappropriate To Stay This Litigation Any Further.**

The Department concedes that the Standard Operating Procedures and related materials are "necessary to litigate these matters." *Department's Motion To Stay, at 4.* But it claims that the Commission cannot access these materials. Instead of working to ensure the Commission has access to materials that the parties agree are indispensable to a substantive hearing on the merits, the Department prefers to stymie such access by proposing that the Commission indefinitely, if not permanently, postpone the instant appeals. This argument is riddled with errors.

First, the Commission has direct and indirect authority to order disclosure of the Standard Operating Procedure, contrary to the Department's representations. It is well-established that the Commission may issue subpoenas and/or seek enforcement of same against non-parties. See G.L. c.31, §72; 801 CMR 1.01, 1.02. See also c.233, §10.[1] Further, the Commission may indirectly enforce disclosure of the documents by refusing to admit any hair test results if these results are unsupported by the standard operating procedure and other relevant documents.

---

[1] The Department's claim that that the Federal Civil Service Commission lacks the authority to issue subpoenas, per Arnett v. Kennedy and 5 C.F.R. 772.305(c), suffers from a fatal flaw. Setting aside the irrelevance of federal regulations to the authority of a Massachusetts agency, the Department's argument ultimately fails because the FCSC and its attendant regulations, which expressly deprived the agency of authority to subpoena witnesses, no longer exist. By contrast, the Merit Systems Protection Board, which superseded the FCSC in 1978, has statutory and regulatory authority to issue subpoenas. See 5 U.S.C. 1204(b)(2)(A); 5 CFR §1201.81; Civil Service Reform Act of 1978 (CSRA), Public Law No. 95-454.

Second, Psychemedics effectively has promised to litigate the propriety of any subpoena sanctioned by the Commission.  While such litigation is pending, it is unlikely that the Commission can proceed to a full hearing.

Third, the protective order in the federal litigation presents no barrier to the disclosure of documents in this proceeding instant matter.  Psychemedics, the entity most likely subject to any Commission subpoena, is not a signatory to Judge O'Toole's Order Governing Production and Exchange of Confidential Information dated January 8, 2007.  The Order only restricts distribution *by the federal Plaintiffs* of "confidential information produced by the defendants."  <u>See</u> Order, at 1.  It does not prohibit the Department, a producing party in the federal action, from disclosing materials in the Commission proceeding.  Regardless, the Order expressly permits disclosure of confidential items pursuant to a subpoena and court order.  <u>See</u> Order, ¶18.

Finally, even assuming <u>arguendo</u> the Department correctly asserts that the Commission cannot legally compel disclosure of certain documents from Psychemedics and that these documents remain indispensable, the stay of the proceedings sought by the Department will not ameliorate this problem.  On the contrary: [;?] the stay is a solution in search of a problem.  A stay will not facilitate disclosure of documents or otherwise enable the Commission to fulfill its obligations under Chapter 31.  The Department's suggested solution cannot come close to solving the problem as long as the Department remains indifferent to the Commission's need for an adequate evidentiary record to render a fair decision.  The Department cautions that the parties risk collateral estoppel by proceeding simultaneously on independent claims in two fora (i.e., that the Commission is somehow precluded from resolving the appeals in light of

the pending federal case or vice versa). By asking the Commission to defer to the federal case, the Department seeks to prevent the Commission from ever passing judgment on the termination of 11 officers solely on the basis of highly controversial hair tests.

Because the Commission and Appellants are entitled to scrutinize Psychemedics' Standard Operating Procedure prior to admitting evidence of the Department's hair tests, a further stay of already delayed proceedings is unwarranted.

### 2. The Department Failed To Establish That Federal Court Is the Only Appropriate Forum To Address the Validity Of The Hair Test.

Appellants have a right to appeal their terminations to the Commission per G.L. c.31, §43 as lacking in just cause. G.L. c.31, §§2, 43. The Commission's jurisdiction exists independently of the jurisdiction of other tribunals, such as federal court and Commonwealth Employment Relations Board, to address matters related to terms and conditions of employment that may run afoul of state and federal laws. Id. Therefore, federal court is not the only forum appropriate to adjudicate the Department's unproven hair test. The Department asserts, but fails to substantiate, that the 2.5-year old federal litigation "has progressed rapidly in Federal Court and is moving toward[] a Daubert hearing in that forum, with an expectation that the case will be resolved within one year." Regardless, a Daubert/Lanigan hearing may decide, if at all, only if the City's hair testing results are admissible in a substantive hearing, not whether the terminations were justified.

Concurrent litigation of workplace issues in state and federal fora is not infrequent. The Department presents no evidence that the legislature intended to defer Commission claims pending possible resolution of similar issues in federal court. The

Legislature's only time that it deprives the Commission of jurisdiction due to a concurrent claim exists when arbitration is involved. G.L. c.150E, §8; <u>Sullivan v. Belmont</u>, 7 Mass.App.Ct. 214 (1979). As such, the hypothetical ability of the federal court to issue a decision on the validity and reliability of the Department's hair testing does not support a further stay of the instant appeals.

> ### 3. Appellants, Especially Appellants Who Are Not Party To The Federal Litigation, Are Not Precluded From Litigating An Issue That Has Yet To Be Decided In Federal Court.

The Department argues that the Commission should stay the proceedings because of the risk of collateral estoppel from the nascent federal litigation, which was filed nearly four years after the first of the instant Commission appeals were filed. This Department's argument rests upon sheer speculation. As shown below, it is unlikely that the federal case will vanquish the role of the Commission.

Because the court has yet to reach a final judgment in the federal litigation, the risk of collateral estoppel is purely hypothetical. There is no guarantee that the case will result in a judgment that is preclusive to any matter before the Commission. For instance, the parties to the federal litigation could settle the matter without any final judgment, or final judgment could enter in a manner that is wholly unrelated to whether the Department's testing process is scientifically valid and reliable. Judgment could enter on procedural grounds (plaintiffs lack standing; the complaint is untimely, etc.), Even if the federal court addresses the merits of the claims in the federal litigation, judgment still could enter without reaching the validity of the test, but could instead be based upon such grounds as: insufficient proof of: discriminatory animus by the City/Department; insufficient proof of disparate impact, and/or insufficient proof that

damages suffered by federal plaintiffs were caused by the City/Department. Finally, even assuming the federal court (or jury) ultimately rejects the claims in the federal litigation and otherwise finds that the hair test results are proof that the Appellants/Plaintiffs used cocaine and even assuming the Commission is obligated to adopt these findings under principles of res judicata, the Commission still is not estopped from granting relief to all Appellants. For instance, the Commission still could find that the terminations are unsupported by just cause or otherwise tainted by political bias and favoritism.

Similarly, a Commission decision will not necessarily preclude the entire federal litigation. As discussed above, the Commission cases could settle prior to any decision or the Commission conceivably could rule in favor of the Appellants without passing on the validity of the testing process if, for instance, the Department and/or Psychemedics fail to cooperate with disclosure of documents. Also, a Commission decision in favor of the Department will not necessarily have preclusive effect on federal Plaintiffs who are not Appellants before the Commission.[2]

A stay of proceedings also is inequitable given the Commission's statements that it has received several other appeals, such as bypass cases, that challenge the validity of the Department's hair test. If the instant appeals are placed in indefinite abeyance while the other cases are processed, these other cases could result in decisions that carry precedential value. Appellants thus would be deprived of a meaningful opportunity to challenge the Department's administration of its substance abuse policy.

---

[2] The Department's warning about the preclusive possibilities if the Commission case proceeds conveniently ignores the Commission's previous decision on the merits in Preston Thompson, which was issued prior to the filing of the federal case, and is under remand to the Commission.

Finally, the Department's claim that it will be forced to "relitigate" the issue at great expense is unpersuasive and pales in comparison to the harms to Appellants caused by continued delay in these proceedings. The Department's qualms about litigating a common issue in multiple fora is best directed not to the Commission, but to the General Court, which has not tempered the ability of individuals to file Commission appeals if the same conduct is at issue in other tribunals (except for arbitration). Any expense suffered by the City in twice defending what Appellants view as an inaccurate and indefensible testing process is a minor discomfort compared to the continued severe emotional and financial suffering of Appellants. Appellants have waited an average of five years *so far* for a decision on the merits and in the interim have lost well compensated law enforcement positions, had their assets and savings depleted, and been tarnished as cocaine users. The responsible action is to expedite a fair hearing, rather than to delay one further.

## 4. CONCLUSION

Based on the foregoing, Appellants respectfully request that the Commission

DENY the City's Motion to Stay.


Respectfully Submitted
Ronnie Jones, et al
By Their Attorney,


Patrick N. Bryant
BBO # 652200
Sandulli Grace, PC
One State Street, Suite 200
Boston, MA 02109
Tel: (617) 523-2500 x.20
Email: pbryant@sandulligrace.com


### *Certificate of Service*

I, Patrick N. Bryant, hereby certify that on this February 14, 2008, I served the foregoing document upon the Respondent by sending a facsimile copy to:

David Jellinek, Esq.
Legal Advisor's office
Boston Police Department
1 Schroeder Plaza
Boston, MA  02119

Patrick N. Bryant