# Exhibit C

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.                                      SUPERIOR COURT
                                                 CIVIL ACTION NO. 13-1250A

BOSTON POLICE Department,

                    Plaintiff,

                    v.

CIVIL SERVICE COMMISSION, ET AL.,

                    Defendants.

**CONSOLIDATED WITH**

SUFFOLK, SS.                                      SUPERIOR COURT
                                                 CIVIL ACTION NO. 13-1256-F

PRESTON THOMPSON, ET AL.,

                    Plaintiffs,

                    v.

CIVIL SERVICE COMMISSION AND BOSTON
POLICE Department,

                    Defendants.

## <u>MEMORANDUM IN SUPPORT OF PLAINTIFF BOSTON POLICE DEPARTMENT'S EMERGENCY MOTION FOR A STAY OF THE SUPERIOR COURT'S OCTOBER 6, 2014 FINAL JUDGMENT ORDER</u>

Now comes the Plaintiff, Boston Police Department (hereinafter the "Department"), and respectfully requests that this Honorable Court stay enforcement of this Court's October 6, 2014 Order (hereinafter the "Order") insofar as that Order requires the payment of back-pay and benefits to former officers Ronnie Jones, Preston Thompson, George Downing, Jacqueline McGowan, Rudy Guity, Oscar Bridgeman, William Bridgeforth, Richard Beckers, Walter

1

Washington, and Shawn Harris (hereinafter the "Appellants"), and the reinstatement of the Appellants' employment with the Department. This Order is the subject of a pending appeal in the Appeals Court as the Department filed a timely Notice of Appeal on November 4, 2014.

The Department submits that under Mass. R. Civ. 62(d), G. L. c. 231, § 115, and G. L. c. 235, § 16, this Order is automatically stayed pending appeal. In addition, other substantial reasons warrant a stay because (1) there exists a significant likelihood of irreparable harm to the Department and to the public at large should immediate enforcement of the Order be required; (2) the absence of a stay would run contrary to the public interest; (3) the Appellants would suffer no substantial harm should the stay be granted, and in fact, they would likely risk significant harm if no stay was granted; and (4) on appeal, the Department has a strong likelihood of success on the merits. Overall, preserving the status quo through a stay avoids imposing irreparable harm and prejudice upon all Parties and the public at large, as well as protecting the public interest.

## I.   **STATEMENT OF FACTS**

The Department terminated each of the Appellants for violations of Rule 111 of the Boston Police Department Rules and Procedures (hereinafter "Rule 111"). During 2002, 2003 and 2004, the Defendants filed appeals of their Department terminations to the Civil Service Commission (hereinafter the "Commission") pursuant to M.G.L. c. 31 § 43. After consolidated evidentiary hearings before the Commission on each of the appeals during November 2010, December 2010, and January 2011, the Commission issued a decision finding that the Department had just cause for the terminations of Preston Thompson, Oscar Bridgman, William Bridgeforth, and Rudy Guity. The Commission also concluded that the "preponderance of the evidence did not support a finding of just cause for termination" for defendants Richard Beckers,

Ronnie Jones, Jacqueline McGowan, Shawn Harris, Walter Washington, and George Downing. RA 1956-57.[1]

During eighteen days of hearings, a multitude of witnesses and 202 exhibits, the Commission was charged with determining whether the Department sufficiently established the requisite reasonable justification for terminating the Appellants for failing the annual hair drug test. The Commission found that the Department's decision to terminate each Appellant was done pursuant to Rule 111, a policy extensively negotiated, agreed to and ratified by the Appellants' own union in 1998 and again in 2007, and was incorporated into the parties' Collective Bargaining Agreement (hereinafter "CBA"). As the Commission found, in each case, the Department received confirmation of positive drug test results for cocaine (hereinafter "COC") from a well-established hair drug testing laboratory, Psychemedics Corporation (hereinafter "Pyschemedics"), for each of the respective Appellants. RA 1844, 1847, 1857-63.

Pursuant to Rule 111 and the CBA, each of the Appellants' positive test results were also reviewed, examined and confirmed by a medical review officer (hereinafter the "MRO"), an independent physician not employed by the Department. Also, as the Commission found, pursuant to Rule 111 and the CBA, the MRO interviewed each of the Appellants and inquired as to whether they had an alternative medical explanation for their positive hair drug test. Not one of the Appellants provided an alternative medical explanation for their positive test result. Consistent with Rule 111 and the CBA, the Department then determined that those positive drug test results reflected actual drug use by each Appellant. Based on such evidence, the Department provided each Appellant (with the exception of McGowan, who had failed the test a second time) with a chance for rehabilitation. Also consistent with Rule 111 and the CBA, where

---

[1] "RA" refers to the Administrative Record filed in this consolidated action. However, references to the transcript

rehabilitation was rejected, the Department then terminated each of the Appellants. RA 1917-1937; 1957-1969.

In overturning the Department's termination of the Appellants,[2] the Commission explained that "[a]fter receiving extensive testimony and evidence from experts presented by the Department and the Appellants, the Commission finds that the Department's annual hair testing plan is an appropriate tool to enforce such a [substance abuse] policy, <u>although a positive hair test does not provide the 100% irrefutable evidence of drug ingestion that the Department (and the police union) believed it did when the policy permitting such testing was negotiated and implemented</u>." [3](emphasis included in original). RA 1847-48. The Commission stated further that "a Department police officer's hair test that is reported as positive may be used for the purpose of determining whether or not an officer had used illicit drugs. A reported positive test result, how*ever, is not necessarily conclusive of ingestion* and, depending on the preponderance of evidence in a particular case, may or may not justify termination or other appropriate discipline of a tenured Department officer." *Id.* Despite this conclusion, the Commission made numerous findings validating the Department test, and they are incorporated by reference herein. RA 1847,1862-66, 1871-74,1885-92,1900-08,1917-1937,1950,1957-1969. [4]

Following the Commission's decision, the Parties both sought judicial review in the Superior Court and each filed Motions for Judgment on the Pleadings. On October 6, 2014, this

---

volume, Volume XI, will be referred to as "Vol. XI."

[2] The Commission ordered that those defendants "be reinstated to their former positions with the Department, retroactive to October 21, 2010, which represents the date on which the parties finally appeared ready to commence the evidentiary hearings of these appeals." RA 1971-73.

[3] Nowhere in its decision did the Commission explain or cite any evidence showing that the Department or the union believed that the test provided "100% irrefutable evidence."

[4] For purposes of brevity, additional relevant facts are interspersed within the Argument section herein.

Court issued a decision affirming in part and denying in part the Commission's decision and

rendered the following Order:

> For the reasons stated, the Plaintiff Boston Police Department's Motion for Judgment on the Pleadings is DENIED, and the Defendant Boston Police Officers' Motion for Judgment on the Pleadings is ALLOWED in part and DENIED in part. The Court orders entry of JUDGMENT that the Civil Service Commission's decision is AFFIRMED in all respects except as to the remedy afforded to Officers Beckers, Jones, McGowan, Harris, Washington, and Downing, which is modified such that the Boston Police Department is ORDERED to reinstate those officers with full back-pay and benefits as of the date of each officer's discharge.

Order at 26. Parties subsequently filed Notices of Appeal of this Court's decision. Then the

Parties, through their respective counsel, engaged in significant discussions regarding the

Department's filing of a motion to stay the proceedings. The Parties agreed further that no action

would be taken until a schedule could be finalized regarding a motion to stay.

## II.    ARGUMENT

### A. THE OCTOBER 6, 2014 ORDER IS AUTOMATICALLY STAYED PURSUANT TO RULE 62, G. L. c. 235, § 16 and G.L c. 231, § 115.

Under the governing provisions of Mass. R. Civ. P. 62, G. L. c. 235, § 16 and G.L. c.

231, § 115, where the Department has filed a timely Notice of Appeal, the Order is automatically

stayed. Accordingly, the Appellants are precluded from seeking enforcement of the Order. Rule

62(d) of the Massachusetts Rules of Civil Procedure provides, in pertinent part, that "[E]xcept as

otherwise provided in these rules, the taking of an appeal from a judgment shall stay execution

upon the judgment during the pendency of the appeal." Such a rule preserves the status quo until

there has been an appellate resolution of the matter. As the Reporter's Notes to this Rule

emphasize, "[R]ule 62(d) makes clear that the taking of an appeal stays execution upon the

judgment during the pendency of the appeal." *See NA v. Surabian*, 2013 Mass. App. Div. 45

(2013) ("Mass. R. Civ. P., Rule 62(d), provides for an automatic stay on appeal — "the taking of

an appeal from a judgment shall stay execution upon the judgment during the pendency of the appeal" . . . .).  Application of Rule 62 here, therefore, automatically stays the Order.

Additional authorities provide further grounds for an automatic stay of the Order.  For example, G.L. c. 235, § 16, provides for an automatic stay of proceedings in this case pending the Department's appeal. *See C.F. Trust v. Peterson*, No. 961375H (Ma. Super. May 21, 1998) (Connolly, J.).  Here, where "a Massachusetts court issues a judgment, and that judgment is appealed, G.L. c. 235, § 16 governs the effect of that appeal on the issuance of an execution. 'No execution shall issue upon a judgment until the exhaustion of all possible appellate review thereof, and the receipt by the clerk of the trial court of the appropriate rescript or order.'" *Id.* That is, "Section 16's language applies here; this case is an action that resulted in a judgment by the Court, and that judgment is being appealed." *Id.*  "Pursuant to § 16, this action seeking execution of a judgment is stayed pending "exhaustion of all possible appellate review." *Id.* Accordingly, under G.L. c. 235 § 16, the Order is stayed pending appeal.

G.L. c. 231, § 115 also requires an automatic stay of the Order in this case.  That statute, in pertinent part, provides that, "[N]o execution shall issue during the pendency of an appeal. In the event that execution has issued before the filing of a notice of appeal, upon the filing of such notice the clerk shall notify the officer holding the execution, and all further proceedings thereon shall be stayed." G.L. c. 231, § 115; *see also Palazzetti Import/Export Inc. v. The Morson Group* No. 98 Civ. 722(FM), 2002 WL 562654, at *3 (S.D. N.Y. Apr. 16, 2002). (S.D.N.Y. 2002), *citing* Mass. Gen. Laws Ann. Ch. 231, § 115 ("If the judgment in this case had been entered in the Massachusetts state courts, the Defendants plainly would have been entitled to a stay because Massachusetts law prohibits the enforcement of a judgment while an appeal is pending.").

Against this backdrop, the Order is automatically stayed and any such enforcement is prohibited pending resolution by a Massachusetts appellate court.

## B. A MULTITUDE OF REASONS ALSO REQUIRE THIS COURT'S ISSUANCE OF A STAY.

Even *assuming arguendo* that no automatic stay is warranted under these statutes and Rule 62 (which the Department vehemently denies), a stay remains warranted given the irreparable harm likely suffered by the Department, the significant risk of harm to the public interest, the lack of prejudice to the Appellants, and the likelihood of success on the Department's appeal. "[A] motion to stay proceedings is ordinarily a matter addressed to the sound discretion of the trial judge." *Travenol Lab., Inc. v. Zotal, Ltd.,* 394 Mass. 95, 97 (1985).

Stays are commonly granted in situations involving a pending appeal or administrative action, such as the case at bar. *See, e.g., Director of Div. of Employment Section v. Town of Mattapoisett,* 392 Mass. 858, 861 (1984) ("Absent special circumstances, determination of a cause of action entirely contingent on the validity of an appealed judgment in a separate proceeding should be stayed pending resolution of the appellate process unless the detriment to the litigants of delay outweighs the benefits of judicial economy and orderly adjudication."); *J. & J. Enters., Inc. v. Martignetti,* 369 Mass. 535, 541 (1976) ("Assuming, without deciding, that judicial action in the present cases should await further administrative action, we think dismissal of the actions was not the proper remedy, since a stay would . . . avoid possible unfair prejudice to the plaintiffs' rights."). In those situations, the court balances the possibility of prejudice to the parties against the economical and orderly adjudication of the issues. *Id.* Here, the balancing of various factors strongly favor a stay.

1. **The Absence Of A Stay Will Inflict Irreparable Harm, Hardship And Prejudice Upon The Department And Harm The Public Interest.**

Reinstating the Appellants while the appeal is pending would require the Department to expend significant financial and other resources that cannot be reimbursed should the Department prevail in its appeal. The Department has a great interest in ensuring that only qualified and suitable candidates are employed as Boston police officers. (See Attached Exhibit 1, Affidavit of Devin Taylor, Boston Police Department). That includes ensuring that candidates are physically, medically and psychologically fit to perform the essential functions of the job. (See Attached Exhibit 1, Affidavit of Devin Taylor, Boston Police Department).

a. **Reinstatement Of The Appellants Would Require A Significant Expenditure Of Financial And Other Resources That Cannot Be Reimbursed After A Successful Appeal.**

Should the Department be required to immediately reinstate the Appellants in this matter, the Department would be required to expend significant financial and other resources, including administering extensive background investigations, medical and psychological evaluations, and the PAT to each of the Appellants. (See Attached Exhibit 1, Affidavit of Devin Taylor, Boston Police Department). Each Appellant would be required to pass these tests, and complete a full Academy training before resuming their employment with the Department. (See Attached Exhibit 1, Affidavit of Devin Taylor, Boston Police Department).

Assuming that they passed all testing and background investigations, the Appellants would also be required to attend the Boston Police Academy's seven (7) month training program that all candidates for employment must successfully complete prior to becoming a Boston police officer. (See Attached Exhibit 1, Affidavit of Devin Taylor, Boston Police Department). The Academy is authorized by the Municipal Police Training Committee and has developed and

administered Rules and Procedures in accordance with 550 CMR 3.03(3) and (4). (See Attached Exhibit 1, Affidavit of Devin Taylor, Boston Police Department). The Academy's Rules and Procedures govern attendance at all training sessions and require candidate officers to attend punctually all scheduled classes, field exercise, and formations. (See Attached Exhibit 1, Affidavit of Devin Taylor, Boston Police Department). In order to complete the training, candidates must also successfully complete all areas of study covered during the seven (7) month program. (See Attached Exhibit 1, Affidavit of Devin Taylor, Boston Police Department).

Should the Department be successful on appeal, the administration of the Department's various tests, extensive background investigations, and Academy retraining, will all have been unnecessary and involved a wasteful expenditure of taxpayer money, resources and time. In the process, the Department would have also been deprived of opportunities to investigate and train other viable candidates.

**b. The Appellants' Reinstatement Pending Appeal Also Creates The Risk Of Duplicative Litigation.**

Additionally, a successful appeal by the Department would also require the Department's second termination of the Appellants. Such a scenario creates the risk of additional litigation because the Department will be bound by the processes set forth in the CBA and civil service laws in effectuating the Appellants' now second termination from the Department. (See Attached Exhibit 1, Affidavit of Devin Taylor, Boston Police Department). Accordingly, the Appellants will essentially be provided with a "second bite at the apple" and may embroil the Department in another lengthy litigation, expending unnecessarily Department and judicial resources. (See Attached Exhibit 1, Affidavit of Devin Taylor, Boston Police Department). A stay avoids the possibility of duplicative litigation, tension and controversy between the Parties as well as any

confusion over the rights of the parties. "Granting a stay is within the court's discretion and a stay

is appropriate when it serves the interests of judicial economy and efficiency." *Hood v.*

*Microsoft Corp.*, 428 F. Supp. 2d 537, 541 (S.D. Miss. 2006).

### c. The Absence Of A Stay Will Also Create Financial Hardship and Risk The City's Loss Of Substantial Taxpayer Funds.

The absence of a stay pending appeal will also create an overly burdensome and

complicated financial situation for not just the Department, but also for the Appellants and the

tax-paying public. A denial of a stay, in effect, orders the Department, i.e., the City of Boston

(hereinafter the "City"), to pay the Appellants a significant amount of back pay, totaling in the

millions of dollars that, if the appeal decision favors the Department, the Appellants will then

have to immediately return. (See Attached Exhibit 1, Affidavit of Devin Taylor, Boston Police

Department). The Department would have no assurance that these monies could be repaid by the

Appellants and would be at great risk of never recovering these substantial taxpayer funds. (See

Attached Exhibit 1, Affidavit of Devin Taylor, Boston Police Department). Such a financial

gamble not only places the City and Department at risk of substantial prejudice, but also the

citizenry at large. The City's duty with respect to managing taxpayer money strongly outweighs

payment of such large damage awards pending appeal. In contrast, by staying the imposition of

the Superior Court's decision, the Appellants suffer no detriment by receiving the back pay in the

future should the Department's appeal be unsuccessful. In fact, the back pay monies just continue

to accrue in the Appellants' favor as the litigation continues.

### d. Immediate Reinstatement Of The Appellants Also Places The Department And The Public Safety Unnecessarily At Risk.

The absence of a stay would also endanger the public interest in another respect. It is the

Police Commissioner, not the Commission or Court, that has the authority to determine the

reasons that deem a candidate suitable or unsuitable as a Boston police officer. St. 1962, c. 322

§1. See also *City of Cambridge v. Civil Service Commission*, 43 Mass. App. Ct. 300, 304 (1997).

Moreover, it is the Department who assumes the risk and liability of its employees. See *Boston*

*Police Department v. David Suppa*, Docket No. 2008-05237 (January 4, 2010). The Department

has an obligation as a public safety organization to employ and hire only the most qualified

candidates. (See Attached Exhibit 1, Affidavit of Devin Taylor, Boston Police Department). The

Appellants have been previously deemed to have violated the substance abuse policy by using

illicit drugs. (See Attached Exhibit 1, Affidavit of Devin Taylor, Boston Police Department). To

now employ these Appellants without a final determination by an appellate court, and provide

these individuals with a firearm and badge, and the authority of a Boston Police Officer, places

the Department at risk of employing impaired and armed police officers, a circumstance that runs

contrary to the Commissioner's discretion and public's interest, and unnecessarily places the

public safety at risk.

If the Department's assessment of the public policy concerns and the risks associated with

handing a badge, a firearm and all of the authority that those items encompass to individuals due

to their unsuitability, namely, their failure on a drug test, is indeed an accurate assessment, and

yet the Department is forced to employ the Appellants regardless, it is the Department who

would answer to the charges of abuse of authority, excessive force, or negligent hiring, not the

Court or the Civil Service Commission. The Department's responsibility to the public to appoint

only the most qualified candidates as police officers and protect the public safety is paramount.

The Commission's Order, which has been upheld by the Superior Court, disregards the

Department's determination of suitability, is clearly not in the public interest and requires the

Department to re-employ officers who are at great risk for endangering not only themselves, but

11

also the public. Preservation of the status quo through a stay eliminates these risks, the unnecessary expenditure of resources, and grave prejudice to the Department.

**2.**     <u>**Issuance Of A Stay Will Result In No Harm To The Appellants.**</u>

The Appellants will not suffer any harm as a result of this Court's granting a stay of the Order. In the issuance of its decision, the Commission and the Superior Court ensured that the Appellants would be made whole back to the date of their termination date from the Department. Order at 26. As a result, and in the event that the Department is unsuccessful in this appeal, the Appellants' employment with the Department would be reinstated with full back pay and benefits to which they are entitled from their termination date, which range from 2001 to 2007. The Appellants' award will be unaffected by any stay and they will suffer no harm.

Moreover, the risk of harm to the Appellants is in fact greater should no stay be in effect. The Appellants, who the Department believes are all currently employed full-time in other positions outside the Department and have been for a number of years, would be required to immediately resign their employment before reinstatement to the Department. (See Attached Exhibit 1, Affidavit of Devin Taylor, Boston Police Department). Should the Department succeed in its appeal, the Appellants would be terminated from their Department employment and then would be effectively unemployed at the conclusion of the litigation. Effecting a stay preserves the Appellants' current employment status while also ensuring their receipt of a back pay award and does not jeopardize this employment should the Department prevail.

**3.**     <u>**A Stay Is Also Warranted Because The Superior Court Failed To Recognize That The Commission's Decision Granting The Plaintiffs' Appeal Exceeds Its Statutory Authority, Abuses Its Discretion, Is Arbitrary And Capricious, And Unsupported By Substantial Evidence, Thereby Establishing The Department's Strong Likelihood Of Success On The Merits On Appeal.**</u>[5]

---

[5] The Department expressly reserves its right to expand upon these arguments during its appeal.

The Superior Court erred in failing to grant the Department's Motion for Judgment on the Pleadings in several important respects that warrant appellate reversal of its decision.

### a. The Superior Court Erred By Failing To Apply The Correct Preponderance of The Evidence Standard.

Reversal of the Superior Court's decision is also warranted because it repeats the same error of the Commission – failing to properly apply the correct preponderance of the evidence standard to the determination of whether the Department had just cause to terminate the Appellants. In rendering its decision, the Superior Court requires that the Department's hair test be infallible, or in the Court's lexicon, "unimpeachable in every instance," before it alone can satisfy the preponderance of the evidence standard and establish just cause to terminate the Appellants. Order at 21. By doing so, the Court improperly increased the Department's evidentiary burden beyond the applicable preponderance of the evidence threshold. Requiring the test to be "unimpeachable" does not comport with the SJC's definition of preponderance of the evidence – a definition which explicitly allows for doubts to linger.

The SJC has made clear that a preponderance of the evidence is established "if it is made to appear more likely or probable in the sense that actual belief in its truth, derived from the evidence, exists in the mind or minds of the tribunal notwithstanding any doubts that may still linger there." *Tucker v. Pearlstein*, 334 Mass. 33, 35-36 (1956). Arguably, applying a 100% or "unimpeachable" requirement exceeds even the bounds of the reasonable doubt standard. The Department and an abundance of Massachusetts authority establish that its burden does not encompass such a requirement nor any requirement that the Department "conclusively" establish an officer's misconduct. Rather, it burden is to show that the officer "probably," or more than likely, ingested cocaine. *Tucker, supra* at 35-36. Moreover, the Appeals Court has held that such

13

"conclusive" evidence is not required before the Commission. *See City of Beverly v. Civil Service Comm'n,*, 78 Mass. App. Ct. 182, 190 (2010). In its decision, the Superior Court failed to make this recognition and properly apply these fundamental, bedrock principles. Against this backdrop, the Superior Court's decision was erroneous and will likely result in reversal.

### b. The Court Erred By Requiring The Department To Prove That The Test Eliminates The Possibility Of External Contamination Where The Officers Failed To Adduce Any Credible Evidence Of External Contamination.

Contrary to the Superior Court's decision, the Department's burden also did not require it to prove that the test eliminated all possibilities of external contamination, and even if it did, the Commission's own findings, disregarded by the Superior Court, establish that this burden was satisfied as it found, that "[t]he Department . . . proffered expert testimony that supported the Pyschemedics' position that Pyschemedics employs a uniquely sophisticated process that, in fact, surmounts all doubt about its ability to distinguish the source of drug in hair as due to ingestion versus contamination." RA 1893. Moreover, no substantial evidence supports the Court's or the Commission's contention that the officers' test results were in any manner skewed by external contamination such that they were unreliable for purposes of satisfying the just cause threshold. Here, as the Commission found, the Appellants failed to credibly establish that they were externally contaminated to cocaine prior to their Department test.

The Superior Court cannot posit some theoretical criticism that the Department's test is not sufficiently reliable to eliminate external contamination when the Commission itself failed to credit as credible any exposure theory by the Appellants. Such a criticism lacks any relevance and any causal connection to the test results. Moreover, no substantial evidence supports the Superior Court's theoretical criticism. Strikingly, the Commission had rejected the

Appellants' race bias theory because, in the Commission's view, the Appellants had failed to demonstrate how race bias had skewed any of their individual results. Here, the same reasoning applies to the Appellants' external contamination theory, but was inexplicably not applied by either the Commission or the Court. Such failure and inconsistency was pure error and warrants reversal.

### c. The Superior Court Failed To Recognize That The Commission's Own Findings Establish The Department's Requisite Just Cause.

Nowhere in its decision does the Superior Court address the Department's contention that a review of the Commission's numerous findings themselves establish the Department's sufficient quantum of evidence for just cause purposes. *See* Order at 1-26. The Court disregards these findings and fails to acknowledge that such findings alone establish that the Appellants were only terminated because they failed the Department's annual hair drug test as each Appellant tested positive for cocaine in violation of the substance abuse policy embodied in Rule 111 and their collective bargaining agreement. RA 1857-63.

The Superior Court failed to recognize that the Commission made no finding invalidating any one of the Appellants' test results that resulted in their termination. Order at 1-26; RA 1844-1976. The Court also made no mention of the Commission's finding that Department test was conducted with "reasonable scientific accuracy" and an "impressive variety of quality control procedures." RA 1886. The Court also omitted from its decision the Commission's important finding that "there is reasonable agreement that qualitative results from hair analysis is valid," and that the test itself has never been held invalid by any reported decision. RA 1879; 1947. Additionally, the Superior Court failed to recognize the Commission's own findings further validating the accuracy of Pyschemedics' test results, as the Commission found that its extensive licensure and accreditation "represent a confidence by the regulators that a

laboratory's instrumentation and procedures measure the quantities of drugs present in test samples with reasonable scientific accuracy." RA 1884-85.

Also absent from the Superior Court's analysis is the Commission's important finding that the Pyschemedics' standard cut-off of 5n/10mg, which was applied in each of the Appellants' cases, is the recognized industry standard which sufficiently eliminates the risk of external contamination. RA 1875-1876. Additionally, the Superior Court omits recognition that the Commission's own findings reject any concern regarding external contamination of the Appellants' test samples, as it found, that "[t]he Department . . . proffered expert testimony that supported the Pyschemedics' position that Psychemedics employs a uniquely sophisticated process that, in fact, surmounts all doubt about its ability to distinguish the source of drug in hair as due to ingestion versus contamination." RA 1893.

As the Commission found, in accordance with the CBA, each Appellant's results were above the cut-off level, were reviewed by the MRO for accuracy and chain of custody, and during each MRO review, no Appellant provided any alternative medical explanation for their positive result. RA 1857-63. The Commission also found that (in accordance with the CBA), each of the Appellants (except McGowan because it was her second Rule 111 violation) was provided with the opportunity to sign a settlement agreement and refused. *Id.* Such findings more than sufficiently establish that the Department met its burden of demonstrating that the Appellants were "guilty of substantial misconduct which adversely affects the public interest by impairing the efficiency of the public service." *Murray v. Second Dist. Ct. of E. Middlesex*, 389 Mass. 508, 514 (1983). The Superior Court's failure to draw this conclusion constitutes error.

Such findings also run contrary to the Superior Court's erroneous recognition that the Department hair test was subject to false positive results in "some significant percentage of

16

instances" and thus not sufficiently scientifically reliable to warrant the Department's reliance for just cause purposes. Order at 21. No substantial evidence supports this proposition that the Department's test was subject to false positive results in "some significant percentage of instances" nor does the Court cite any specific basis for this finding in its decision. Order at 1-26. As discussed *supra*, the Commission's numerous findings, speak to the contrary. *Id.* Even the Commission decision itself distinguishes the Department's test – the Pyschemedics' test - from Italian drug lab tests which "had a 'false negative' problem, i.e., they were unable to detect the presence of drugs in spiked samples" with the additional recognition that "Psychemedics . . . was reasonably accurate in assaying all such samples." RA 1884.

It is inconsistent for the Commission to find that Pyschemedics does not have a false negative problem and for the Superior Court to say that it does. The Commission's findings demonstrate that "there was reasonable justification for the action taken by the appointing authority in the circumstances found by the commission to have existed when the appointing authority made its decision." *Town of Falmouth v. Civil Service Commission,* 447 Mass. 814, 823 (2006). The Superior Court's decision's failure to pay proper heed to these findings is erroneous, arbitrary and capricious and will likely result in reversal.

### d.   The Court's Decision Improperly Intrudes Upon The Department's Discretion.

The Superior Court's decision is also flawed because it failed to recognize that the Commission improperly substituted its judgment for that of the Department and assumed the role of a "super-appointing agency" – which Massachusetts appellate and trial courts have repeatedly prohibited. *See, e.g., Town of Burlington v. James McCarthy,* 60 Mass. App. Ct. 914-15 (2004); *Chaves v. Boston Police Department,* C.A. 11-0022 (Ma. Super. 2012) (Kaplan, J.).   The

Commission assumed this improper role by raising questions about the scientific reliability of the Department testing process, employing more rigorous standards than the Department, and determining that such evidence did not support the Department's employment decision. The Commission improperly analyzed the Department test and its expert's opinions to decide whether they were based on a methodology that the *Commission* "deemed [scientifically] appropriate" and a conclusion accurate "under the Commission's standards." *Chaves, supra* at 11-12. Applying its own criteria was clear error. *See Town of Lexington v. Massachusetts Civil Service Commission*, C.A. 08CV4644F (Mass. Super. 2010) (Curran, J.) ("[T]he Commission substituted its judgment by deciding that other criteria were more important. Once again, the Commission has engaged in revisionist and creative fact-finding.").

In *Chaves*, this Court properly reversed the Commission's decision because the Commission improperly substituted its judgment for the Department's when it determined that the Department's scientific evidence and testing was sufficiently unreliable to warrant a police applicant's bypass. *Id.* at 11-12. In that case, the Commission had determined that the police candidate's psychiatric diagnostic test results and the examining psychiatrist's impressions based on her interview of him "were not scientifically reliable evidence on which [she] could base her opinion." *Id.* at 10. The Commission held further that the psychiatrist "used the wrong 'methodology' to reach her opinion and her opinion was not 'accurate.'" *Id.* at 10. In rendering its decision, the Commission had even imposed its own definition for the psychiatric conditions that would disqualify a police officer candidate and also set forth the quantum of proof necessary to prove such condition. *Id.* at 11.

In reversing the Commission's decision, this Court recognized that "while it is certainly possible that [the Appellant's expert's] views are better researched or reasoned than [the

Department's], what the Commission has done is not to find facts, but rather to substitute its judgment for that of the Department." *Id.* at 10.  The Court recognized that the Commission's role was limited to determining whether Department "put forward a sufficient quantum of evidence to substantiate its legitimate concerns." *See id.* at 8, *quoting City of Beverly v. Civil Service Commission*, 78 Mass. App. Ct. 182, 188 (2010). Concluding that sufficient evidence did indeed warrant the bypass despite the Commission's criticisms, the Court reversed the Commission.  Here, the Superior Court should have followed suit and made the same recognition of the Commission's improper substitution of judgment.

### e. Reversal Is Also Likely And Warranted Because The Superior Court And Commission Failed To Apply The Proper Principles Governing Police Disciplinary Decisions.

The Superior Court's error is made all the more clear by its concomitant failure to pay proper heed to the fundamental principles governing police disciplinary decisions. Strikingly, the Court, as did the Commission, fails to pay properly adhere such principles governing the Police Commissioner's authority. Order at 1-26; RA 1844-1977. Numerous Massachusetts decisions have acknowledged the special importance of police disciplinary decisions and police rules of conduct and also recognized that their enforcement are policy matters which, in the absence of political interference or deviation from merit standards, "are beyond the [Civil Service] Commission's reach." *Police Department of Boston v. Collins*, 48 Mass. App. Ct. 408, 413 (2000). However, such principles and decisions were not properly recognized by this Court.

Here, it was well within the Department's exclusive discretion to utilize a hair drug test, even *assuming arguendo* it did not provide 100% proof of ingestion, because it was the Department, and not the Commission, who assumes the risk of an impaired officer, armed with a gun and charged with protecting the public. As the Supreme Court has long recognized, neither

19

the Department nor the public should have to "bear the risk that employees who may suffer from impaired perceptions and judgment" will be employed in positions "where they may need to employ deadly force." *Nat'l Treasury Union Employees v. Von Raab*, 489 U.S. 656, 671 (1989) (omitting internal quotations and citations). Given the Court's disregard of these principles and of the Department's lawful discretion in crafting and enforcing its own substance abuse policy, reversal is warranted. *Beverly, supra* at 188. These numerous errors by this Court establishes the Department's strong likelihood of success on the merits and augments the conclusion that a stay is warranted.

### III.   CONCLUSION

For the aforementioned reasons, the Department respectfully requests that this Court stay the enforcement of the October 6, 2014 Order pending resolution of the Department's appeal

Respectfully submitted,

BOSTON POLICE Department
By its attorney,


Helen G. Litsas (BBO #644848)
**LAW OFFICE OF HELEN G. LITSAS**
22 Mill Street, Suite 408
Arlington, MA 02476
TEL:   (781) 646-1518
(617)596-5561
FAX:   (781) 643-1126
helen@litsalaw.com

Nicole Taub (BBO #663517)
Boston Police Department
Office of the Legal Advisor
One Schroeder Plaza
Boston, MA  02120-2014
TEL:   (617) 343-4550

20

## CERTIFICATE OF SERVICE

I hereby certify that I served a true copy of the foregoing by mail and email this 7th day of January, 2015 on all counsel of record.

Helen G. Litsas